**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Kali Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE MONGALO, CHELSEA GARLAND, PHILIP WERNER, and MELISSA HARMON, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROCS, INC.,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR FRAUD, DECEIT, AND/OR MISREPRESENTATION; VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT; FALSE ADVERTISING; NEGLIGENT MISREPRESENTATION; UNFAIR, UNLAWFUL, AND DECEPTIVE TRADE PRACTICES; BREACH OF EXPRESS WARRANTY; AND BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY<br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.      Plaintiffs Chelsea Garland, Jacqueline Mongalo, Philip Werner, and Melissa Harmon, by and through their counsel, bring this Complaint against Crocs, Inc. (referred to as "Defendant" or "Crocs"), on behalf of themselves and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act; false advertising; negligent misrepresentation; unfair, unlawful, and deceptive trade practices; breach of express and implied warranties; and violation of the Magnuson-Moss Warranty Act.

The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

2.     This case concerns shoes that Defendant makes that are made of 90% or more Croslite® material, under the brand name "Crocs." including but not limited to the following models: Classic Clog, Classic Clog (kids), Classic Clog (toddlers), Classic Tie Dye Clog, the Bayaband Clog, and the Baya Clog (hereinafter, the "Products").

3.     For over two-decades, Defendant has marketed, advertised, and sold the Products without alerting consumers that these shoes are constructed of a material that shrinks upon exposure to ordinary heat and/or direct sunlight. Such exposures cause the Products to shrink and/or warp, including to the point where they no longer fit the purchaser's feet. This design flaw defeats the fundamental purpose of the Products since the shrinkage and/or warping renders them unwearable and worthless. The Products are, thus, unsuitable for ordinary use.

4.     At the same time, Defendant made (and continues to make) affirmative representations that falsely represent the Products as being a certain size, as well as being suitable not only for ordinary wear and use, but also for use in hot, sunny environments. For example, and without limitation, Defendant has engaged in a decade long, widespread advertising campaign marketing the Products for use in hot, sunny, outdoor environments and consistently used, and continues to use, photos of people wearing them outside at beaches, pools, rivers, lakes, gardens, and in direct sunlight. Defendant continues to market, advertise, and sell the Products as "clogs, flip flops, or slides," "pool party," "perfect for the pool," "beach bum," and "Comfortable water and swim shoes. Whether you're swimming in a lake, river, ocean, or pool, protect your feet with comfortable water sandals and shoes from Crocs."

5.     The Products, however, are not suitable for use in hot, sunny conditions because when the Products are exposed to heat and/or sunlight they shrink and/or warp and become unwearable by the original owner.

6.     In reliance on Defendant's false and misleading representations and omissions, Plaintiffs purchased Crocs shoes, entirely composed of Croslite, believing they were suitable

for regular use in hot and/or sunny conditions and believing they would remain their represented size in such conditions. Plaintiffs believed that the Products could be worn outdoors, in the garden, to the lake, river, ocean, pool, and the beach, and also left outside, in direct sunlight and heat. They additionally believed that their Crocs would maintain a proper fit after exposure to these environments.

7.    Plaintiffs were, however, intentionally misled and deceived by Defendant's size representation and its decades long, widespread, consistent marketing and advertising campaigns that represented that the Products were a particular size and/or were "pool party," "perfect for the pool," "perfect for the garden," "beach bum," and "water and swim shoes," and "pool" or "beach" shoes that were suitable for use in hot and/or sunny environments, including in garden, lake, river, beach, and poolside environments.

8.    The size representations and advertisements created express warranties and implied warranties that these shoes were in merchantable condition for use in ordinary conditions that included exposure to sun and/or heat, and were fit for use in hot and/or sunny conditions. Even where Defendant sold the Products through third party retailers, consumers were the intended third-party beneficiary of these warranties.

9.    At a minimum, Defendant unlawfully failed to adequately disclose that the Products can shrink a whole size (or more) and/or warp in hot environments, including in direct sunlight.

10.    Defendant's marketing and advertising representations and omissions concerning the Products were false and misleading, were directed at inducing, and did induce, Plaintiffs and Class Members to purchase the Products at higher prices than they would otherwise have paid, had they known the truth.

11.    Defendant knew that the Products it sold were not capable of withstanding use and storage in hot environments, including direct sunlight, and that its advertising materials were false and deceptive in describing the Products as suitable for use in those environments.

12.    Despite knowing that its Products were flawed and that its advertisements failed to inform customers of the flaw and falsely stated that the Products were durable under normal

conditions of sun and/or heat, Defendant refused and failed to issue any recalls to fix the shrinkage problem or to otherwise warn Plaintiffs, those similarly situated, and/or the general public. Defendant also refused to refund or replace Products that became unusable because of the above-mentioned flaws, and refused to acknowledge it had breached its warranties of these Products. Defendant also intentionally failed to instruct its retail partners to repair, replace, or even assist in refunds and replacements of Products that became unusable because of the above-mentioned flaws. Defendant did so intentionally in order to sell more Products.

## PARTIES

13.     Plaintiff Jacqueline Mongalo is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Pittsburg, California. Ms. Mongalo intends to remain in Pittsburg and makes her permanent home there.

14.     Plaintiff Chelsea Garland is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Diego, California. Ms. Garland intends to remain in San Diego and makes her permanent home there.

15.     Plaintiff Melissa Harmon is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Fresno, California. Ms. Harmon intends to remain in Fresno and makes her permanent home there.

16.     Plaintiff Philip Werner is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Highland, California. Mr. Werner intends to remain in Highland and makes his permanent home there.

17.     Defendant Crocs, Inc. is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Broomfield, Colorado.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

19.     The injuries, damages, and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State

of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from, products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

21.     In accordance with California Civil Code Section 1780(d), Ms. Monglao filed a declaration establishing that she purchased a pair of Crocs online from her home in Pittsburg, California in 2022. (Ms. Mongalo's declaration is attached as Exhibit A to this Complaint).

22.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## <u>SUBSTANTIVE ALLEGATIONS</u>

23.     As noted above, the Products that are the subject of this Complaint are Crocs shoes manufactured from 90% or more Croslite material.

### <u>Defendant's Breach of Warranties</u>

24.     Defendant created additional express warranties and an implied warranty of merchantability through its size reprsentations, its long-standing advertisements and marketing materials, and by application of law. As described further below, Defendant makes express representations that its Products are a certain size. Defendant also expressly represents that its Products are "water and swim shoes," "sandals, clogs, flip flops, or slides," "pool party," "perfect for the pool," "the perfect choice for gardening," "beach bum," and "pool" or "beach" shoes that were suitable for use in all environments, including in hot and/or sunny environments, such as the garden, lake, river, beach, and poolside. Defendant additionally makes express representations that it Products are certain sizes.

25.     The implied warranty of merchantability arises both under California law, California Commercial Code § 2314, as a result of Defendant's status as a merchant selling consumer goods, and by law as a result of Defendant's offer of an express written warranty. The implied warranty "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v.*

*Superior Court*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995) (quotation omitted). Consumers who purchase Crocs from other retailers are third party beneficiaries of Defendant's implied warranty of merchantability to those retailers as a result of Defendant's marketing, advertising, and sales because, at a minimum, Defendant's Limited Warranty makes clear that end consumers, and not Defendant's retail partners, are the intended beneficiaries of Defendant's warranties. Indeed, Defendant, in practice, routinely extends the Limited Warranty to purchasers of the Products form authorized retailers.

26.     Defendant has breached, and continues to breach, its express and implied warranties. Defendant breached its express limited warranty by selling shoes that are defective at the time of purchase because they are made of material that shrinks when exposed to ordinary conditions such as heat and/or sunlight. Defendant similarly breached its implied warranty of merchantability because shoes that shrink if exposed to ordinary amounts of sun and/or, heat fall below a minimum level of quality for ordinary use as shoes.

### Defendant's Deceptive Advertisements, Misrepresentations, and Omissions

27.     For years, Defendant marketed and advertised its shoes for uses that would routinely result in their exposure to in hot environments, including direct sunlight, while simultaneously omitting that doing so will cause them to shrink and/or warp, including, without limitation, to the point the Products no longer fit.

28.     For example, Defendant sells "sandals, clogs, flip flops, or slides," "the perfect choice for gardening," "pool party," "perfect for the pool," "beach bum," and "pool" or "beach" shoes that were suitable for use in all environments, including hot and/or sunny environments, such as outdoors, the garden, lake, river, beach, and poolside. Since people ordinarily garden or visit rivers, lakes, the beach, and pools during hot, sunny summer months, these representations create the impression that the Products are suitable for use in hot and/or sunny conditions.

29.     Defendant also advertises certain of its shoes as "sandals, clogs, flip flops, or slides," "the perfect choice for gardening," "pool party," "perfect for the pool," "beach bum," and "pool" or "beach" shoes.

30.     Even the name itself – Crocs – is intended to connote suitability for use in hot and/or sunny conditions. Defendant states on its website "The company was given the name Crocs™ after the multi-environment, amphibious nature of Crocodiles."[1]

31.     Defendant also routinely used, for years, images of the Products in sunny and/or hot environments in its advertisements.

32.     For example, the screenshot below shows a Crocs advertisement on Facebook with Crocs displayed on a sunny beach with tropical vegetation.



33.     The screenshot below shows a Crocs advertisement on Facebook with Crocs displayed against a pool, with water refracting intense sunlight.



---

[1] *Available at*: https://____
crocs.html#:~:text=T_____0of%20lifestyle
%20occasions. (last a____

34.    The screenshots below show more Crocs advertisements on Facebook with Crocs displayed again on a hot, sunny beach.



35.    The screenshot below shows an advertisement from Defendant's website showing its "tropical collection," suggesting the shoes are appropriate for sunny, hot tropical environments.



CLASS ACTION COMPLAINT

36.    The screenshot below shows a Crocs advertisement on Facebook of Crocs being worn in a sunny, hot desert environment:



37.    For years, Defendant also advertised that its Croslite shoes were suitable for use for gardening, which normally involves exposure to sun and/or heat. *See, e.g.*, https://www.crocs.com/stories/best-shoes-for-gardening.html ("Why Crocs make the best gardening shoes"). The screenshot below also shows a recent Crocs advertisement depicting Crocs being worn in a sunny, garden environment:

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20   38.    A reasonable consumer would rely on Defendant's advertisements, including

21   those showing the shoes being used in hot environments, including direct sunlight, and would

22   expect Defendant to truthfully and accurately describe and advertise the features and

23   performance abilities of the Products.

24   39.    Further, by historically, repeatedly, and prominently advertising its Croslite

25   shoes are suitable for use in in hot environments, including direct sunlight, in a lengthy and

26   widespread advertising campaign, Defendant created a duty to disclose to consumers that its

27
28

CLASS ACTION COMPLAINT

Croslite shoes would shrink and/or warp in hot environments, including direct sunlight, particularly since this is a material fact central to the shoes' core function.

40.    Finally, Defendant makes representations that its Products are a certain size when they are sold, but they do not disclose that they will not remain the advertised size because they shrink or warp n hot environments, including direct sunlight. A static shoe size is a material fact central to the shoes' core function.

**Defendant Engaged in a Lengthy and Widespread Deceptive Advertising Campaign**

41.    Defendant's deceptive advertisements, misrepresentations, and omissions were by no means confined to a single medium or a specific, limited period. Instead, Defendant's deceptive marketing and advertising campaign was both lengthy in duration and widespread in dissemination. That campaign, ongoing across years, on multiple platforms, and in many forms of media, consistently advertised the Products for uses that would result in their exposure to hot environments, including direct sunlight, while simultaneously omitting disclosure of the fact that doing so causes them to shrink and/or warp, including, without limitation, to the point they no longer fit.

42.    The misrepresentations appearing on Defendant's website (variously, https://www.crocs.com, https://crocs.shoes) across years are just one aspect of Defendant's larger deceptive advertising campaign. For example, these images, taken from the website as it appeared at various points in March and April 2023, depict the Products as suitable for use in hot environments, including direct sunlight, such as a beach:

CLASS ACTION COMPLAINT



43.    The examples shown above are by no means the only misrepresentations to feature prominently on Defendant's website over time. As an additional example, this image, taken from the website as it appeared on May 31, 2022, features photographs of the Products in hot environments, including direct sunlight, complete with a wave motif:

CLASS ACTION COMPLAINT



44.     The same wave motif and an express representation that the Products are suitable for "beach, pool, and beyond" feature in this image, taken from the Crocs website as it appeared on August 1, 2019, nearly three years earlier:

- 13 -

CLASS ACTION COMPLAINT

45.    Defendant's website is not the only place on the Internet where its misrepresentations can be found. Defendant's official product page or "store" on Amazon has for years featured imagery that strongly associates the Products with outdoor activities involving hot environments, including direct sunlight. The multiple photographs found on Defendant's Amazon product page, as it appeared on May 4, 2023, illustrate this point:



46.     Likewise, Defendant's official Pinterest site hosts images showing the Products in outdoor activities where they will be exposed to hot environments, including direct sunlight:



47.     Furthermore, the advertising featured above makes express representations that the Products are "made for the beach," the "[p]erfect shoes for the lake," "shoes for the beach," "shoes for beaches," a "perfect summer shoe," and are "fishing shoes," when they are none of these things. Substantially similar advertisements have been featured on the same websites for years.

48.     Defendant also has an official store on eBay where it has shown the Products in hot environments, including direct sunlight.



CLASS ACTION COMPLAINT

49.    Defendant's deceptive advertising campaign was not limited in scope to still photographs on the Internet. Its 2015 "Find Your Fun" campaign included several television advertisements that also ran on popular social media websites, including Facebook, Twitter, YouTube, and Pinterest. The television advertisement titled "Pool Shoes" (viewable in its entirety at https://www.ispot.tv/ad/7hyK/crocs-inc-pool-shoes) again associates the Products with recreational activities involving heat, including a shot of Crocs Classic Clogs floating in a sunny pool, as these still images taken from the advertisement indicate:





CLASS ACTION COMPLAINT

50.     The television advertisement titled "Beach Shoes" (viewable in its entirety at https://www.ispot.tv/ad/7hDl/crocs-inc-beach-shoes) likewise associates the Products with a fun-filled day at a hot, sunny, beach, as these still images taken from the advertisement indicate:



51.     The "Find Your Fun" campaign also included nationwide in-store displays and in-store advertising, which further repeated the same misrepresentations made elsewhere in both that specific campaign and Defendant's decade-long marketing strategy. For example, these displays, found in Crocs stores and other stores nationwide, use imagery similar to the imagery alleged elsewhere in this Complaint, which represent that the Products are suitable for

hot environments, including direct sunlight, such as beaches (arrows added by Plaintiffs' counsel):



52.      While Defendant may have concluded its "Find Your Fun" campaign, it has not concluded in-store advertising that shows the Products in hot environments, including direct sunlight, such as these more recent examples of in-store advertising from 2021 through 2022, as found at Crocs locations in the area of Los Angeles, California (arrows pointing at specific advertising added by Plaintiffs' counsel):





CLASS ACTION COMPLAINT

Upon information and belief, Defendant placed these advertisements in its stores in California and across the United States. Any person who would have walked in, or even by, a Crocs store while these advertisements were running would have been exposed to them.

53.    Overall, Defendant's deceptive advertisements, misrepresentations, and omissions, which were similar, and even identical to each other, appeared in multiple media as part of a coordinated and widely disseminated national advertising campaign that Defendant has maintained for likely over a decade. Defendant's advertising, both through its express written representations and use of highly suggestive imagery, misleads consumers into believing the Products are appropriate for activities involving hot environments, including direct sunlight when they are not. Moreover, at no point over the decades that Defendant has advertised the Products has it included any warning or disclaimer that the Products will shrink when exposed to hot environments, including direct sunlight.

**Products Made of Croslite Shrink When Exposed to Hot Environments, Including Direct Sunlight**

54.    The Products are made of a patented foam called Croslite. Croslite is a foamable ethylene vinyl acetate (EVA) along with polyolefin elastomer. The EVA material is trade-named Levirex.

55.    Croslite contracts upon exposure to heat and/or sunlight over time, which causes products made of Croslite to shrink. Many consumers wear the Products in hot environments, including direct sunlight, such as gardens, lakes, rivers, beaches and poolside—and take the shoes off in those environments. Given that the Products are marketed as outdoor shoes consumers often leave them outside or in the sun for hours or days at a time. This results in routine prolonged exposure to hot environments, including direct sunlight while the purchaser is not wearing the Products, which invariably causes the Products to shrink or warp, including, without limitation, to the point they no longer fit.

CLASS ACTION COMPLAINT

1

56.      This phenomenon has been documented in online videos,[2] screenshots of which

2

are displayed below:





57.     Croslite shrinks on exposure to heat due to polymer relaxation, a well-known phenomenon that occurs in all polymeric materials. Fundamentally, polymer relaxation is the process in which polymers disentangle due to molecular motions. The process of molding the Products "stretches out" polymer chains, a configuration that is disfavored under the laws of thermodynamics. When exposed to heat, polymer chains relax, adopting coiled, shrunken, state. This process is directly influenced by temperature and time; it occurs more rapidly at higher temperatures and occurs more over greater periods of time.

58.     Shrinkage occurs in all Products, regardless of the shape, style, size, or color of the product because Croslite *itself* shrinks upon exposure to ordinary hot environments, including direct sunlight over time. Thus, the particular shape of the Product does not make a difference. Exposure to ordinary hot environments, including direct sunlight reacts with the Croslite and causes the Croslite within the Product to contract, which, in turn, causes the

CLASS ACTION COMPLAINT

overall shoe to shrink since the Products consist of 90% or more of Croslite. Because of their misrepresentations and deception, Plaintiffs and Class Members paid a premium for the Products. Had Plaintiffs and Class Members known that the Products would shrink if exposed to hot environments, including direct sunlight, they would not have purchased the Products or would have paid significantly less for them.

59.     In purchasing the Products, Plaintiffs and Class Members did not receive the full value that they were led to believe they would receive.

### Defendant Knew the Products Shrink, But Intentionally Refused to Inform or Warn Consumers

60.     Defendant has been selling Products made of Croslite since it released the first model of its shoes in 2001. Defendant sells the Products through its retail stores and online, as well as through authorized retailers, which include DSW, Walmart, Amazon, etc...

61.     Defendant is deeply familiar with the chemical properties of Croslite and invests in research and development efforts as to the materials it uses for its products. Defendant's December 31, 2015 10-K, for instance, touts "[o]ur products include footwear and accessories that utilize our proprietary closed-cell resin, called Croslite."

62.     Defendant formulates Croslite by sourcing the materials used to create it from third parties and "protect[s] the formula by using exclusive supply agreements for key components, confidentiality agreements with our third-party processors" among other things. *Id*. With the Croslite, Defendant manufactures the Products.

63.     For over a decade, Defendant has been aware that its Products made of Croslite shrink when exposed to hot environments, including direct sunlight. Defendant has received thousands of complaints regarding the shrinkage problems, but refuses to acknowledge the design defect with a point of sale warning or disclaimer, so as not to compromise additional sales. The following are but a few of the consumer posts on Defendant's website:

- I had black ones that were my gardening crocs and i loved them but regretfully I left them in my car one hot day this summer. Who knew - crocs shrink in the heat! I wouldn't have had to buy new ones if they hadn't shrunk but I do like the aqua color of my new ones! Still using them for gardening.

- This purchase was a replacement for a pair of crocs that shrunk when placed near the floor register. Croc would not replace them under warranty. I was stuck purchasing a new pair.

- Shrinks in Sunlight

- [A]fter getting wet and drying in the sun a few times, I could barely get them 1/2 way on my feet. I normally take a 10 1/2, had to upsize to 11 cuz they don't offer 1/2 sizes. Love the shoes, but be aware that the plastic can shrink and stiffen from exposure to sun and water.

- If left outside or in sun they shrink rather quickly.

- Only thing is, do not leave outside in hot weather, they shrink.

- Hot cars make them shrink a full size. Luckily mom can wear them after they shrink.

- The new material used to make Crocs is not good at all!! The old material could be left in the sun with no problems. Now they shrink three sizes and don't fit. My husband has had to buy 3 new pair in the last 6 weeks!!!

- The only issue we have with this product is when my [daughter] was at a friends [sic] house over the summer she went swimming and upon putting her Crocs back on they had shrunk, apparently from being in the sun. As a consumer that is very disappointing because you would think this is the perfect product for beach and pool. I had never heard of any shoes shrinking in the sun. For the price of the shoes that was very disappointing. People of all ages love Crocs and state that they are the one of the most comfortable shoes on the market. I would hope that there is something that the Crocs Manufacturer can do to rectify this problem or at least replace the shoes at no charge to the consumer if this should happen to them.

- My favorite shoe but I am hesitant to buy again bc multiple times 1 shrinks like a lot

- They shrink in the heat (which is what sandals are for...)

- These shrunk/deformed after a trip to Mexico. I realize the heat can be extreme, but I have never had a shoe shrink before. These were borderline too big for me, and now my foot falls over them. They literally shrunk 2- 3 sizes. One more than the other. I wore them 4 times. (All my other shoes fit fine and I have measured them against the others to confirm that I didn't go crazy/have an adult growth spurt.)

- Please get a size bigger then what you normally wear they will shrink

- Bought these for the garden and yard but they shrunk when they dried out on my deck now I can't wear them

*See* https://www.crocs.com/p/classic-clog/10001.html?cgid=outlet-men&cid=75U (last visited November 15, 2022).

CLASS ACTION COMPLAINT

64.    Defendant is also aware of numerous complaints online on third-party websites regarding the shrinkage defect, as well as online instructions from third-parties on how to stretch the Products back to their original size. *See, e.g.,* https://feet.thefuntimesguide.com/shrink_crocs_shrunk/ ("How to Unshrink Crocs"); https://styleandrun.com/unshrink-crocs/ ("Crocs Shrink in the Sun: Here's How to Unshrink Them").

65.    Defendant has even admitted in communications to retail stores carrying the Products that it knew the Products shrank after exposure to sun and/or heat.

66.    But Defendant does not disclose or otherwise warn consumers about the shrinkage problem because shoes that do not fit are worthless to consumers, and consumers are not willing to pay as much for shoes that will invariably shrink and/or warp, including, without limitation, to the point they no longer fit. Despite this, Defendant does not place any notice or warning on the Products informing consumers of shrinkage upon exposure to hot environments, including direct sunlight, nor does Defendant include instructions to store the Products in a dark, cool space when not in use.

67.    Defendant's motive to conceal this information from consumers goes beyond simply hiding the problems with its Products. It allows Defendant to significantly boost profits because it causes consumers to *buy more Products*. The reason is simple. When a consumer buys a shoe that shrinks, including, without limitation, to the point it is no longer wearable, it means the consumer will in all likelihood buy a replacement. Because ordinary shoes do not shrink in size (and reasonable consumers do not expect shoes to shrink), this gives Defendant an incredible advantage over competitors since it means consumers will buy replacement Products, and, if they do figure out why the Crocs shrunk, endeavor not to expose them to in hot environments, including direct sunlight.

CLASS ACTION COMPLAINT

68.     A graph in Defendant's December 31, 2021 10-K illustrates how powerful this advantage is:



69.     The Dow Jones U.S. Footwear Index includes companies that Defendant identifies as competitors, such as NIKE, Inc., Deckers Outdoor Corporation, Sketchers U.S.A., Inc., Steve Madden Ltd., and Wolverine Worldwide, Inc.

70.     Further, Defendant's December 31, 2021 10-K states that "[t]he Americas segment grew revenues 86.1% for the year ended December 31, 2021 compared 2020, as a result of higher volume and higher ASPs in both our wholesale and DTC channels."

71.     Defendant's ability to generate such high "volume" is in large part due to the fact that the Products shrink to the point they must be replaced.

<u>**PLAINTIFFS' ALLEGATIONS**</u>

**Chelsea Garland**

72.     Plaintiff Chelsea Garland purchased a pair of Crocs Classic Clogs shoes and pairs of Classic Clogs (toddlers) for her son and daughter in San Diego, California between 2021 and 2023 from Crocs that shrunk shortly after purchase. Ms. Garland shopped for Crocs shoes both online and in-store during the 2021 and 2023 time period and saw, and relied on, the representations on the Product and the webpage for the Classic Clogs that represented that the shoes had a certain shoe size.

73.     Ms. Garland lives in San Diego near the beach and goes to the beach often with her family. Both she and her children would wear the Products to the beach. Shortly after buying the Products, she discovered that they had inexplicably shrunk and/or warped, including, without limitation, to the point where they no longer fit her and her children.

74.     Plaintiff Garland exposed the Products to normal sun and hot weather that was common for her California domicile. She did not place or store the Products in any conditions beyond which she expected an ordinary pair of shoes to endure.

75.     Plaintiff Garland purchased the Crocs shoes primarily for personal, family, or household use. More specifically, she purchased them for her and her children to wear outside, including at the beach.

76.     Specifically, prior to purchasing the Classic Clogs, Plaintiff Garland saw Defendant's representations that the Products were appropriate for hot and/or sunny conditions. She also saw ads in-store prior to her purchase that showed the shoes as suitable for use at the beach, including in-store ads that showed the shoes on beaches. These advertisements were a part of Defendant's lengthy and widespread deceptive advertising campaign described earlier in this Complaint, which Plaintiff Garland has seen, and relied on, over many years.

77.     Plaintiff Garland purchased Crocs shoes after she saw Defendant's marketing materials, including in-store, which indicated the shoes were appropriate for outdoor use in sunny, hot weather. Plaintiff Garland saw the represented shoe sizes on the product webpage but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight. She additionally saw the product labels, including the shoe size, but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight.

78.     Plaintiff Garland paid for the Products under the mistaken belief that the shoes were durable and capable of withstanding use in hot environments, including direct sunlight; that the shoes were of quality for ordinary use as shoes; and would remain their represented shoe size in ordinary conditions. If she had known that the shoes were not fit for these purposes and/or that normal use would cause the shoes to shrink and/or warp, including, without

limitation, to the point where they no longer fit her and/or her children, she would not have purchased the Products, or would have paid less for them.

79.    Ms. Garland continues to be interested in Crocs shoes, and in particular the Crocs Classic Clog model of shoes that she previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in hot environments, including direct sunlight. However, she does not know whether Crocs shoes she may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

**Jacqueline Mongalo**

80.    Plaintiff Jacqueline Mongalo purchased two new pairs of Crocs Classic Clogs shoes and a pair of Classic Clogs (kids) from Crocs' online store from her home in Pittsburg, California around 2022 that shrunk shortly after purchase. Ms. Mongalo shopped for Crocs shoes from Crocs' online store in 2022 and saw, and relied on, the Products' webpages, which represented that the shoes had a certain shoe size.

81.    Shortly after purchasing the Products, Ms. Mongalo left them outside in regular outdoor heat and discovered that they had inexplicably shrunk and/or warped, including, without limitation to the point where they no longer fit. At the time, Ms. Mongalo also had a pair of Crocs that she wore indoors and noticed that the pairs she left outside were significantly tighter in fit by comparison.

82.    Plaintiff Mongalo exposed the Products to normal sun and hot weather that was common for her California domicile. She did not place or store the Products in any conditions beyond which she expected an ordinary pair of shoes to endure.

83.    Plaintiff Mongalo purchased the Crocs shoes primarily for personal, family, or household use. More specifically, she purchased them for her and her child to wear outside.

84.    Specifically, prior to purchasing the Classic Clogs, Plaintiff Mongalo saw Defendant's representations online that the Products were appropriate for hot environments, including direct sunlight. These advertisements were a part of Defendant's lengthy and

CLASS ACTION COMPLAINT

widespread deceptive advertising campaign described in this Complaint, which Plaintiff Mongalo has seen, and relied on, over many years.

85.    Plaintiff Mongalo purchased the Crocs shoes after she saw Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in sunny, warm weather, and the Products' webpages, which indicated the shoes were a particular size but did not see any warnings that they were not appropriate for use in in hot environments, including direct sunlight. Plaintiff Mongalo also saw the represented shoe size on the Product webpage, but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight.

86.    Plaintiff Mongalo paid for the Products under the mistaken belief that the shoes were durable and capable of withstanding hot environments, including direct sunlight; that the shoes were of quality for ordinary use as shoes; and would remain their represented shoe size. If she had known that the shoes were not fit for these purposes and/or normal use would cause a significant shrinkage and/or warping rendering them unwearable, she would not have purchased the Products, or would have paid less for them.

87.    Ms. Mongalo continues to be interested in Crocs shoes, and in particular the Crocs Classic Clogs model of shoes that she previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in hot environments, including direct sunlight. However, she does not know whether Crocs shoes she may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

**Melissa Harmon**

88.    Plaintiff Melissa Harmon purchased a pair of Baya Clogs shoes from Crocs' Amazon store, while she was in Fresno, California in 2024 that shrunk shortly after purchase. Ms. Harmon shopped for Crocs shoes both online in 2024 and saw, and relied on, the Amazon product webpage for the Classic Clogs.

89.     Ms. Harmon left the Baya Clogs in her garage in the heat and, about a month after purchase, she discovered that they had inexplicably shrunk and/or warped, including, without limitation, to the point where they no longer fit.

90.     While Plaintiff Harmon had exposed the Product to normal sun and warm weather that was common for her California domicile, she had not placed or stored the shoes in any conditions beyond which she expected an ordinary pair of shoes to endure.

91.     Plaintiff Harmon purchased the Crocs shoes primarily for personal, family, or household use. More specifically, she purchased them to wear outside.

92.     Plaintiff Harmon purchased the Crocs shoes after she saw Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in hot environments, including direct sunlight, and the Crocs' Amazon product webpage, which indicated the shoes were a particular size but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight. Plaintiff Harmon also reviewed the label for the shoes and saw the represented shoe size but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight.

93.     Plaintiff Harmon paid for the Product under the mistaken belief that the shoes were durable and capable of withstanding hot environments, including direct sunlight; that the shoes were of quality for ordinary use as shoes; and would remain their represented shoe size. If she had known that the shoes were not fit for these purposes and/or normal use would cause shrinkage and or warping rendering them unwearable, she would not have purchased the Product, or would have paid less for it.

94.     Ms. Harmon continues to be interested in Crocs shoes, and in particular the Baya Clogs model of shoes that she previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in hot environments, including direct sunlight. However, she does not know whether Crocs shoes she may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether her future purchases may subject her to similar economic harm.

**Philip Werner**

- 30 -

CLASS ACTION COMPLAINT

95.     Plaintiff Philip Werner purchased two pairs of Classic Clogs shoes from Crocs' store in Ontario, California within the last two years that shrunk shortly after purchase. Mr. Werner shopped for Crocs in-store from 2022 to 2023.

96.     Mr. Werner bought the Classic Clogs to wear at his vacation home in Arizona. When he left his vacation home, he stored the Classic Clogs in his closet, which could get hot without air conditioning. Shortly after purchase, when he returned, he noticed the Classic Clogs inexplicably shrunk and/or warped, including, without limitation, to the point where they no longer fit.

97.     While Plaintiff Werner had exposed the Product to normal sun and warm weather, he had not placed or stored the shoes in any conditions beyond which he expected an ordinary pair of shoes to endure.

98.     Plaintiff Werner purchased the Crocs shoes primarily for personal, family, or household use. More specifically, he purchased them to wear outside and on the river.

99.     Plaintiff Werner purchased the Crocs shoes after he saw Defendant's marketing materials, which indicated the shoes were appropriate for outdoor use in hot environments, including direct sunlight, including in Crocs' stores when he shopped for Crocs there. Plaintiff Werner also reviewed the label for the shoes and saw the represented shoe size but did not see any warnings that they were not appropriate for use in hot environments, including direct sunlight.

100.    Plaintiff Werner paid for the Product under the mistaken belief that the shoes were durable and capable of withstanding hot environments, including direct sunlight; that the shoes were of quality for ordinary use as shoes; that the shoes were fit for use in sun and heat; and would remain their represented shoe size. If he had known that the shoes were not fit for these purposes and/or that normal use would cause shrinkage and/or warping rendering them unwearable, he would not have purchased the Product, or would have paid less for it.

101.    Mr. Werner continues to be interested in Crocs shoes, and in particular the Crocs Classic Clogs model of shoes that he previously purchased, and similar Crocs shoes marketed as suitable for outdoor use in hot environments, including direct sunlight. However, he does

not know whether Crocs shoes he may purchase in the future will be subject to the same defect, and thus is subject to uncertainty whether his future purchases may subject him to similar economic harm.

## CLASS ALLEGATIONS

102.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> **Class**: All persons who purchased, in the state of California, the Products from November 22, 2018 to the present (the "Class").
>
> **Direct Purchase Subclass**: All Class Members who purchased the Products directly from Crocs (either online or in-person) (the "Subclass").

103.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

104.     Numerosity: Plaintiffs do not know the exact size the Class/Subclass, but they estimate that each is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

105.     Common Questions Predominate: This action involves common questions of law and fact to the Class/Subclass because each class member's claim derives from the deceptive, misleading, and/or false statements and omissions that led them to believe that the Products would retain their represented size and were suitable for everyday use and could withstand routine exposure to hot environments, including direct sunlight. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class/Subclass to recover. The questions of law and fact common to the Class/Subclass are:

a.  Whether Defendant deceptively, unlawfully, and/or unfairly misrepresented to the Class/Subclass that its Products were capable of withstanding routine use and storage in hot environments, including direct sunlight;

b.  Whether Defendant deceptively, unlawfully, and/or unfairly represented the Products to have a certain shoe size, even though the Products would not retain the advertised size in hot environments, including direct sunlight;

c.  Whether Defendant made express warranties to the Class/Subclass;

d.  Whether the Products came with implied warranty that they are merchantable;

e.  Whether Defendant's actions violate California laws invoked herein;

f.  Whether Defendant's advertising and marketing regarding the Products was likely to deceive reasonable consumers;

g.  Whether Defendant's representations or omissions are material to reasonable consumers;

h.  Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

i.  The amount of profits and revenues earned by Defendant as a result of the conduct;

j.  Whether class members are entitled to restitution, injunctive, and other equitable relief and, if so, the nature (and amount) of such relief; and

k.  Whether Class/Subclass members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

106.  Typicality: Each Plaintiff's claims are typical of the claims of the other members of the Class/Subclass because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class/Subclass were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

107.     Adequacy of Representation: Each Plaintiff will fairly and adequately protect the interests of all Class/Subclass members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which she complains. Each Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of Class/Subclass members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class/Subclass. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all Class/Subclass members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class/Subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

108.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class and Subclass will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class/Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

109.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**PLAINTIFFS' FIRST CAUSE OF ACTION**
**(Breach of Express Warranty)**
**On Behalf of Plaintiffs, the Class and the Subclass**

110.    Each Plaintiff realleges and incorporates by reference the paragraphs of this Amended Class Action Complaint as if set forth herein.

111.    This cause of action is brought pursuant to California Commercial Code § 2100, *et seq.*, as well as the common law.

112.    Each Plaintiff, and those similarly situated, were "buyers" of goods as defined in Cal. Com. Code § 2103.

113.    Defendant is a "seller" and "merchant" as those terms are defined in Cal. Com. Code §§ 2103 and 2104.

114.    The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

115.    Defendant provided express warranties for the Products by representing that the Products were a certain size and through misleading advertising and marketing promising the shoes are "pool," "garden," and "beach" appropriate. Defendant's affirmative size representations and descriptions of the Products were made part of the basis of the bargain and thereby created an express warranty that the Products conformed to that description pursuant to the UCC express warranty provisions adopted by California under Cal. Com. Code § 2313. Plaintiffs, Class, and Subclass Members thereby relied upon such warranties. Consumers, not retailers, were the intended beneficiaries of the Limited Warranty. *See* Cal. Civ. Code § 1559 (allowing a third-party beneficiary to enforce a contract made expressly for his or her benefit). Moreover, consumers were exposed to the size representations and advertisements with the express warranties, as explained above. The warranty was a material factor in the decision of Plaintiffs and those similarly situated to purchase the Products at the price they paid, and became part of the basis for the transaction.

116.     Defendant further stated the Products were suitable for hot environments, including direct sunlight, as alleged above. Despite these affirmative representations in advertisements and marketing materials, Defendant breached the express warranty to each Plaintiff and members of the Class and Subclass when it delivered to them Products that did not maintain their represented size and/or shape when exposed to hot environments, including direct sunlight.

117.     The defect in the Products was not apparent at the time of purchase because Defendant knowingly and intentionally failed to disclose that the Products shrink and/or warp, including, without limitation, to the point where they no longer fit when exposed to hot environments, including direct sunlight.

118.     As a direct and proximate result of the Defendant's breach of the express warranties, Plaintiffs and each member of the Class and Subclass have suffered damages, in that the Products they purchased were so inherently flawed, unfit, or unmerchantable as to have significantly diminished or no intrinsic market value. Plaintiff, individually and on behalf of the Class and Subclass, seeks all damages permitted by law, including compensation for the cost of purchasing Products, along with all other incidental and consequential damages, equitable relief, and all other relief allowed by law.

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314)**
**On Behalf of Plaintiffs, the Class and the Subclass**

119.     Each Plaintiff realleges and incorporates by reference the paragraphs of this Amended Class Action Complaint as if set forth herein.

120.     This cause of action is brought pursuant to California Commercial Code § 2100, *et seq.*, as well as the common law.

121.     Each Plaintiffs and members of the Class and Subclass were "buyers" of goods as defined in California Commercial Code § 2103.

122.     Defendant is a "seller" and "merchant" as those terms are defined in California Commercial Code §§ 2103 and 2104.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

123.    The Products are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

124.    A warranty that the Products were in merchantable condition and fit for the ordinary purpose for which the Products are used is implied by law pursuant to Cal. Com. Code § 2314. As alleged above, Plaintiffs and members of the Class and Subclass relied on advertisements. Moreover, consumers, not retailers, were the intended beneficiaries of this implied warranty, as demonstrated by Crocs' Limited Warranty, which was clearly written with consumers, not retailers, as the intended beneficiaries. *See* Cal. Civ. Code § 1559 (allowing a third-party beneficiary to enforce a contract made expressly for his or her benefit).

125.    Defendant sold Products that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. Unbeknownst to Plaintiffs and members of the Class and Subclass, the Products were designed such that they shrink and/or warp, including, without limitation, to the point where they become unwearable when exposed to hot environments, including direct sunlight. This was a defect that made the Products unsuitable for ordinary use. The Products are intended to be worn as shoes; however, the defect causes the Products to shrink and/or warp to the point where they no longer fit the intended user and, thus, are rendered useless. This defect was known to Defendant and not reasonably discoverable prior to purchase by Plaintiffs or members of the Class and Subclass. The Products were not in merchantable condition or fit for their ordinary purpose due to the defect.

126.    As alleged above, to the extent there were disclaimers, they were not of a size, type, and location that would adequately inform a reasonable consumer that the Products alleged herein were not as represented. Defendant's Limited Warranty attempted to limit the duration of the implied warranty of merchantability to 90 days from the date of sale, but failed to do so in conspicuous terms that were available to the consumer at the time and point of purchase.

127.    Defendant breached the implied warranty of merchantability to each Plaintiff and members of the Class and Subclass Members when it delivered to them Products that

CLASS ACTION COMPLAINT

would fail to maintain their represented size and shape and become unusable when exposed to hot environments, including direct sunlight.

128.    The defect in the Products was not apparent at the time of purchase because Defendant failed to disclose prior to purchase that the Products shrink and/or warp when exposed to hot environments, including direct sunlight.

129.    As a result of Defendant's sale of the Products that do not perform as warranted and are unfit for expected use, Plaintiffs, and members of the Class and Subclass, have suffered damages in the amount to be proved at trial.

## PLAINTIFFS' THIRD CAUSE OF ACTION
### (Fraudulent Concealment)
### On Behalf of Each Plaintiff, the Class, and the Subclass

130.    Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

131.    Defendant committed fraud by intentionally concealing, suppressing, and failing to disclose material facts regarding the Products, including that the Products will shrink and/or warp, including, without limitation, to the point where they no longer fit, when exposed to hot environments, including direct sunlight.

132.    These omitted and concealed facts were material to consumers because they would be relied on by a reasonable person purchasing shoes. Consumers, including Plaintiffs and members of the Class and Subclass reasonably believe that the shoes they purchase will retain the size represented to them at purchase even when exposed to hot environments, including direct sunlight. The ability of a shoe to maintain its size during exposure to common environmental conditions is a material fact that is central to the shoe's function. Shoes that do not retain their represented size at purchase, like the Products, are worth far less than shoes that do. The omitted and concealed facts were, thus, also material because they directly impact the value of the Products purchased since they effectively last for a shorter duration than shoes that do not shrink.

133.    A reasonable consumer would not have expected the Products to shrink in real world conditions and become unwearable such that they are unfit for use. Reasonable consumers expect that shoes will remain the same size as at purchase and that ordinary exposures to hot environments, including direct sunlight will not affect the size of a shoe. Plaintiffs and class members did not know these facts, which were concealed from them by Defendant.

134.    Defendant had a duty to disclose that the Products will not retain their represented size at purchase because Croslite shrinks and/or warps when exposed to hot environments, including direct sunlight including, without limitation, to the point where they no longer fit. Defendant had a duty to disclose such facts because (a) the true facts were known and/or accessible only to Defendant and (b) the true facts were not known to or reasonably discoverable by Plaintiffs and members of the Class and Subclass. Further, Defendant had a duty to disclose because it made partial representations that were misleading, while concealing that the Products shrink and/or warp when exposed to hot environments, including direct sunlight. Such partial representations include Defendant's representations that the Products were a certain size and were suitable for hot environments, including direct sunlight, as alleged above. Defendant additionally made representations and statements that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

135.    Had the truth been revealed, Plaintiffs and members of the Class and Subclass would not have purchased the Products, or would have paid less for them. Accordingly, Defendant is liable to Plaintiffs members of the Class and Subclass for damages in an amount to be proven at trial.

136.    Defendant's acts were done deliberately, with intent to defraud, in reckless disregard of the rights of Plaintiffs and members of the Class and Subclass, and to enrich themselves. Defendant's misconduct warrants assessment of punitive damages in an amount sufficient to deter such conduct in the future, which shall be determined at trial.

CLASS ACTION COMPLAINT

**PLINTIFFS' FOURTH CAUSE OF ACTION**
**(Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Each Plaintiff, the Class, and the Subclass**

137.    Each Plaintiff realleges and incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

138.    As set forth above, Defendant falsely and/or deceptively represented to each Plaintiff and members of the Class and Subclass that the Products were free of defects, were merchantable for use as shoes, and were and suitable for hot environments, including direct sunlight, when, in fact, the Products were not. Defendant knew that the Products were not suitable for use at the beach, pools, or any other sunny and/or hot conditions that would expose the Products to sun and/or heat, yet advertised that they were suitable for such use. Defendant additionally made false and/or deceptive representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

139.    Further, Defendant affirmatively misrepresented the sizes for each Product. Throughout the class period, each Product and Product webpage uniformly represented a certain size for each Product. Plaintiffs, members of the Class and Subclass, saw the size represented and relied on it when purchasing the Products. In the absence of a disclosure that the Products would not retain their represented size in hot environments, including direct sunlight, Defendant's size representation was misleading. Plaintiffs, and members of the Class and Subclass, would not have purchased the Products, or at least would have paid less for the Products, had they known the Products would not retain their represented size after exposure to hot environments, including direct sunlight.

140.    Defendant's misrepresentations were material at the time they were made. They concerned material facts that were essential to the purchasing decisions of Plaintiffs and members of the Class and Subclass. Shoes that will not maintain the size represented at purchase and/or no longer fit after exposure to hot environments, including direct sunlight, are worth less to consumers than those that will maintain their represented size.

CLASS ACTION COMPLAINT

141.    Plaintiffs and members of the Class and Subclass, reasonably relied to their detriment on Defendant's representations. Had Plaintiffs, and members of the Class and Subclass, been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing–or paying less for–the Products.

142.    By and through such fraud, deceit, and/or misrepresentations, Defendant intended to induce Plaintiffs, and members of the Class and Subclass, to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs, and members of the Class and Subclass, to, without limitation, purchase the Products.

143.    As a direct and proximate result of Defendant's fraud and misrepresentations, Plaintiffs, and members of the Class and Subclass, have suffered damages. In particular, Plaintiffs seek to recover, on behalf of themselves and the Class and Subclass, the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial.

144.    Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and the Class and Subclass.

**PLAINTIFFS' FIFTH CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act,**
**California Civil Code § 1750, et seq.)**
**On Behalf of Plaintiffs, the Class, and the Subclass**

145.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

146.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

147.    Defendant's actions, representations, omissions, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

CLASS ACTION COMPLAINT

148.     Plaintiffs and members of the Class and Subclass are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

149.     The Products that Plaintiffs and members of the Class and Subclass purchased are "goods" within the meaning of California Civil Code § 1761.

150.     By engaging in the actions, representations, and conduct set forth in this Class Action Complaint, as alleged above, Defendant has violated, and continues to violate, §§ 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(4), Defendant used deceptive representations in connection with goods. In violation of California Civil Code § 1770(a)(5), Defendant represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code § 1770(a)(7), Defendant's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(9), Defendant advertised goods with intent not to sell them as advertised.

151.     Specifically, Defendant's acts and practices led consumers to believe that the Products were free of defects, were merchantable for use as shoes, and were suitable for hot environments, including direct sunlight. Defendant additionally made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products would mold to their feet and fit well.

152.     Further, Defendant affirmatively misrepresented the sizes for each Product. Throughout the class period, each Product and Product webpage uniformly represented a certain size for each Product. Plaintiffs, members of the Class and Subclass, saw the size represented and relied on it when purchasing the Products. In the absence of a disclosure that the Products would not retain their represented size in hot environments, including direct sunlight, Defendant's size representation was misleading. Plaintiffs, and members of the Class and Subclass, would not have purchased the Products, or at least would have paid less for the Products, had they known the Products would not retain their represented size after exposure to hot environments, including direct sunlight.

153.    Further, Defendant omitted material facts that it had a duty to disclose, as alleged above.

154.    Defendant's concealment of the true characteristics of the Products was material to Plaintiffs and members of the Class and Subclass. Had they known the truth, Plaintiffs, and members of the Class and Subclass, would not have purchased the Products or would have paid significantly less for them.

155.    Defendant, as alleged above, had an ongoing duty to Plaintiffs, and members of the Class and Subclass, to refrain from unfair and deceptive practices under the CLRA in the course of their business. Specifically, Defendant owed Plaintiffs, and members of the Class and Subclass, a duty to disclose material facts concerning the Products because it possessed exclusive knowledge, it intentionally concealed from Plaintiffs and members of the Class and Subclass that the Products would shrink and/or warp, including, without limitation, to the point they no longer fit when exposed to hot environments, including direct sunlight, and/or it made partial representations that were misleading since it concealed the aforementioned facts.

156.    Plaintiffs, and members of the Class and Subclass, had no way of learning the facts that Defendant had concealed or failed to disclose because they were unaware of the Product's physical properties.

157.    Plaintiffs, and members of the Class and Subclass, suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

158.    Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and members of the Class and Subclass will continue to suffer harm.

159.    In July of 2022, Defendant received a notice and demand that Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. Despite receiving the notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them

of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and members of the Class and Subclass, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

160.    Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SIXTH CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiffs, the Class, and the Subclass**

161.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

162.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive, and/or misleading statements in connection with the advertising and marketing of the Products, and in particular those advertising the Products as a certain size at purchase, and as outdoor, "beach," and/or "pool" shoes.

163.    As set forth in this Class Action Complaint, Defendant has made representations and statements (by omission and commission) that led reasonable consumers to believe that that the Products were free of defects, were merchantable for use as shoes, and were suitable for hot environments, including direct sunlight, when, in fact, the Products were not.

164.    Further, Defendant affirmatively misrepresented the sizes for each Product. Throughout the class period, each Product and Product webpage uniformly represented a certain size for each Product. Plaintiffs, members of the Class and Subclass, saw the size represented and relied on it when purchasing the Products. In the absence of a disclosure that the Products would not retain their represented size in hot environments, including direct sunlight, Defendant's size representation was misleading. Plaintiffs, and members of the Class and Subclass, would not have purchased the Products, or at least would have paid less for the

Products, had they known the Products would not retain their represented size after exposure to hot environments, including direct sunlight.

165.    Plaintiffs, and members of the Class and Subclass, relied to their detriment on Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiffs, and members of the Class and Subclass, been adequately informed and not intentionally deceived by Crocs, they would have acted differently by, without limitation, paying less for the Products.

166.    Defendant's acts and omissions are likely to deceive the general public.

167.    Defendant engaged in these false, misleading, and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

168.    The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

169.    Plaintiffs seek, on behalf of members of the Class and Subclass, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, members of the Class and Subclass, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Even if Plaintiffs did not buy the Products directly from Defendant, a certain amount of money flowed from Plaintiffs who purchased the Products through retailers to Defendant. Plaintiffs seek restitution of those amounts. If Plaintiffs' and members of the Class and Subclass's claims at law fail, Plaintiffs, members of the Class and Subclass, and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered. Plaintiffs seek, on behalf of the Class and Subclass, an injunction to prohibit Defendant from continuing to engage in the false, misleading, and deceptive advertising and marketing practices complained of herein. The

acts complained of herein occurred, at least in part, within three (3) years preceding the filing of the Class Action Complaint.

170.    Plaintiffs, and members of the Class and Subclass are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading, and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

171.    As a direct and proximate result of such actions, Plaintiffs, and members of the Class and Subclass, have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**PLAINTIFFS' SEVENTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**On Behalf of Plaintiffs, the Class, and the Subclass**

172.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

173.    In selling the Products to consumers, Defendant made false and misleading statements regarding them, as alleged above. Defendant, however, deceptively failed to inform consumers, at the time of their purchase, that the Products were not free of defects, were not merchantable for use as shoes, and were not suitable for hot environments, including direct sunlight. Defendant additionally made representations and statements (by omission and

CLASS ACTION COMPLAINT

commission) that led reasonable consumers to believe that that the Products would mold to their feet fit well.

174.    Further, Defendant affirmatively misrepresented the sizes for each Product. Throughout the class period, each Product and Product webpage uniformly represented a certain size for each Product. Plaintiffs, members of the Class and Subclass, saw the size represented and relied on it when purchasing the Products. In the absence of a disclosure that the Products would not retain their represented size in hot environments, including direct sunlight, Defendant's size representation was misleading. Plaintiffs, and members of the Class and Subclass, would not have purchased the Products, or at least would have paid less for the Products, had they known the Products would not retain their represented size after exposure to hot environments, including direct sunlight.

175.    These representations were material at the time they were made. They concerned material facts that were essential to the decisions of Plaintiffs, and members of the Class and Subclass, regarding how much to pay for the Products.

176.    Defendant made identical misrepresentations and omissions to members of the Class and Subclass regarding the Products.

177.    Defendant should have known its representations were false, and that it had no reasonable grounds for believing them to be true when it made them.

178.    By and through such negligent misrepresentations, Defendant intended to induce Plaintiffs, and members of the Class and Subclass, to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiffs, and members of the Class and Subclass, without limitation, to purchase the Products at the price they paid.

179.    Plaintiffs, and members of the Class and Subclass, reasonably relied on Defendant's representations. Specifically, Plaintiffs, and members of the Class and Subclass, paid as much as they did for the Products.

180.    Because Plaintiffs, and the Class and Subclass, reasonably relied on Defendant's false representations, each Plaintiff, and the Class and Subclass, were harmed in the amount of

CLASS ACTION COMPLAINT

the price premium they paid (i.e., the difference between the price they paid for the Products and the price they would have paid but for Defendant's misrepresentations).

**PLAINTIFFS' EIGHTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, _et seq._)**
**On Behalf of Plaintiffs, the Class, and the Subclass**

181.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

182.    Within four (4) years preceding the filing of the Class Action Complaint, and at all times mentioned herein, Defendant has engaged in, and continues to engage in, unfair, unlawful, and deceptive trade practices in California by carrying out the unfair, deceptive, and unlawful business practices outlined in this Class Action Complaint. In particular, Defendant has engaged in, and continues to engage in, unfair, unlawful, and deceptive trade practices by, without limitation, the following:

a.    engaging in misrepresentation and omissions as described herein;

b.    violating the California Consumer Legal Remedies Act as described herein;

c.    breaching express and implied warranties as described herein; and

d.    violating the FAL as described herein.

183.    Plaintiffs, and the Class and Subclass, relied to their detriment on Defendant's unfair, deceptive, and unlawful business practices. Had Plaintiffs, and the Class and Subclass, been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation, not paying for, or, at a minimum, paying less for, the Products.

184.    Defendant's acts and omissions are likely to deceive the general public.

185.    Defendant engaged in these unlawful, deceptive, and unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, _et seq._ of the California Business and Professions Code.

186.    In addition to the unlawful and deceptive acts described above, Defendant engaged in unfair practices by violating the Federal Trade Commission's guides against bait

advertising. 16 C.F.R. §§ 238.1–4. The policy provides that "No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another." 16 C.F.R. § 238.2(a). Defendant's acts as alleged herein violated this policy, including its representations as to the shoe size and the Products' suitability for use in hot environments, including direct sunlight and the garden and/or the beach.

187.    Further, Defendant affirmatively misrepresented the sizes for each Product. Throughout the class period, each Product and Product webpage uniformly represented a certain size for each Product. Plaintiffs, members of the Class and Subclass, saw the size represented and relied on it when purchasing the Products. In the absence of a disclosure that the Products would not retain their represented size in hot environments, including direct sunlight, Defendant's size representation was misleading. Plaintiffs, and members of the Class and Subclass, would not have purchased the Products, or at least would have paid less for the Products, had they known the Products would not retain their represented size after exposure to hot environments, including direct sunlight.

188.    The practices alleged herein, which Defendant has used to its significant financial gain, also constitute unlawful competition and provides an unlawful advantage over Defendant's competitors as well as injury to the general public.

189.    As a direct and proximate result of such actions, Plaintiffs, and the Class and Subclass, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair, and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs, and the Class and Subclass, lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the Products and the price they would have paid but for Defendant's misrepresentations), in an amount to be proven at trial. If Plaintiffs' and members of the Class's

and Subclass's claims fail at law, Plaintiffs, and the Class and Subclass, and/or other consumers will have no adequate remedy at law by which they can obtain recovery for the economic harm they have suffered.

190.    Plaintiffs seek, on behalf of the Class and Subclass, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

191.    Plaintiffs seek, on behalf of the Class and Subclass, an injunction to prohibit Defendant from engaging in the misconduct alleged herein within a reasonable time after entry of judgment. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant was not entitled. Plaintiffs, the Class and Subclass, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of the Class and Subclass, respectfully request that the Court enter judgment against Defendant as follows:

A.    Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.    An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

1    E.    An award of punitive damages in an amount to be determined at trial, except for

2    those causes of action where punitive damages are not legally available;

3    F.    An award of treble damages, except for those causes of action where treble

4    damages are not legally available;

5    G.    An award of restitution in an amount to be determined at trial;

6    H.    An order requiring Defendant to pay both pre- and post-judgment interest on

7    any amounts awarded;

8    I.    For reasonable attorneys' fees and the costs of suit incurred; and

9    J.    For such further relief as this Court may deem just and proper.

10    **<u>JURY TRIAL DEMANDED</u>**

11    Plaintiffs hereby demand a trial by jury.

12    Dated: December 13, 2024

GUTRIDE SAFIER LLP

13

/s/Seth Safier/s/
14    Seth A. Safier (State Bar No. 197427)
    seth@gutridesafier.com
15    Marie A. McCrary (State Bar No. 262670)
    marie@gutridesafier.com
16    Anthony J. Patek (State Bar No. 228964)
    anthony@gutridesafier.com
17    Kali Backer (State Bar No. 342492)
    kali@gutridesafier.com
18    100 Pine Street, Suite 1250
    San Francisco, CA 94111
19    Telephone: (415) 639-9090
    Facsimile:  (415) 449-6469
20
    Attorneys for Plaintiffs
21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Docusign Envelope ID: B4F0E1BD-D415-4630-B20A-F5F0C895D895

**EXHIBT A**

I, Jacqueline Mongalo, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in Pittsburg, California. I purchased a pair of Crocs shoes from Crocs' online store from my home in Pittsburg, California in 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:    12/9/2024



Jacqueline Mongalo