**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (State Bar No. 215948)
Ruth Kwon (State Bar No. 334076)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:      (213) 547-4900
Facsimile:      (213) 547-4901
BWahlquist@kelleydrye.com
RKwon@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Jonathan Cooperman (*pro hac vice forthcoming*)
Caitlin Hickey (*pro hac vice forthcoming*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone:      (212) 808-7800
Facsimile:      (212) 808-7897
JCooperman@kelleydrye.com
CHickey@kelleydrye.com

*Attorneys for Defendant*
*Crocs, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE MONGALO, CHELSEA GARLAND, PHILIP WERNER, and MELISSA HARMON, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROCS, INC.<br><br>Defendant. | Case No. 3:24-cv-09037-TLT<br><br>(Assigned to Hon. Trina L. Thompson)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS; MEMORANDUM IN SUPPORT**<br><br>Date:   April 8, 2025<br>Time:  2:00 p.m.<br>Ctrm:  9, 19th Floor<br><br>Action Filed: December 13, 2025<br>Trial Date:   None Set |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

    **PLEASE TAKE NOTICE** that at 2:00 p.m. on April 8, 2025, or as soon thereafter as the matter may be heard before the Honorable Trina L. Thompson, in Courtroom 9, 19th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Crocs, Inc. ("Crocs") will and hereby does move this Court, pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, and the Court's inherent authority, for an order dismissing the Complaint ("Complaint") filed by Plaintiffs Jacqueline Mongalo, Chelsea Garland, Philip Werner, and Melissa Harmon's ("Plaintiffs") on the grounds that Plaintiffs' various claims are not sufficiently alleged to meet federal pleading requirements of plausibility and, where required, specificity.  In addition, or in the alternative, should any of Plaintiffs' claims survive the Motion to Dismiss, Crocs moves for Plaintiffs' class allegations to be stricken pursuant to Rule 12(f).

    These Motions are based on this Notice and Motions, the attached Memorandum, any Reply filed in support, all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this motion.

DATED: February 12, 2025

KELLEY DRYE & WARREN LLP
Becca Wahlquist
Ruth Kwon
Jonathan Cooperman (*pro hac vice* forthcoming)
Caitlin Hickey (*pro hac vice* forthcoming)

By:    */s/ Becca Wahlquist*
    Becca Wahlquist

350 S. Grand Avenue, Suite 3800
Los Angeles, CA 90035
BWahlquist@kelleydrye.com
(213) 547-4900

*Attorneys for Defendant Crocs, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    PROCEDURAL BACKGROUND ............................................................................ 2

III.   THE COMPLAINT'S ALLEGATIONS .................................................................. 3

IV.    MOTION TO DISMISS ........................................................................................... 7

    A.     Legal Standard ............................................................................................... 7

    B.     Each of Plaintiffs' Warranty Claims Is Subject To Dismissal. ..................... 7

    C.     Each of Plaintiffs' Fraud-Based Claims Is Subject To Dismissal. .............. 10

        1.     Plaintiffs' Fraud-Based Claims Fail to Satisfy Rule 9(b). ................. 10

        2.     None of Crocs' Alleged Misrepresentations are Actionable. ............. 13

            a.     Crocs' representations are not actionable as false statements. ...... 13
            b.     None of Crocs' alleged omissions are actionable. ....................... 15
            c.     None of Crocs' representations are likely to deceive a
                reasonable consumer. ................................................................... 16

    D.     Conclusion. .................................................................................................. 18

V.     MOTION TO STRIKE ........................................................................................... 18

    A.     Legal Standard ............................................................................................. 18

    B.     The Class is Overbroad and Includes Purchasers Without Article III
        Standing. ....................................................................................................... 19

    C.     The Proposed Classes are Not Certifiable Under this Court's Order in
        *Valentine* ..................................................................................................... 21

    D.     Plaintiffs' Proposed Class Period Improperly Exceeds The Statute of
        Limitations. .................................................................................................. 24

    E.     Conclusion. .................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
    411 F.Supp.3d 541 (N.D. Cal. 2019) ................................................................. 13, 14, 15, 16

*Am. Suzuki Motor Corp. v. Superior Ct.*,
    37 Cal.App.4th 1291 (1995), *as modified on denial of reh'g* (Sept. 21, 1995) ........................ 9

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................................. 24

*Apodaca v. Whirlpool Corp.*,
    No. 13-CV-00725, 2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ........................................ 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 7

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ................................................................................. 19, 20

*Broomfield v. Craft Brew All., Inc.*,
    No. 17-CV-01027, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ................................. 8, 9, 17

*Brown v. Madison Reed, Inc.*,
    No. 21-CV-01233, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ................................. 11, 12

*Bush v. Vaco Tech. Servs., LLC*,
    No. 17-CV-05605, 2019 WL 3290654 (N.D. Cal. July 22, 2019) ........................................ 25

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018) ............................................................................................ 24, 25

*Chow v. Neutrogena Corp.*
    No. 12- CV-04624, 2013 WL 5629777 (C.D. Cal. Jan. 22, 2013) ..................................... 22

*Cimoli v. Alacer Corp.*,
    546 F.Supp.3d 897 (N.D. Cal. 2021) ........................................................................... 8

*Clark v. Cal. Dep't of Forestry and Fire Protection*,
    212 F.Supp.3d 808 (N.D. Cal. 2016) ........................................................................... 7

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................................... 10

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ................................................................................... 13

*Cornejo v. Crocs, Inc.*,
    Case No. 24-6645 (9th Cir. Oct. 30, 2024) ............................................................... 3

*Davidson v. Apple, Inc.*,
    No. 16-CV-4942, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ........................................ 14

*Fierro v. Landry's Rest. Inc.*,
    32 Cal.App.5th 276 (2019) ............................................................................................ 25

*Frenzel v. AliphCom*,
    76 F.Supp.3d 999 (N.D. Cal. 2014) ......................................................................... 10, 13

*Fulfillium v. ReShape Med. LLC*,
    No. 18-CV-01265, 2018 WL 11354522 (C.D. Cal. Nov. 6, 2018) .................................... 25

*Gagetta v. Walmart, Inc.*,
    646 F.Supp.3d 1164 (N.D. Cal. 2022) ............................................................................. 9

*Garlough v. FCA US LLC*,
    No. 20-CV-01879, 2021 WL 4033177 (E.D. Cal. Sept. 3, 2021) ............................... 14, 15

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
    343 F.3d 1000 (9th Cir. 2003) ..................................................................................... 13

*Godecke v. Kinetic Concepts, Inc.*,
    937 F.3d 1201 (9th Cir. 2019) ....................................................................................... 7

*Gold v. Lumber Liquidators, Inc.*,
    No. 14-CV-05373, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) .................................... 10

*Govea v. Gruma Corp.*,
    No. 20-CV-8585, 2021 WL 1557748 (C.D. Cal. Mar. 1, 2021) ...................................... 17

*Hadley v. Kellogg Sales Co.*,
    243 F.Supp.3d 1074 (N.D. Cal. 2017) ........................................................................... 10

*Haskins v. Symantec Corporation*,
    No. 13-CV-01834 2013 WL 6234610 (N.D. Cal., Dec. 2, 2013) .................................... 12

*Hernandez v. Radio Sys. Corp.*,
    No. 22-CV-01861, 2023 WL 4291829 (C.D. Cal. May 10, 2023) .................................. 17

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ....................................................................................... 15

*Janney v. Mills*,
    944 F.Supp.2d 806 (N.D. Cal. 2013) ............................................................................. 10

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .................................. 12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................... 10, 11, 12

*Keen v. Coral Reef Prods., Inc.*,
   No. 14-CV-00814, 2015 WL 12910696 (C.D. Cal. 2015) ....................................... 19

*Kim v. Blue Triton Brands*,
   No. 22-CV-01907, 2022 WL 17061085 (C.D. Cal. Nov. 1, 2022), *aff'd sub*
   *nom. Kim v. BlueTriton Brands, Inc.*, No. 22-56063, 2024 WL 243343 (9th Cir.
   Jan. 23, 2024) ....................................................................................................... 8, 16, 17

*Klaehn v. Cali Bamboo, LLC*,
   No. 19-CV-1498, 2021 WL 3044166 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-
   55738, 2022 WL 1830685 (9th Cir. June 3, 2022) .......................................... 15, 16

*Mays v. Wal-Mart Stores, Inc.*,
   804 F. App'x 641 (9th Cir. 2020) ............................................................................. 19

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) .................................................................................... 7

*In re NJOY, Inc. Consumer Class Action Litig.*,
   No. 14-CV-00428, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ................................. 12, 25

*NuCal Foods, Inc. v. Quality Egg LLC*,
   918 F.Supp.2d 1037 (E.D. Cal. 2013) ..................................................................... 9

*Peacock v. 21st Amend. Brewery Cafe, LLC*,
   No. 17-CV-01918, 2018 WL 452153 (N.D. Cal. Jan. 17, 2018) ...................................... 16, 17

*Piatt v. Money Store*,
   819 F. App'x 477 (9th Cir. 2020) ............................................................................. 25

*Rasmussen v. Apple Inc.*,
   27 F.Supp.3d 1027 (N.D. Cal. 2014) ....................................................................... 13

*Robie v. Trader Joe's Co.*,
   No. 20-CV-07355, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ................................... 16, 17

*Route v. Mead Johnson Nutrition Co.*,
   No. 12-CV-7350, 2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ............................... 18

*In re SanDisk SSDs Litig.*,
   736 F.Supp.3d 786 (N.D. Cal. 2024) ....................................................................... 14

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-CV-02746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................ 9

*Stokes v. CitiMortgage, Inc.*,
   No. 14-CV-00278, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ............................. 18

*Suber v. VVP Servs., LLC*,
   No. 23-CV-02932, 2023 WL 8143876 (C.D. Cal. Oct. 25, 2023) .......................................... 24

*Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*,
   No. 16-CV-7140, 2017 WL 10591885 (C.D. Cal. Mar. 3, 2017) ..................................... 14, 15

*Tietsworth v. Sears*,
   720 F.Supp.2d 1123 (N.D. Cal. 2010) ..................................................................... 18, 19

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ................................................................................................ 12

*Torres v. Nissan N. Am. Inc.*,
   No. 15-CV-1503251, 2015 WL 5170539 (C.D. Cal. Sept. 1, 2015) ........................................ 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.*
   *Liab. Litig.*,
   754 F.Supp.2d 1145 (C.D. Cal. 2010) ...................................................................... 9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 19

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................... 7

*Watkins v. MGA Ent., Inc.*,
   574 F.Supp.3d 747 (N.D. Cal. 2021) ......................................................................... 8

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011) .......................................................................... 19, 20

*Yastrab v. Apple Inc.*,
   No. 5:14-CV-01974, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ....................................... 8

*Young v. Cree, Inc.*,
   No. 17-CV-06252, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) .......................................... 13

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..................................................................... 24

**Statutes**

Cal. Bus. & Prof. Code § 17208 .................................................................................. 24

Cal. Civ. Code § 338(d) ............................................................................................ 24

Cal. Com. Code § 2313 ............................................................................................. 8

Cal. Com. Code § 2607(3)(A) .............................................................................. 10, 23

1

Code. Civ. Proc. § 338(h) ................................................................................................................ 24

2

**Other Authorities**

3

Fed. Rules Civ. Proc., Rule 9(b) ........................................................................................ 1, 7, 10, 12

4

Fed. Rules Civ. Proc., Rule 12(b)(6) ........................................................................................ 1, 2, 7

5

Fed. Rules Civ. Proc., Rule 12(f) ................................................................................................. 18

6

Fed. Rules Civ. Proc., Rule 23(a) ................................................................................................. 22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I.    **INTRODUCTION**

2         The claims in this litigation will be familiar to the Court, as they repeat (almost word-for-

3    word) the allegations and legal theories that have long been asserted by the Plaintiffs in the related

4    *Valentine v. Crocs* action. Plaintiffs Jacqueline Mongalo, Chelsea Garland, Philip Werner, and

5    Melissa Harmon (collectively, "Plaintiffs") allege that Defendant Crocs, Inc.'s ("Crocs") shoes

6    made of at least 90% Croslite® (the "Products") are defective because they allegedly can shrink

7    when exposed to heat and sunlight. Plaintiffs each claim that their Crocs shoes shrank while they

8    stored the shoes—not while they were wearing them—and contend that Crocs knew that its shoes

9    would shrink with ordinary use, but failed to warn customers and instead misleadingly represented

10   and warranted that the Products would always retain their size. Plaintiffs fail to sufficiently allege

11   any valid legal claims.

12        As detailed in Part IV.B below, the breach of express and implied warranty claims (Claims

13   1–2) fail to state a viable claim and should be dismissed pursuant to Rule 12(b)(6). In pointing to

14   various advertisements—none of which advertise Crocs' plastic shoes as unshrinkable—Plaintiffs

15   fail to identify any express warranty of "size-stability" in Crocs' advertising. As to Plaintiffs'

16   implied warranty claim, Plaintiffs either claim to have purchased their shoes directly from Crocs or

17   an authorized seller (from www.crocs.com, from a Crocs store, or from Crocs' official Amazon

18   site), or in Garland's case, makes no specific claim at all. Plaintiffs claim that their shoes "shrank

19   and/or warped" soon after purchase.  Yet, none claims to have contacted Crocs or to have made a

20   claim under Crocs' limited warranty, which as a matter of law defeats an implied warranty claim.

21   Thus, Plaintiffs' warranty claims do not satisfy federal pleading standards and should be dismissed.

22        Plaintiffs' fraud-based claims (Claims 3–8), too, are subject to dismissal on several grounds

23   addressed in Part IV.C.  First, these claims are not alleged with the heightened particularity that

24   Rule 9(b) requires. While all Plaintiffs allege that they saw Crocs' marketing material showing that

25   the Products were appropriate for use outdoors, in hot and sunny environments, Plaintiffs Garland,

26   Mongalo, and Harmon offer no indication about when or where they saw these representations, and

27   none of Plaintiffs identifies any specific ads that he or she saw.  Instead, Plaintiffs' Complaint is

28   filled mostly with the advertisements included in the earlier-filed *Valentine* Complaint, with no

indication from any Plaintiff that he or she saw the particular advertisements presented. (Many of the Complaint's proffered ads also show models wearing long sleeves, sweaters, long pants, and other clothing that undercuts Plaintiffs' presumption that any Product shown in an outside environment is a promise that shoes can bear any heat.) Second, the fraud-based claims fail to state a viable claim under Rule 12(b)(6) given that none of Crocs' representations or alleged omissions are actionable as a false statement, let alone likely to deceive a reasonable consumer.

Finally, as addressed in the Motion to Strike contained in Part V, at the least, Plaintiffs' class allegations should be formally stricken from their Complaint because their proposed classes (1) are not certifiable under this Court's Order in *Valentine*, (2) contain many persons who would lack Article III standing, and (3) go beyond the applicable statutes of limitations. The response to a denial of certification (where the *Valentine* plaintiffs still have the right to appeal that denial at the end of their case) should not be for would-be-intervenors to file a successive and duplicative class action lawsuit that attempts to restart the clock and force the parties and the Court to start over as if the *Valentine* Order has no impact.

## II.    PROCEDURAL BACKGROUND

Since November 18, 2022, Plaintiffs' attorneys here have been representing other plaintiffs in the *Valentine* lawsuit asserting the same claims against Crocs that Plaintiffs here now allege. On December 13, 2024, Plaintiffs in the instant action filed a Complaint asserting eight legal claims— the same as those in the *Valentine* First Amended Complaint ("FAC"), minus the Magnuson-Moss Warranty Act claim. Plaintiffs define their two California purchaser classes almost exactly as defined in the *Valentine* class certification motion:

> **Class:** All persons who purchased, in the state of California, the Products from November 22, 2018 to the present (the "Class").

> **Direct Purchase Subclass**: All Class Members who purchased the Products directly from Crocs (either online or in-person) (the "Subclass").

Dkt. 1 at 32; *see also Valentine* Dkt. 94-3. In the *Valentine* certification motion, however, "Class" is defined as those who purchased "the Products from Crocs and its authorized dealers."

After Plaintiff Valentine dismissed her claims in the earlier-filed suit, Plaintiffs Cornejo and Avino moved for class certification on May 31, 2024. *Valentine* Dkt. 94-3. Shortly after Crocs filed

1    its opposition to that certification motion, Plaintiffs filed a motion to intervene as plaintiffs-in-

2    intervention or "New Plaintiffs." *Valentine* Dkt. 107. The intervenors argued that their claims

3    "raised identical issues of law and fact to those" in the *Valentine* FAC. *Id.* at 10; *see also id.*, Dkt.

4    168 (Motion to Relate) at 2 ("*Valentine* and *Mongalo* pertain to substantially similar transactions

5    and events involving identical questions of law and fact and the same conduct by the same

6    Defendant."). The Court denied the intervention motion, with prejudice. *See Valentine* Dkt. 126.

7        On October 30, 2024, after class certification was denied, Plaintiffs Cornejo and Avino filed

8    a petition with the Ninth Circuit seeking interlocutory review of the class certification Order.

9    *Cornejo v. Crocs, Inc.*, Case No. 24-6645 (9th Cir. Oct. 30, 2024). Plaintiffs here did not similarly

10   appeal the denial of their intervention motion; instead, they filed their own Complaint in mid-

11   December. *See* Dkt. 1. Then, on January 6, 2025, Plaintiffs Cornejo and Avino joined Plaintiffs here

12   to ask that this case be related to the *Valentine* matter. *Valentine* Dkt. 168.

13       This Court granted that Motion to Relate on January 17, 2025, noting in that Order that

14   Plaintiffs' claims should proceed on an individual basis given the denial of class certification in

15   *Valentine*, in which Plaintiffs had sought to intervene. *See* Dkt. 14; *Valentine* Dkt. 169 (same).

16   **III.    THE COMPLAINT'S ALLEGATIONS**

17       Plaintiffs' claims here are nearly identical to those asserted in the *Valentine* action.  Plaintiffs

18   allege that various Crocs shoes made from more than 90% Croslite® ("the Products") are inherently

19   defective because, they assert, Croslite® shrinks and/or warps when exposed to "normal" or

20   "ordinary" heat and sunlight. *See* Compl. ¶¶ 2–3, 26, 54–55. They claim that Croslite® is a

21   polymeric material, and that all polymeric materials shrink when exposed to heat, which is a "well-

22   known phenomenon" under the laws of thermodynamics. *Id.* ¶ 57. Plaintiffs, however, do not

23   explain what they mean by "normal" or "ordinary" heat and sunlight, or provide any specific details

24   about the kinds of temperatures and time required for shrinkage to occur in Croslite® exposed to

25   the varied climates throughout California that would (as they claim) make the shoes unwearable.

26   Notably, Plaintiffs also fail to allege details about how much heat and/or sunlight their Products

27   were exposed to, or for how long, before they allegedly shrank. *See id.* ¶¶ 57–58.

28

Plaintiffs further allege that Crocs knew the Products were defective but nonetheless engaged in a longtime, widespread advertising campaign in which it marketed the Products as appropriate for use in hot, sunny, outdoor environments. *Id.* ¶¶ 4, 11–12, 27–28, 53, 63. Examples of Crocs' alleged misrepresentations include characterizing the shoes as "clogs, flip flops, or slides," "pool party," "perfect for the pool," "perfect for the garden," "beach bum," "water and swim shoes," "pool" or "beach" shoes, and "[c]omfortable water and swim shoes," with Plaintiffs claiming that images of people visiting "rivers, lakes, the beach, and pools" create the impression that the Products are suitable for use in hot and/or sunny conditions." *Id.* ¶¶ 27–29.

None of the referenced advertisements, however, mention "heat resistance" and it is quite a leap to read that term into ads that mention the pool, the garden, or the beach. Indeed, many of the images Plaintiffs include in their Complaint show people wearing long-sleeve shirts, sweatsuits, long pants, or sweaters, directly undercutting their claim that all ads showing Crocs outside are warrantying Crocs' heat-durability in hot environs. *See, e.g.,* ¶¶ 35 (sweatsuit); 36 (long sleeves); 37 (jeans and long sweat pants); 42 (sweater); 43 (long sleeves); 45 (beach group in long sleeves).

According to Plaintiffs, Crocs' size tags also created warranties that the size could not change. *Id.* ¶ 24. While Plaintiffs do not point to language as to tag sizes, Plaintiffs thus assert that if a tag says "size 6," that is a warranty that the size will never vary regardless of what someone does to their shoes. *Id.* Plaintiffs then allege that to the extent Crocs offered any disclaimers to consumers that extreme heat should be avoided, such disclaimers were inadequate (*id.* ¶ 126), and further contend that Crocs' limited warranty was not offered in conspicuous terms available at the point of purchase. *Id.* In short, Plaintiffs claim that Crocs (which sells millions of its Croslite® shoes every year) is deceiving consumers into purchasing a defective product that cannot withstand ordinary use. In support of this, Plaintiffs cite to the same fourteen customer complaints about shrinkage posted on Crocs' website (as of on November 15, 2022) that the *Valentine* Plaintiffs had included in their own November 2022 complaint, asserting that such complaints are typical. *Id.* ¶ 63. But as Crocs demonstrated in its earlier Motion to Strike in the *Valentine* case (and in opposition to class certification there), shrinkage complaints are far from typical, as is evident from a visit to

the customer comments section of the Crocs website referenced by Plaintiffs' complaint.[1]

As to the four Plaintiffs' individual factual allegations, they are as follows.

Plaintiff Chelsea Garland ("Garland") alleges that between 2021 and 2023, she saw "representations on the Product and the webpage for the Classic Clogs" that the shoes were a certain size. *Id.* ¶ 72. She further alleges that she saw "in-store ads" that showed the shoes on beaches and that showed the Products were appropriate for use outdoors, on beaches, and in hot and/or sunny conditions. *Id.* ¶¶ 76–77. Garland does not identify in which stores she saw the ads. *See id.* ¶¶ 72–79. She alleges she purchased a pair of Classic Clogs and an unidentified number of "pairs of" Classic Clogs (toddlers) between 2021–2023, from Crocs both online and in-store. *Id.* ¶ 72. She alleges that the Products were worn at the beach, then claims that "shortly after buying the Products," the shoes had shrunk and/or warped "to the point where they no longer fit her and her children." *See id.* ¶¶ 72–79. It is unclear whether this happened during Crocs' 90-day limited warranty period, but Garland does not allege that she reached out to Crocs to complain or ask for a replacement.

Plaintiff Jacqueline Mongalo ("Mongalo") alleges that prior to making her purchase, she saw Crocs' marketing materials indicating the shoes were appropriate for outdoor use in sunny and warm weather, and in hot environments, including in direct sunlight. *Id.* ¶¶ 84–85. She does not indicate which ads she saw, or when or where she saw them. *See id.* ¶¶ 80–87. She alleges that she saw Crocs' product webpages, which indicated the Products were a particular size. *Id.* ¶¶ 80, 85. As further alleged, shortly after purchasing two pairs of Classic Clogs and one pair of Classic Clogs (kids) from Crocs' online store in 2022, she left an unidentified number of shoes "outside in regular outdoor heat" and discovered that they had "shrunk and/or warped." *Id.* ¶ 81. She does not identify how many pairs of shoes shrank, or when the shrinkage occurred, and does not claim to have contacted Crocs pursuant to its limited warranty. *See id.* ¶¶ 80–87.

Plaintiff Melissa Harmon ("Harmon") alleges that prior to purchasing a pair of Baya Clogs

---

[1] *See* https://www.crocs.com/p/classic-clog/10001.html?cgid=outlet-men&cid=75U (website referenced by Plaintiffs' Complaint, showing 4.7 out of 5 stars average for over 30,000 customer reviews as of February 11, 2025). The scarcity of complaints on shrinkage relative to the hundreds of millions of Crocs sold during the class period is only highlighted by Plaintiffs' choice to ignore the context of the tens of thousands of happy Crocs purchasers posting reviews.

from Crocs' Amazon store in 2024, she saw Crocs' marketing materials indicating the shoes were appropriate for outdoor use in hot environments, including direct sunlight. *Id.* ¶¶ 88, 92. She does not identify which marketing material she saw, or when or where she saw this marketing, and no ads in the Complaint depict Baya Clogs. *See id.* ¶¶ 88–94. Harmon saw Crocs' Amazon product webpage, which indicated the shoes were a particular size. *Id.* ¶ 92. She claims that she left her shoes in her garage in the heat, and that about a month after her purchase, her shoes shrank and/or warped. *Id.* ¶ 89. She does not claim to have contacted Crocs under its 90-day limited warranty.

Plaintiff Philip Werner ("Werner") alleges that prior to purchasing two pairs of Classic Clogs from a Crocs store in Ontario, California between 2022 to 2023, he saw Crocs' marketing materials, including at Crocs' Ontario store, indicating that the shoes were appropriate for outdoor use in hot environments, including direct sunlight. *Id.* ¶¶ 95, 99. He does not identify which marketing materials he saw, or when or where he saw that marketing. *See id.* ¶¶ 95–101. As alleged, Werner also saw the represented shoe size on the label. *Id.* ¶ 99. He claims to have stored his shoes in a closet at his vacation home in Arizona, which "could get hot without air conditioning." *Id.* ¶ 96. Werner contends that shortly after his purchase, he noticed that his shoes had shrunk. *Id.* He does not allege that he contacted Crocs under its 90-day limited warranty.

Plaintiffs all allege that they exposed the Products to "normal sun and hot [or warm] weather" for their California (and for Werner, his Arizona) domiciles, and claim that they did not place or store the Products in any conditions beyond which they expected an "ordinary pair of shoes" to endure. *Id.* ¶¶ 74, 82, 90, 97. All of them allege that they believed the Products were capable of withstanding hot environments. *Id.* ¶¶ 78, 86, 93, 99.

In a manner identical to the *Valentine* plaintiffs before them, Plaintiffs then claim that Crocs' "motive" in "concealing" shoe shrinkage is to boost profits by causing consumers to buy more products. *See id.* ¶¶ 67 (asserting Crocs has "an incredible advantage over competitors" because persons whose shoes shrank will then buy more Crocs as replacements); 68 (claiming Crocs' return on investment numbers demonstrate this "advantage"); 71 (stating "Defendant's ability to generate such high 'volume' is in large part due to the fact that the Products shrink to the point they must be replaced"). However, no Plaintiff claims to have purchased replacement Crocs after having been

"tricked" by this alleged scheme to sell more shoes, which cuts against these "motive" allegations. Instead, while each claims to "continue to be interested" in Crocs shoes, each claims to be hesitant to make a future purchase that could "subject her/him to similar economic harm." *Id.* ¶¶ 79 (Garland), 87 (Mongalo), 94 (Harmon), 101 (Werner).

## IV.    <u>MOTION TO DISMISS</u>

### A.    **Legal Standard.**

A motion to dismiss is proper under Rule 12(b)(6) where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere conclusory allegations of law and unwarranted inferences cannot avoid a Rule 12(b)(6) dismissal because "courts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Clark v. Cal. Dep't of Forestry and Fire Protection,* 212 F.Supp.3d 808, 811 (N.D. Cal. 2016) (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). *See also Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) ("A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.") (citation omitted).

Moreover, when as here, a plaintiff asserts a claim sounding in fraud, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A claim sounds in fraud if the plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). The particularity requirement of Rule 9(b) is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

### B.    **Each of Plaintiffs' Warranty Claims Is Subject To Dismissal.**

<u>**Express Warranty (Claim 1).**</u>  Plaintiffs fail to allege that Crocs breached any express warranties. To prevail on a breach of express warranty claim, Plaintiffs must prove that: "(1) 'the

seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.'" *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897, 904 (N.D. Cal. 2021) (citing *Weinstat v. Dentsply Int'l, Inc.,* 180 Cal.App.4th 1213, 1227 (2010)); *see also* Cal. Com. Code § 2313. To adequately allege that defendant's representation created an express warranty, a plaintiff must "identify a specific and unequivocal written statement about the product that constitutes an explicit guarantee." *Yastrab v. Apple Inc.*, No. 5:14-CV-01974, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (cleaned up) (finding that the failure to identify which particular advertisements and webpages were at issue meant plaintiffs also failed to establish "the exact terms of the purported warranty" with "the requisite level of clarity"); *see Broomfield v. Craft Brew All., Inc.,* No. 17-CV-01027, 2017 WL 3838453, at *10 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, No. 17-CV-01027, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) (stating that courts consider "express promises," not "the 'totality' of the packaging" to determine whether an express warranty exists); *Kim v. Blue Triton Brands*, No. 22-CV-01907, 2022 WL 17061085, at *6 (C.D. Cal. Nov. 1, 2022), *aff'd sub nom. Kim v. BlueTriton Brands, Inc.*, No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024) (finding plaintiff failed to identify an unequivocal statement that the product was sourced from a spring on "Arrowhead Mountain"); *Watkins v. MGA Ent., Inc.*, 574 F.Supp.3d 747, 756 (N.D. Cal. 2021) (finding representation "Age 3+" on packaging was vague and unclear as to what "specific affirmation of fact or promise [was] being made" and did not create express warranty that "the toy [was] safe for 'Age 3+'") (second alteration in original).

Here, none of the representations Plaintiffs identify in their Complaint (*see* Dkt. 1 at ¶¶ 4, 7, 24, 27–29, 32–37, 43, 46–52)—ads with images of Crocs in the outdoors, by pools, or at beaches—created an express warranty because none of them are specific and unequivocal statements making any promise that Crocs would be unshrinkable. The representation about the Products' size on shoe tags, too, is not an unequivocal promise that the polymer shoes could not shrink, regardless of whether they are used and/or stored reasonably and consistent with their intended use. Thus, a promise of "unshrinkable plastic shoes" was not made, could not have been relied upon, and thus could not form the basis-of-the-bargain for Plaintiffs' purchases.

**Implied Warranty of Merchantability (Claim 2).** Plaintiffs also fail to allege that Crocs breached the implied warranty of merchantability. The implied warranty of merchantability is breached when a product is not fit for its ordinary purpose. *See NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1037, 1043–44 (E.D. Cal. 2013). This warranty "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal.App.4th 1291, 1296 (1995), *as modified on denial of reh'g* (Sept. 21, 1995). "A plaintiff claiming breach of implied warranty must show that the product did not possess even the most basic degree of fitness for ordinary use." *Torres v. Nissan N. Am. Inc.*, No. 15-CV-1503251, 2015 WL 5170539, at *3 (C.D. Cal. Sept. 1, 2015) (internal citation omitted). "The mere manifestation of a defect by itself does not constitute a breach the implied warranty of merchantability. Instead, there must be a fundamental defect that renders the product unfit for its ordinary purpose." *Stearns v. Select Comfort Retail Corp.*, No. 08-CV-02746, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009). "'Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade.'" *Gagetta v. Walmart, Inc.*, 646 F.Supp.3d 1164, 1178 (N.D. Cal. 2022) (internal citation omitted).

To the extent Plaintiffs' claim is based on allegation that the shoes are unmerchantable because they have the capacity to shrink and/or warp, the claim also fails because Plaintiffs do not allege that the shoes lack the most basic degree of fitness to be used as shoes. *See NuCal Foods, Inc.*, 918 F.Supp.2d at 1043-44 (stating that a shoe's ordinary purpose is for "walking upon ordinary ground" (quoting Cal. Com. Code § 2315, cmt. 2)). Even if the Products are capable of manifesting a defect, that does not mean that they fail to meet a minimum level of quality for polymeric shoes. Nor do Plaintiffs allege that the Products fail to meet the standard performance of polymeric shoes in the trade. And to the extent Plaintiffs' breach of implied warranty claim is based on Crocs' advertisements (*see* Dkt. at ¶ 124), the claim fails for the same reason that the breach of express warranty claim fails. *See Broomfield*, 2017 WL 3838453, at *11 (finding implied warranty claim based on representations on packaging "rises and falls with the express warranty claim").

As direct purchasers, Plaintiffs are also barred from making their implied warranty claims because they fail to allege that they provided Crocs timely notice of the alleged defect or attempted to make any timely warranty claims. *See In re Toyota Motor Corp. Unintended Acceleration Mktg.,*

*Sales Pracs., & Prods. Liab. Litig.,* 754 F.Supp.2d 1145, 1180 (C.D. Cal. 2010) (stating that direct purchasers are subject to notice requirement pursuant to Cal. Com. Code § 2607(3)(A)); *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1020 (N.D. Cal. 2014) (finding implied warranty claim fails if plaintiff fails to allege that defendant refused to repair or replace the product during the applicable warranty period). And to the extent that Garland is not a direct purchaser (and instead purchased from a retailer), her breach of implied warranty claim should be dismissed because she lacks vertical privity with Crocs. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008); *see also Valentine* Dkt. 150 at 20–21.

### C.   Each of Plaintiffs' Fraud-Based Claims Is Subject To Dismissal.

#### 1.   Plaintiffs' Fraud-Based Claims Fail to Satisfy Rule 9(b).

**<u>Fraud-Based Claims (Claims 3–8).</u>** Claims that sound in fraud—including claims for fraud, fraudulent concealment, and for fraud alleged under the UCL, CLRA, and FAL—must satisfy the heightened particularity requirements of Rule 9(b) to survive dismissal. *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1085 (N.D. Cal. 2017); *Janney v. Mills*, 944 F.Supp.2d 806, 817 (N.D. Cal. 2013). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). A complaint must state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Janney*, 944 F.Supp.2d at 810 (internal citation omitted); *see also Hadley*, 243 F.Supp.3d at 1085. "In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." *Janney*, 944 F.Supp.2d at 818.

In *Gold v. Lumber Liquidators, Inc.*, plaintiffs contended that they were "not required to plead with an unrealistic degree of specificity that the plaintiff relied upon particular advertisements or statements." No. 14-CV-05373, 2015 WL 7888906, at *10 (N.D. Cal. Nov. 30, 2015). The court explained that while this was the correct standard for statutory standing under California law, it did not meet the heightened pleading standard under Rule 9(b). *Id.* Accordingly, the court dismissed

plaintiffs' complaint because, although plaintiffs alleged that the at-issue representations were made on websites, at trade shows, and at retail stores, they did not identify "which advertising or sales materials each named Plaintiff was allegedly exposed to, the time frame during which these comments appeared, when the exposure occurred, or which statements each found material." *Id.*; *see also Kearns*, 567 F.3d at 1125–26 (plaintiff's allegations that he relied on defendant's television ads, sales material at the dealership, and information provided by personnel at the dealership, were insufficient because he did not specify which television advertisement or sales material he saw).

Here, in support of their fraud-based claims, Plaintiffs allege that they saw the represented shoe size either on a product webpage and/or on the Product itself. *Id.* ¶¶ 72 (Garland), 80, 85 (Mongalo), 92 (Harmon), 99 (Werner). However, they offer only vague allegations that they saw unspecified marketing materials showing that the Products were appropriate for use outdoors, on beaches, and in hot and/or sunny conditions. *Id.* ¶¶ 76 (Garland), 85 (Mongalo), 92 (Harmon), 99 (Werner). While they allege that they saw such representations before purchasing the Products, they provide no particularity about which ads they saw, or when and where they saw them. They do not offer any objective descriptions of the ads they are referencing, nor do they describe which aspects of the ads they found material to their purchase. Garland is the most specific of the group in alleging that she saw "in-store ads" that showed the shoes on beaches. *Id.* ¶¶ 76–77. But her description of ads featuring "shoes on beaches" is too vague to give Crocs sufficient notice about which specific representations are at issue, such that Crocs can meaningfully defend itself against Plaintiffs' charge. *See Kearns*, 567 F.3d at 1124; *Brown v. Madison Reed, Inc.*, No. 21-CV-01233, 2021 WL 3861457, at *10 (N.D. Cal. Aug. 30, 2021) ("But without allegations clarifying which, if any, of the statements described in the Complaint plaintiffs actually relied upon before deciding to purchase the Madison Reed products, the heightened pleading standard of Rule 9(b) is not met.")

Plaintiffs also provide insufficient details about when and where they saw Crocs' representations. Garland says she saw "in-store ads" before she made her purchase (without identifying which store(s)) (*id.* ¶¶ 76–77); Mongalo says she saw ads "online" for years before her purchases in 2022 (without identifying any online sources) (*id.* ¶¶ 80, 85); Harmon alleges she saw Crocs' ads before her purchase in 2024 but offers no details about where she saw them (*id.* ¶¶ 88,

92); and Werner says he saw in-store ads at the Ontario Crocs store before his purchases in 2022 to 2023 (*id.* ¶¶ 95, 99). Other than Werner (who at least provided a store location), none of the Plaintiffs provide any specifics about where they saw the representations, and each of them (including Werner) only alleges that he or she saw the representations before making a purchase. Again, these vague allegations fail to provide the required Rule 9(b) specificity. *See Brown*, 2021 WL 3861457, at *10 (finding the "when" element insufficiently pled because plaintiffs "only provide[d] a date range of when they purchased the products, without clarifying which statements they relied on and if they viewed/relied on such statements around the time of purchase").

Nor can the *Tobacco II* exception, which may exempt plaintiffs from pleading reliance to "an unrealistic degree of specificity" when faced with a "decades-long" deceptive "saturation advertising" campaign, save Plaintiffs from their failure to plead individualized reliance on specific misrepresentations. *See In re Tobacco II Cases*, 46 Cal.4th 298, 306, 327 (2009); *Haskins v. Symantec Corporation*, No. 13-CV-01834 2013 WL 6234610, at *6 (N.D. Cal., Dec. 2, 2013) (dismissing plaintiff's allegations for failure to "adequately allege the scope and gravity of the advertising campaign at issue, as well as demonstrate that she was, in fact, exposed to that campaign at the time of purchase."). Plaintiffs have not adequately alleged a deceptive campaign of the "scope and gravity" necessary to invoke *Tobacco II*, nor have they alleged that they saw or relied on any of the specific ads provided in the Complaint (all of which are from 2015 to 2023 and copied-and-pasted from the earlier *Valentine* Complaint). *See Kane v. Chobani, Inc*., No. 12-CV-02425, 2013 WL 5289253, at *8–9 (N.D. Cal. Sept. 19, 2013) (finding reliance on *Tobacco II* misplaced because plaintiffs had "not alleged anything approaching a 'decades-long campaign of deceptive advertising'") (quoting *In re Tobacco II*, 46 Cal. 4th at 327).

Because Garland, Mongalo, and Harmon offer no indication about when or where they saw Crocs' marketing material, and because none of the Plaintiffs identifies any specific ads he or she saw, each of the fraud-based claims is subject to dismissal. *See In re NJOY, Inc. Consumer Class Action Litig*., No. 14-CV-00428, 2014 WL 12586074 at *10 (C.D. Cal. Oct. 20, 2014) ("[P]leading the 'when' of the fraud requires that plaintiffs allege when they saw or heard the misleading statements"); s*ee also Kearns*, 567 F.3d at 1126 (dismissing where the plaintiff did not "specify

when he was exposed to [the advertisements] or which ones he found material"); *Young v. Cree, Inc.*, No. 17-CV-06252, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018) (dismissing complaint in part where plaintiff failed to identify specific representations he relied upon).

### 2. None of Crocs' Alleged Misrepresentations are Actionable.

#### a. Crocs' representations are not actionable as false statements.

While Plaintiffs attach marketing materials from many sources, including on Facebook, Pinterest, eBay, Twitter, YouTube, and on television (*see* Dkt. 1 ¶¶ 32–50), none of the Plaintiffs allege that they saw any marketing materials from these sources (*See id.* ¶¶ 72–101). However, even if Plaintiffs had actually relied on the ads referenced in the Complaint, none are actionable, as none makes any specific, measurable assertions, let alone a representation that Crocs are unshrinkable.

Under a theory of affirmative misrepresentation, "not all statements are actionable as a matter of law." *Ahern v. Apple Inc.*, 411 F.Supp.3d 541, 554–55 (N.D. Cal. 2019). "A challenged claim is non-actionable 'puffery' if it is a generalized, vague, and unspecified assertion . . . upon which a reasonable consumer could not rely. The Ninth Circuit has explained that the common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Rasmussen v. Apple Inc.*, 27 F.Supp.3d 1027, 1039 (N.D. Cal. 2014) (cleaned up); *see also Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (statements that constitute puffery cannot be the basis for a fraud or negligent misrepresentation claim); *Frenzel v. AliphCom*, 76 F.Supp.3d 999, 1010-12 (N.D. Cal. 2014) (statements that amount to puffery are not actionable under the CLRA, UCL, and FAL). "Whether a statement is puffery or a representation of fact is a question of law that can be properly decided on a motion to dismiss." *Ahern*, 411 F.Supp.3d at 555.

Here, Plaintiffs allege that Crocs made the following marketing claims: that the products are "clogs, flip flops, or slides," "pool party," "perfect for the pool," "perfect for the garden," "beach bum," "water and swim shoes," "pool" or "beach" shoes, and "[c]omfortable water and swim shoes. Whether you're swimming in a lake, river, ocean or pool, protect your feet with comfortable water sandals and shoes from Crocs." Dkt. 1 ¶¶ 4, 7, 24, 27–29 (quoting from alleged and unspecified

Crocs ads); *see also id.* ¶¶ 32–37, 43, 46–52 (showing images of various Crocs ads). These are not representations of fact. A representation of fact "is one which makes a specific and measurable claim, capable of being proven false or of being reasonably interpreted as a statement of objective fact." *Ahern,* 411 F.Supp.3d at 555 (internal citation omitted); *see also Garlough v. FCA US LLC*, No. 20-CV-01879, 2021 WL 4033177, at *4 (E.D. Cal. Sept. 3, 2021) (finding claim that hood scoop was the "largest functional 'Air Grabber' cold air intake hood" non-actionable puffery, despite plaintiff's contention that statement was false because the hood scoop expanded, contracted, warped, vibrated, and rendered the hood non-functional).

First, all of the marketing claims are non-actionable puffery. None of them are specific, measurable claims capable of being proved true or false—which would be the case even if Crocs had been advertising its shoes as unshrinkable, which is nowhere alleged. *See In re SanDisk SSDs Litig.*, 736 F.Supp.3d 786, 793 (N.D. Cal. 2024) ("durable," "high performance," "superfast," "perfect," "reliable" are all puffery); *Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*, No. 16-CV-7140, 2017 WL 10591885, at *7 (C.D. Cal. Mar. 3, 2017) ("[I]t is impossible for the fact finder to verify if the printer is 'robust' without additionally identifying some objective measure by which to assess the printer's robustness.").

Second, none of the claims that Crocs can be worn in outside locations with heat and sun are alleged to be false. Plaintiffs do not allege that the Products are not suitable for gardening; unwearable in sunny and hot environments, or at the pool, beach, or lake; are uncomfortable; or that they do not protect the feet. Instead, Plaintiffs appear to allege that their shoes shrank while being stored. *See Ahern*, 411 F.Supp.3d at 559 ("Courts have dismissed misrepresentation claims when a plaintiff fails to plead how an alleged misrepresentation is false or misleading."); *see also id.* at 558 ("It is not false to represent the MacBook has USB ports when it in fact has them, even if those ports may cease to function.") (quoting *Deburro v. Apple, Inc.*, 2013 WL 5917665, at *4 (W.D. Tex. Oct. 31, 2013)); *Davidson v. Apple, Inc.*, No. 16-CV-4942, 2017 WL 3149305, at *11–12 (N.D. Cal. July 25, 2017) (statement that iPhones are made of aluminum and titanium insert not false, even if those inserts may fail). None of Crocs' representations detailed in the Complaint are false simply because Plaintiffs allege the shoes might someday shrink or warp.

Plaintiffs also allege that by including the shoe size on hang tags or online descriptions, Crocs makes specific representations that the Products are—and will always be—exactly the same regardless of how shoes are used or stored. Dkt. 1 ¶¶ 4, 24, 40. However, the fact that a pair of shoes may shrink (or stretch) does not make the size representation at the time of purchase false. *See Tabletop Media*, 2017 WL 10591885, at *6 ("[A]n actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions.") (internal citation omitted). Plaintiffs do not allege that the shoes they purchased were wrongly-sized at purchaser, and do not allege any facts showing that there is a reasonable certainty that all Products will shrink and become unwearable.  Thus, the size tags are not actionable as misrepresentations.

### b.  None of Crocs' alleged omissions are actionable.

Plaintiffs allege that the ads and shoe tags omitted a warning that polymer shoes may shrink or warp. To be actionable, an alleged omission "must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in original) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835 (2006)). "Alleged omissions are actionable if they are likely to deceive reasonable consumers, but generic sales talk . . . is not actionable even if a consumer subjectively believes it means something more specific. In other words, puffery is not likely to deceive a reasonable consumer and cannot undergird a claim based on a material omission." *Ahern*, 411 F.Supp.3d at 562 (N.D. Cal. 2019) (cleaned up); *Apodaca v. Whirlpool Corp.*, No. 13-CV-00725, 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) (finding "partial representations" referring to reliability and durability are "too general for Defendant to incur a duty to disclose").

Under California law, "a defendant only has a duty to disclose material defects that impair the product's central function or that implicates the consumer's safety." *Ahern*, 411 F.Supp.3d at 567 (citing *Hodsdon*, 891 F.3d at 864). "The central functionality of the product is not based on subjective preferences about a product, but rather is based on a physical defect that renders those products incapable of use by any consumer." *Klaehn v. Cali Bamboo, LLC*, No. 19-CV-1498, 2021 WL 3044166, at *9–10 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) (cleaned up); *Garlough v. FCA US LLC,* No. 2:20-CV-01879, 2021 WL 4033177, at

*5 (E.D. Cal. Sept. 3, 2021) ("A defect affects the central function of a product when it renders the product incapable of use by any consumer." (quoting *Hodson*, 891 F.3d at 864)).  In *Ahern*, the court found that Apple had no duty to disclose the alleged Filter Defect that caused dark smudges in the corner of Apple's computer screen because it did not "obliterate the function of a computer as a computer" or implicate consumer safety. 411 F.Supp.3d at 568; *see Klaehn*, 2021 WL 3044166, at *10–11 (finding no duty to disclose that wood flooring was subject to premature cracking, buckling, or gapping because those features did not relate to "the central functionality of the Product or an unreasonable safety risk").

Here, Plaintiffs do not allege that the potential for shrinkage and/or warpage of the Products implicates any safety issues. Additionally, the Products' alleged potential for some shrinkage in some situations does not render all Products incapable of use by any consumer. For example, Mongalo alleges that while the shoes she stored in "outdoor heat" shrank, the pair that she stored indoors had not. Dkt. 1 ¶ 81. There is therefore no reason to assume that all Products will shrink (which, if it was the case, would certainly result in more than the fourteen consumer online complaints cited in the Complaint, or some other significant consumer outcry that Plaintiffs could reference). Further, even if the shoes are capable of shrinking or warping, there is still no duty to disclose the alleged defect because as in *Klaehn,* the potential for some shrinkage in extreme heat (like the potential for cracking, buckling, or gapping) does not obliterate the central functionality of the Product. *See* 2021 WL 3044166, at *10–11.

### c.  None of Crocs' representations are likely to deceive a reasonable consumer.

Consumer protection laws are governed by the "reasonable consumer" test, which requires plaintiffs to show that "members of the public are likely to be deceived." *Peacock v. 21st Amend. Brewery Cafe, LLC*, No. 17-CV-01918, 2018 WL 452153, at *4 (N.D. Cal. Jan. 17, 2018) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Robie v. Trader Joe's Co.*, No. 20-CV-07355, 2021 WL 2548960, at *4 (N.D. Cal. June 14, 2021). The reasonable consumer test also applies to common law fraud and negligent misrepresentation claims. *Kim*, 2022 WL 17061085, at *3. To survive a motion to dismiss under the reasonable consumer standard, a plaintiff must plead facts sufficient to show that the advertisements are "likely to deceive" a "significant portion of the

general consuming public or of targeted consumers." *Peacock*, 2018 WL 452153, at *4; *Robie*, 2021 WL 2548960, at *4.

Plaintiffs allege that their shoes shrank while they *stored* the shoes, not while they *wore* them. *See, e.g.,* Dkt. 1 at ¶ 81 (Mongalo alleges she stored her shoes in the outdoor heat), *id.* ¶ 89 (Harmon alleges she stored her shoes in a hot garage, and *id.* ¶ 96 (Werner alleges he stored his shoes in a hot Arizona closet).  Yet none of the Crocs ads cited in the Complaint concern storage. Those ads concern the different situation of people wearing the Products outdoors, in sunny conditions. The distinction between the conditions under which the shoes may be worn versus conditions under which the shoes may be stored is an important one, and none of Crocs' representations suggest that the Products are unshrinkable regardless of prolonged exposure to extreme heat when not being worn.  Representations that the Products may be used outside do not become false because Plaintiffs allege that they understood such ads to mean that the shoes would be unshrinkable no matter how they were treated when not being worn. "A representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Hernandez v. Radio Sys. Corp.*, No. 22-CV-01861, 2023 WL 4291829, at *7 (C.D. Cal. May 10, 2023) (cleaned up); *see Kim*, 2022 WL 17061085, at *6 (dismissing fraud-based claims because plaintiff's claims were based on "unreasonable or fanciful interpretations of labels or other advertising").

Indeed, none of Crocs' representations presented in the Complaint are likely to cause reasonable consumers to believe that polymer-based plastic shoes are incapable of shrinking regardless of how much heat and sunlight they are exposed to. Images of Clogs in the shape of foliage on a small island or of people wearing Clogs near a swimming pool or lake, at the beach, or in a garden or on the grass does not as a matter of law support a belief that Crocs is guaranteeing that the plastic, foam-based shoes cannot be harmed, regardless of how they are stored. *See Broomfield*, 2017 WL 3838453, at *6 (if the complaint "solely alleged pictures of surfboards and the vague phrase 'Liquid Aloha' on the beer packaging, the case would end there"); *see Govea v. Gruma Corp.*, No. 20-CV-8585, 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021) (finding the

phrase "un pedacito de México," without any additional representations, not likely to deceive reasonable consumer into believing defendant's tortillas were baked in Mexico).

None of Crocs' alleged representations, whether under a theory of affirmative misrepresentation or fraudulent omission, or under the reasonable consumer test, are actionable. Accordingly, each of Plaintiffs' fraud-based claims (Claims 3-8) should be dismissed.[2]

### D.  Conclusion.

For the reasons set forth above, Crocs respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety for failure to state a claim.

## V.    <u>MOTION TO STRIKE</u>

This Court has already decided that Plaintiffs' claims "will proceed with Plaintiff Ruby Cornejo on an individual basis rather than a class basis." Dkt. 14. Plaintiffs' class allegations should formally be stricken from their Complaint for the following reasons.

First, Plaintiffs' putative class would necessarily include many uninjured purchasers who lack Article III standing. Second, given the Court's *Valentine* ruling examining the exact same proposed classes, it is clear that the classes are not certifiable because common issues will not predominate and Plaintiffs would not be typical of all class members. Third, Plaintiffs' proposed classes are improperly defined to exceed the available statutes of limitations.

### A.  Legal Standard.

**Rule 12(f).**  A court may strike class allegations when the putative class action can possibly be maintained on the face of the pleading. *See Tietsworth v. Sears,* 720 F.Supp.2d 1123, 1147–48 (N.D. Cal. 2010) (striking class allegations due to predominance of individual issues on certain claims); *Stokes v. CitiMortgage, Inc.*, No. 14-CV-00278, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("Rule 12(f) also grants courts the authority to strike class allegations that cannot possibly move forward on a classwide basis.") (cleaned up); *Route v. Mead Johnson Nutrition Co.*, No. 12-CV-7350, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("[W]here the matter is sufficiently

---

[2] To the extent Plaintiffs' UCL claim also asserts claims under the unlawful or unfair prongs, because the warranty claims should be dismissed, there is no basis for any UCL claim.

obvious from the pleadings, a court may strike class allegations."). "[A]s the Supreme Court has explained, '[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'" *Keen v. Coral Reef Prods., Inc.*, No. 14-CV-00814, 2015 WL 12910696, at *2 (C.D. Cal. 2015) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). "As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Tietsworth*, 720 F.Supp.2d at 1146.

### B.   The Class is Overbroad and Includes Purchasers Without Article III Standing.

"A plaintiff cannot proceed in federal court absent Article III standing, and 'must demonstrate standing for each claim [s]he seeks to press.'" *Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 643 (9th Cir. 2020). To establish standing at class certification, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Plaintiffs, like the plaintiffs in the *Valentine* action, contend that their injury, and putative class members' injury, is not the manifestation of a defect in the Products (i.e., shrinkage), but an overpayment injury for an inherently defective product (which does not require shrinkage). In their Reply in support of their Motion to Intervene, Plaintiffs argued, "[Plaintiff Tiffany] Avino, like all other class members, was injured *at the time of purchase* by paying more than she should have for defective products . . . . Events 'after purchase', i.e., whether the shoes in fact shrank, are irrelevant to standing or damages." *Valentine* Dkt. 119 at 10 (emphasis in the original). Plaintiffs (in *Valentine* and in the present action) "are not suing for damages caused by shrinkage; rather, they are suing because all Products had a defect at the time of sale, and, as a result, all Californians who bought the Products were injured when they overpaid for defective Products." *Id.*

This Court disagreed and held that if Plaintiff Avino's product did not shrink, and she had not shown more than a hypothetical risk of shrinkage, then she had no injury-in-fact and lacked Article III standing. Citing the reasoning in *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) and *Webb v. Carter's Inc.*, 272 F.R.D. 489, 499–500 (C.D. Cal. 2011), the Court found that

because Avino had not herself experienced the alleged defect in the Product, she would need to show more than a *hypothetical risk* of the alleged defect manifesting. *Valentine* Dkt. 150 at 8–9. In *Birdsong*, plaintiffs alleged that Apple's iPod was defective because it posed an "obvious" and "avoidable" risk of hearing loss. 590 F.3d at 958. The *Birdsong* plaintiffs, however, alleged no history of malfunction or hearing loss caused by the alleged defect; nor did they allege that they were substantially certain to suffer inevitable hearing loss from use of the product. *Id.* at 959. The Ninth Circuit found that plaintiffs' overpayment injury was merely "conjectural and hypothetical" because the potential danger of hearing loss existed only for consumers who used the iPod "in an extreme way." *Id.* at 961, 958. Because the alleged injury was not "concrete and particularized *as to themselves*," the *Birdsong* court found that plaintiffs lacked standing. *Id.* at 960.

In *Webb v. Carter's Inc.*, plaintiffs alleged that even if their children suffered no adverse effect from a dye used on tagless clothing labels, they suffered an injury in fact because they paid a premium for children's garments with dyed labels that allegedly caused skin irritation. 272 F.R.D. at 498. The *Webb* court held that plaintiffs' argument failed because only those with sensitive skin experienced skin irritation, while "the overwhelming majority of children who wore the garments suffered no adverse effects." *Id.* As in *Birdsong*, the *Webb* court held that because the alleged defect "did not present a constant risk of harm" to babies who had no skin reaction, the alleged defect posed only a "hypothetical risk." *Id.* at 499.

Finding the facts of the *Valentine* case analogous to those in *Birdsong* and *Webb*, the Court found that the manifestation of the defect in the Product was hypothetical and depended on extreme use by customers. [3] "Like in *Birdsong*, the alleged defect rests on a hypothetical risk of shrinkage to customers who use their Products at extreme temperatures. Thus, an overpayment injury is hypothetical because the manifestation of the defect will depend on how the consumer uses it." *See*

---

[3] In their class certification motion, the *Valentine* plaintiffs presented evidence that Crocs did in fact provide extreme heat warnings on their website (under "Caring for Your Crocs") and on in-store receipts. *See id.*, Dkt. 94-23 (Crocs' in-store receipt) & 95-12 (Crocs' website advising, "Exposure to extreme heat, sun, dishwashers, washing machines, or hot cars can cause the shoes to shrink or warp.") Further, Crocs offered evidence that customer complaints about shrinkage are extremely rare. *See Valentine* Dkt. 102 at 4, Dkt. 102-15 ¶¶ 60, 62–63 & Figure 9.

*Valentine* Dkt. 150 at 9. "Accordingly, Avino's injury-in-fact must be the defect itself and not the hypothetical overpayment injury . . . . Avino must demonstrate that her shoes *actually shrunk* in order to establish injury-in-fact." *Id.* (emphasis added.)

Under Plaintiffs' defect theory (which is identical to the *Valentine* plaintiffs' theory), the Products shrink *if* they are exposed long enough to enough heat. "[U]pon exposure to ordinary heat and/or direct sunlight," the Products allegedly shrink and/or warp. Dkt. 1 ¶ 3. Plaintiffs allege shrinkage occurs upon "ordinary" exposure, they never attempt to put any specifics to this vague characterization. While Plaintiffs explain that polymer relaxation (i.e., Croslite shrinkage) is a "process directly influenced by time and temperature," occurring "more rapidly at higher temperature" and occurring more over a "greater period of time" (*id.* at ¶¶ 57–58), none of the Plaintiffs provide any details about the intensity of the heat the Products were exposed to, or the duration of the exposure before they allegedly shrank. In fact, they suggest that if the shoes are not exposed to a certain amount of heat and sunlight for a certain amount of time, then the shoes tend not to shrink. For example, Mongalo's Crocs, which were appropriately stored indoors, did not shrink, while the pairs she stored in the outdoor heat allegedly shrank. Dkt. 1 ¶ 81. Nonetheless, the underlying allegations about the Products' defect and the nature of its manifestation are identical to those alleged in the *Valentine* action. *See Valentine* Dkts. 107 at 9 ("New Plaintiff's claims with respect to the Defendant's defective Products are identical), 107 at 10 (New Plaintiffs' claims raise identical issues of law and fact to those in the [Valentine FAC].”), 168 at 2, 169 at 1.

Given the Court's holding in the *Valentine* certification order, the same class and Product definitions as those in the *Valentine* certification motion and Plaintiffs' Complaint, and Plaintiffs' acknowledgement that their claims are based on the same facts and legal theories as those in the *Valentine* action, a class defined as *all* purchasers of the Products, regardless of whether the Products shrank, will inappropriately include uninjured purchasers (such as Avino) who lack Article III standing, and the class definition should therefore be stricken.

**C.  The Proposed Classes are Not Certifiable Under this Court's Order in** *Valentine***.**

In its opposition to the *Valentine* plaintiffs' class certification motion, Crocs noted that Plaintiff Cornejo would need to demonstrate actual reliance to prove her CLRA and UCL claims.

Crocs argued that she would be unable to show reliance on Crocs' alleged misrepresentation because she was a repeat purchaser of Crocs who knew the shoes could shrink when she purchased her at-issue product. *See*, *e.g.*, *Chow v. Neutrogena Corp.*, No. 12-CV-04624, 2013 WL 5629777, at *2 (C.D. Cal. Jan. 22, 2013) (finding misrepresentations are not subject to an inference of classwide reliance because a significant portion of class were repeat purchasers). The Court agreed, explaining that because of Cornejo's purchase history and her knowledge of the possibility of shrinkage when she purchased her at-issue shoes, "[t]he question of whether Cornejo relied on the omission of the defect [would] likely 'become the focus of the litigation.'" *Valentine* Dkt. 150 at 20 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Because of her history, in conjunction with her lack of vertical privity with Crocs, the Court held that Cornejo was "uniquely vulnerable to defenses atypical of those that would be raised against other members of the class." *Id.* at 21.

Given the finding that Cornejo would be subject to unique defenses because she repurchased Products after experiencing shrinkage with earlier Crocs shoes, other persons making successive purchases after shrinkage would face the same challenges. While the Court did not need to (and thus did not) reach the predominance question in regards to the identical classes proposed in *Valentine*, given its findings that Rule 23(a)'s requirements had not been met, it is clear that the class definitions include all the California Crocs purchasers—such as Cornejo—who purchased additional Products after experiencing shrinkage from earlier purchases. Common issues cannot predominate when individualized inquiries into previous purchases and a consumer's prior knowledge will be required across millions of purchasers. And according to the Complaint's allegations, Crocs' business model depends on manipulating customers into purchasing replacement shoes after their Products shrink. *See* Dkt. 1 ¶¶ 67-71. Thus, if the Complaint's allegations are presumed to be true, then the proposed classes would be teeming with repeat purchasers who would not be able to show the reliance and/or materiality needed to prove their claims.

Moreover, the Complaint's allegations indicate that Plaintiffs are likely to share Plaintiff Cornejo's inability to meet Rule 23(a)'s requirements. Both Garland and Werner suggest that each of their shoes shrank shortly after purchase, but also claim that the purchases occurred over a period of two to three years. *Id.* ¶¶ 72, 73, 95. This means that Garland and Werner likely experienced

1    shrinkage (and therefore knew about shrinkage) before they purchased their other at-issues shoes.

2    Such details would make it difficult for them to establish reliance and/or materiality. Mongalo,

3    Harmon, and Werner also allege that they subjected their shoes to storage conditions described as

4    "outdoor heat" (*id.* ¶ 81), in the "garage in the heat" (*id.* ¶ 89) and in an Arizona closet that "could

5    get hot" (*id.* ¶ 96). While Plaintiffs intentionally avoid offering any details about the nature and

6    intensity of the heat and/or the duration of the exposure, each of them may have negligently used or

7    misused their shoes, which are defenses to the warranty claims. Additionally, none of the Plaintiffs

8    who purchased directly from Crocs allege that they made any attempt to notify Crocs or make a

9    warranty claim after they experiences the alleged shrinkage, as required by Cal. Com. Code §

10    2607(3)(a).

11        Because of Plaintiffs' unique situations, like Cornejo's, "it is predictable that a major focus

12    of the litigation will be on a defense unique to" each of these named Plaintiffs. *Valentine* Dkt. 150

13    at 19. Indeed, when Crocs moved to strike class allegations in the *Valentine* action, the Court had

14    recognized early in that litigation that there could be significant issues:

15            Here, the Court notes that Plaintiffs' class definitions are somewhat
            suspicious.  For example, Plaintiffs' classes are defined as all persons that
16            purchased the Products.  However, these definitions necessarily include
            individuals who did not see or were not deceived by Crocs' advertisements,
17            which affects Plaintiffs' fraud-based class claims. Regarding Plaintiffs'
            warranty class claims, determining whether reliance existed may require the
18            Court to engage in individualized inquiry regarding the circumstances of each
            members' purchase.
19

20    *Valentine* Dkt. 30 at 13 (denying motion to strike). But given the early stages of the case, the Court

21    found "it would be premature to strike Plaintiffs' class allegations at this stage" and that they should

22    "be given the opportunity to make the case for class certification." *Id.* at 13–14. Now, however, the

23    Court has had the benefit of examining the class definitions in the context of the nearly identical

24    proposed classes in *Valentine*, and it would no longer be premature for the Court to recognize that

      the proposed classes are not certifiable.

25        Given the Court's earlier ruling in *Valentine* on these exact same proposed classes and how

26    typicality could not be found when unique defenses would apply to a named Plaintiff, it is clear

27    from the face of the Complaint that Plaintiffs' proposed classes cannot be maintained.

28

### D.  Plaintiffs' Proposed Class Period Improperly Exceeds The Statute of Limitations.

Finally, the class allegations should be stricken because they propose a class with claims going back to November 22, 2018, which is an improperly long class time.  Dkt. 1 ¶ 102. However, under all of Plaintiffs' alleged claims, the statutory period is between one and four years from the date Plaintiffs purchased the products. Because the action was filed on December 13, 2024, the earliest date on which the class period can begin is four-years prior, December 13, 2020.[4]

None of Plaintiffs' alleged claims permit a six-year statute of limitations and this Court should therefore strike the class claims that exceed the statutory period. Indeed, as Plaintiffs argued (as plaintiffs-in-intervention) in the *Valentine* matter, if they were required to file a new lawsuit, they would be unable to use the statute of limitations from *Valentine*:

> Although the statute of limitations tolls from the date of the Complaint, that tolling provision does not carry over into a new class action. *See generally China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806–07 (2018) (plaintiffs not permitted to 'piggyback' on an earlier class action) . . . . If New Plaintiffs must file a separate, new class action," their claims will be subject to a "revised statute of limitations date.

*See Valentine* Dkt. 107 at 3. Plaintiffs were correct. Inexplicably, Plaintiffs now (without legal basis) pursue a statutory period that exceeds the limitations period for their claims.

*American Pipe & Construction Co. v. Utah* established that "the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. 538, 553 (1974). However, as the Supreme Court explained in *China Agritech v. Resh*, a putative class member may not commence a new *class action* suit after a certification denial and take advantage of the statute of limitations in the prior action. 584 U.S. 732, 735–36 (2018). In other words, *American Pipe* does not permit tolling in a follow-on class action.

---

[4] The UCL permits a four-year time period from the date of purchase. Cal. Bus. & Prof. Code § 17208 (West). CLRA and FAL claims are subject to a three-year limitations period. Cal. Civ. Code. § 1793; Code. Civ. Proc. § 338(h); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). Fraud and negligent misrepresentation have a three year limitations period. Cal. Civ. Code § 338(d); *Suber v. VVP Servs., LLC*, No. 23-CV-02932, 2023 WL 8143876, at *4 (C.D. Cal. Oct. 25, 2023).

*Id.* at 736. If it did, it "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 743.

California courts have adopted the rule in *China Agritech,* applying it to California state law claims. *See Fierro v. Landry's Rest. Inc.*, 32 Cal.App.5th 276, 297 (2019) ("In the event a plaintiff class is not certified, the pendency of the putative class's claim does not toll the applicable statute of limitations to the same class claim alleged in a later action."); *Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605, 2019 WL 3290654, at *10 (N.D. Cal. July 22, 2019) ("Under *Fierro*, *China Agritech* applies in full force to California state law claims, making tolling inappropriate for Plaintiff's successive class claims here."). *China Agritech* and its progeny bar Plaintiffs from benefiting from the statute of limitations in *Valentine*.

Nor can Plaintiffs rely on the doctrine of equitable tolling, which "is not available to toll successive class claims based on a prior class-action suit." *Piatt v. Money Store*, 819 F. App'x 477, 479 (9th Cir. 2020) (citing *Fierro*). In *Fierro*, the court held that equitable tolling "does not apply to any later *class* claims that may be asserted by the purported class member who files a new action; if the purported class member files a new class action after the expiration of the applicable statute of limitations on the class's claim, then the claim is barred." 32 Cal.App.5th at 291 (emphasis in original); *see Bush*, 2019 WL 3290654 at *10 (*Fierro* makes equitable tolling inappropriate for successive class claims).[5]

### E.   Conclusion.

For the foregoing reasons, Crocs respectfully requests that the Court strike Plaintiffs' class allegations from the Complaint.

DATED: February 12, 2025                    KELLEY DRYE & WARREN LLP

                                            By:    */s/ Becca Wahlquist*
                                                   Becca Wahlquist

                                            *Attorneys for Defendant Crocs, Inc.*

---

[5] Further, Plaintiffs are not entitled to equitable tolling in the same forum. *Fulfillium v. ReShape Med. LLC,* No. 18-CV-01265, 2018 WL 11354522, at *6 (C.D. Cal. Nov. 6, 2018) ("California law does not allow equitable tolling with successive claims in the same forum.").