**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
  kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT FOR THE

### NORTHERN DISTRICT OF CALIFORNIA

JACQUELINE MONGALO, CHELSEA GARLAND, PHILIP WERNER, and MELISSA HARMON, each an individual, on behalf of themselves, the general public, and those similarly situated,

                              Plaintiffs,

        v.

CROCS, INC.,

                              Defendant.

Case No. 3:24-cv-09037-TLT

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO STRIKE CLASS ALLEGATIONS**

Hon. Trina L. Thompson

Hearing Date: April 15, 2025
Hearing Time: 2:00 PM
Courtroom: Courtroom 9, 19th Floor

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ..................................................................................................2

III.  ARGUMENT .......................................................................................................4

    A.   The Motion is Not Dispositive...................................................................4

    B.   The Claims Crocs Does Challenge Withstand Dismissal. ..........................4

        1.   Plaintiffs Allege Breach of Express Warranty...............................4

        2.   The Implied Warranty Claim Here Must Proceed. ........................5

        3.   The Fraud-Based Claims Withstand Dismissal. ............................7

            i.    The Complaint Satisfies Rule 9(b)....................................7

            ii.   The Omission Is Actionable...............................................9

            iii.  The Misrepresentations are Actionable. ...........................12

            iv.   Plaintiffs Allege Reasonable Consumer Deception...........13

    C.   The Motion to Strike Should Be Denied..................................................16

        1.   *Valentine*'s Denial of Class Certification is Not Binding on the
            *Mongalo* Plaintiffs..................................................................16

        2.   Crocs' Class Certification Arguments Cannot be Resolved on the
            Pleadings. ....................................................................................17

            i.    None of Rule 12(f)'s Grounds for Striking the Allegations
              Apply Here.......................................................................17

            ii.   The Motion is Premature. ................................................18

    D.   Plaintiffs Request Leave to Amend If Necessary. ....................................23

IV.   CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................... 14

*Ary v. Target Corp.*,
No. 22-cv-02625-HSG, 2023 U.S. Dist. LEXIS 49633 (N.D. Cal. Mar. 23, 2023) ...................... 15

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348, 2011 WL 2111796
(N.D. Cal. May 26, 2011) ........................................................... 25

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ........................................................... 27

*Bettles v. Toyota Motor Corp.*,
No. 2:21-cv-07560-ODW (AFMx), 2022 U.S. Dist. LEXIS 92555
(C.D. Cal. May 23, 2022) ........................................................... 13

*Beyer v. Symantec Corp.*,
333 F. Supp. 3d 966 (N.D. Cal. 2018) ........................................................... 14

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................... 28

*Boddie v. Signature Flight Support Corp.*,
No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858 (N.D. Aug. 5, 2019) .......... 22, 23, 25, 29

*Bowen v. Energizer Holdings, Inc.*,
118 F. 4th 1134 (9th Cir. 2024) ........................................................... 28

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ........................................................... 26

*Bultemeyer v. CenturyLink Inc.*,
No. CV-14-02530-PHX-SPL, 2022 U.S. Dist. LEXIS 64875 (D. Ariz. Apr. 7, 2022) ................. 27

*Canady v. Bridgecrest Acceptance Corp.*,
No. CV-19-04738-PHX-DWL, 2022 U.S. Dist. LEXIS 17064
(D. Ariz. Jan. 31, 2022) ........................................................... 24, 25, 26

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
169 Cal. App. 4th 116 (2008) ........................................................... 7

*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ........................................................... 23

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ........................................................... 12, 13

*DeSoto v. Yellow Freight Sys.*,
957 F.2d 655 (9th Cir. 1992) ........................................................... 32

*Donaca v. Metro. Life Ins. Co.*,
No. CV 13-05611 MMM (JCx), 2014 U.S. Dist. LEXIS 198899
(C.D. Cal. Jan. 22, 2014) ........................................................... 24, 25

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................................................... 18

*Edwards v. FCA US LLC*,
No. 22-cv-01871-WHO, 2022 U.S. Dist. LEXIS 98891 (N.D. Cal. June 2, 2022) ...................... 9

*Gamez v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 2:23-cv-01464-DAD-KJN, 2024 U.S. Dist. LEXIS 81246 (E.D. Cal. May 3, 2024) ............ 31

*Goodwin v. Walgreens, Co.*,
  No. CV 23-147-DMG (PDx), 2023 U.S. Dist. LEXIS 104638 (C.D. Cal. June 14, 2023) ...... 14, 15

*Graves v. Arpaio*,
  623 F.3d 1043 (9th Cir. 2010) ....................................................................... 4, 19

*Gutierrez v. CarMax Auto Superstores Cal.*,
  19 Cal. App. 5th 1234 (Ct. App. 2018) ................................................................ 15

*Hadi v. Toyota Motor Corp.*,
  No. 2:23-cv-09613-JLS-SSC, 2025 U.S. Dist. LEXIS 3222 (C.D. Cal. Jan. 6, 2025) .............. 9, 14

*Ham v. Hain Celestial Group, Inc.*,
  70 F. Supp. 3d 1188 (N.D. Cal. 2014) .................................................................. 20

*Hamman v. Cava Grp., Inc.*,
  No. 22-cv-593-MMA (MSB), 2023 U.S. Dist. LEXIS 85634 (S.D. Cal. Feb. 8, 2023) .............. 20

*Harper v. Charter Communs., LLC*,
  No. 2:19-cv-00902 WBS DMC, 2020 U.S. Dist. LEXIS 33054 (E.D. Cal. Feb. 25, 2020).......... 23

*Hauter v. Zogarts*,
  14 Cal.3d 104 (1975) ................................................................................... 6

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ......................................................................... 28

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................. 12, 13, 15

*Huu Nguyen v. Nissan N. Am., Inc.*,
  932 F.3d 811 (9th Cir. 2019) .............................................................. 26, 28, 30

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018).................................................................. 29, 31

*In re NVIDIA GPU Litig.*,
  No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500 (N.D. Cal. Nov. 19, 2009) ........................ 24

*In re SanDisk SSDs Litig.*,
  736 F.Supp.3d 786 (N.D. Cal. 2024) .................................................................. 17

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................. 30

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
  534 F. Supp. 3d 1067 (N.D. Cal. 2021) ................................................................ 15

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) ..................................................................... 28, 29

*In re Trader Joe's Co. Dark Chocolate Litig.*,
  726 F. Supp. 3d 1150 (S.D. Cal. 2024) ................................................................ 19

*In re Vizio, Inc.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 10

*In re Wal-Mart Stores, Inc.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................................ 22

*Jessop v. Giggle, Inc.*,
  2015 U.S. Dist. LEXIS 181277, 2015 WL 11622421 (S.D. Cal. Feb. 2, 2015)........................... 32

*Johnson v. Nissan N. Am., Inc.*,
   No. 22-16644, 2024 U.S. App. LEXIS 28927 (9th Cir. Nov. 14, 2024) ................................. 26, 28

*Kavehrad v. Vizio, Inc.*,
   No. 8:21-cv-01868-JLS-DFM, 2023 U.S. Dist. LEXIS 46548 (C.D. Cal. Jan. 26, 2023) ............ 12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 8

*Keck v. Alibaba.com, Inc.*,
   No. 17-cv-05672-BLF, 2018 U.S. Dist. LEXIS 148571 (N.D. Cal. Aug. 30, 2018)..................... 29

*Keith v. Buchanan*,
   173 Cal.App.3d 13 (1985) ................................................................................................... 6

*Kendricks v. Collect Access, LLC*,
   No. 5:19-cv-01134-ODW (SHKx), 2021 U.S. Dist. LEXIS 14500 (C.D. Cal. Jan. 26, 2021) ........ 8

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................... 8, 27, 30

*Klaehn v. Cali Bamboo, LLC*,
   No. 19-CV-1498 TWR (KSC), 2021 U.S. Dist. LEXIS 136603 (S.D. Cal. June 14, 2021) .......... 14

*Koller v. Med. Foods, Inc.*,
   No. 14-cv-02400-RS, 2015 U.S. Dist. LEXIS 202454 (N.D. Cal. Jan. 6, 2015).......................... 16

*Lytle v. Nutramax Labs., Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ........................................................................................... 30

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) ................................................................................ 10

*Mason v. Spring EQ LLC*,
   No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895 (C.D. Cal. Jan. 22, 2025)...... 22

*Matic v. United States Nutrition, Inc.*,
   No. 18-cv-9592-PSG, 2019 U.S. Dist. LEXIS 131576, 2019 WL 3084335
   (C.D. Cal. Mar. 27, 2019) ................................................................................................ 10

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) ........................................................................................... 28

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) ............................................................................................................ 22

*Mijeong Kim v. Bluetriton Brands, Inc.*,
   No. 22-cv-56063, 2024 U.S. App. LEXIS 1490 (9th Cir. Jan. 23, 2024)................................. 6, 7

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ........................................................................................... 16

*Nilima Amin v. Subway Rests., Inc.*,
   No.21-cv-00498-JST, 2022 U.S. Dist. LEXIS 243270 (N.D. Cal. July 8, 2022).......................... 10

*NuCal Foods, Inc. v. Quality Egg LLC*,
   918 F.Supp.2d 1037 (E.D. Cal. 2013)................................................................................... 7

*Ortiz v. Amazon.com LLC*,
   No. 17-cv-03820-JSW, 2017 WL 11093812 (N.D. Cal. Oct. 10, 2017) ..................................... 25

*Paulk v. Student Transp. of Am., Inc.*,
   No. CV 24-3436-JFW(JPRx), 2024 U.S. Dist. LEXIS 216594 (C.D. Cal. July 25, 2024) ........... 23

*Prescott v. TC Heartland, LLC*,
   No. 23-cv-04192-PCP, 2024 U.S. Dist. LEXIS 127166 (N.D. Cal. July 18, 2024) ...................... 20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................................................ 8

*Robertson v. Clean Control Corp.*,
    No. 5:24-cv-01478-SSS-DTBx, 2024 U.S. Dist. LEXIS 229120 (C.D. Cal. Dec. 18, 2024) .......... 6

*Rodas v. Monetary Mgmt. of Cal.*,
    No. 2:14-cv-01389-TLN-AC, 2015 U.S. Dist. LEXIS 39579 (E.D. Cal. Mar. 26, 2015).............. 23

*SBCW Consulting Inc. v. TSYS Merch. Sols., LLC*,
    No. 2:24-cv-03193-SB-AGR, 2024 U.S. Dist. LEXIS 195586 (C.D. Cal. Oct. 28, 2024) ........... 23

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) .............................................................................................. 32

*Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*,
    No. 22-cv-03603-TLT, 2023 U.S. Dist. LEXIS 37347 (N.D. Cal. Feb. 15, 2023) ...................... 20

*Slovin v. SunRun, Inc.*,
    No. 15-cv-05340 YGR, 2016 U.S. Dist. LEXIS 141583 (N.D. Cal. Oct. 12, 2016).... 25, 26, 27, 31

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011).......................................................................................... 1, 2, 21, 22

*Smith v. Bayer Corp.*,
    564 U.S. 299, 131 S. Ct. 2368 (2011) .................................................................................. 21

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) .............................................................................................. 30

*Strumlauf v. Starbucks Corp.*,
    192 F. Supp. 3d 1025 (N.D. Cal. 2016) .................................................................................. 6

*Swartz v. Dave's Killer Bread, Inc.*,
    No. 4:21-cv-10053-YGR, 2024 U.S. Dist. LEXIS 198028 (N.D. Cal. Sep. 20, 2024) ................. 30

*Swift v. Zynga Game Network, Inc.*,
    No. C 09-05443 SBA, 2010 U.S. Dist. LEXIS 117355 (N.D. Cal. Nov. 3, 2010)....................... 25

*Tabletop Media, LLC v. Citizen Sys. Of Am. Corp.*,
    CV 16-7140 PSG (ASx), 2017 U.S. Dist. LEXIS 232252, 2017 WL 10591885
    (C.D. Cal. Mar. 3, 2017) ..................................................................................................... 17

*Tan v. QuickBox, LLC*,
    No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427 (S.D. Cal. Dec.8,2020)................. 12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) ....................... 24

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................ 26

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .............................................................................................. 11

*Valentine v. Crocs, Inc.*,
    No. 22-cv-07463-TLT (N.D. Cal.)................................................................................. passim

*Valentine v. Crocs, Inc.*,
    No. 22-cv-07463-TLT, 2023 U.S. Dist. LEXIS 245728 (N.D. Cal. Apr. 26, 2023) .............. passim

*Valentine v. Crocs, Inc.*,
    No. 22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 237761 (N.D. Cal. Oct. 16, 2024)................ passim

*Valentine v. Crocs, Inc.*,
    No. 22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 237978 (N.D. Cal. Apr. 5, 2024) ................... 5, 11

*Valentine v. Crocs, Inc.*,
    No. 22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 238047 (N.D. Cal. Sep. 19, 2024) ...................... 3

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................................. 9

*Victor v. R.C. Bigelow, Inc.*,
    No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)..................... 19

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................................................. 26

*Walker v. Life Ins. Co. of the Sw.*,
    953 F.3d 624 (9th Cir. 2020) ................................................................................................. 30

*Wallace v. SharkNinja Operating, LLC*,
    No. 18-cv-05221-BLF, 2020 U.S. Dist. LEXIS 40594 (N.D. Cal. Mar. 9, 2020).......................... 7

*Watkins v. MGA Ent., Inc.*,
    574 F. Supp. 3d 747 (N.D. Cal. 2021) ..................................................................................... 7

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ............................................................................................ 26

*Webb v. Circle K Stores Inc.*,
    2022 U.S. Dist. LEXIS 200682, 2022 WL 16649821 (D. Ariz. Nov. 3, 2022)............................ 31

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ........................................................................................... 25, 31

*Williams v. Gerber Products Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................................................... 17, 18

*Wilson v. Metals USA, Inc.*,
    No. 2:12-CV-00568-KJM-CKD (TEMP), 2016 U.S. Dist. LEXIS 86861
    (E.D. Cal. July 1, 2016) ......................................................................................................... 28

*Wisdom v. Easton Diamond Sports, LLC*,
    824 F. App'x 537 (9th Cir. 2020).......................................................................................... 31

*Wright v. Costco Wholesale Corp.*,
    No.22-cv-04343-WHO, 2023 U.S. Dist. LEXIS 7832 (N.D. Cal. Jan.17, 2023)......................... 11

*Yastrab v. Apple Inc.*,
    No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015) ................... 23

**Statutes**

Cal. Com. Code § 2313(1)(b) ........................................................................................................ 4

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................... 6

Fed. R. Civ. P. 12(f) .............................................................................................................. 17, 18

Fed. R. Civ. P. 23 ............................................................................................................. 1, 16, 17

Fed. R. Civ. P. 9(b) ........................................................................................................... passim

## I.    INTRODUCTION

When this Court denied class certification in *Valentine v. Crocs, Inc*., No. 22-cv-07463-TLT (N.D. Cal.). ("*Valentine*"), it did not find the proposed class was uncertifiable. Indeed, the Court made no class-wide findings, such as to predominance or commonality. Rather, it denied class certification due to infirmities with the proposed representatives, concluding that Tiffany Avino lacked standing and Ruby Cornejo lacked typicality. Without a representative, the denial left the claims of thousands of putative class members outstanding and fragmented. Although these individuals sustained the same injuries by, at a minimum, overpaying for shoes that shrink (a defect that, to this day, Defendant Crocs, Inc. ("Crocs") does not deny or warn about on product labels), they had no representative, and their claims were uncertified under Rule 23. However, the proposed representatives' effort to certify a class in *Valentine* did not forever bar the courthouse doors to these individuals. To the contrary, all putative class members retained their right to pursue their claims. *See Smith v. Bayer Corp.*, 564 U.S. 299, 316 (2011) (holding that "the rule against nonparty preclusion" which applies when class certification is denied "perforce leads to relitigation of many issues").

Crocs itself anticipated the exact scenario the parties now find themselves in. When it opposed Plaintiffs' motion to intervene into *Valentine*, it argued that "the only prejudice" they would sustain with a denial was that they would be "required to file a new action," and arguably lose "putative class members making purchases between 2018-2020 who they currently seek to include in the ongoing action." *Valentine*, No. 22-cv-07463-TLT, ECF 115 at 15 (N.D. Cal.). The fact that Plaintiffs Jacqueline Mongalo, Chelsea Garland, Philip Werner, and Melissa Harmon (collectively, "Plaintiffs") have now filed their own class action is the natural, predictable consequence of what occurred in *Valentine*.

Now, eager to capitalize on the fruits of the Court's denial of class certification, Crocs takes, in essence, the opposite position, arguing that a *denial* of class certification has the same preclusive effect on the rights of putative class members as the *approval* of such a motion. In *Smith*, the Supreme Court rejected that argument, explaining that a denial of class certification does not bar different plaintiffs from seeking to certify a similar class. *Smith*, 564 U.S. at 315–16. This rule exists for good

reason—Rule 23's demanding standards exist precisely to ensure that class members' rights are protected *before* they can be bound by any judgment. *Id*.

While *Valentine*'s holdings regarding class representation serve as persuasive authority, this is a different case with different plaintiffs all of whom have Article standing, are typical of those similarly situated, and thereby are not affected by those decisions. Despite this, Crocs improperly seeks to advance class certification to the motion to dismiss stage by asking the Court to strike the class allegations and, in effect, deny class certification *on the pleadings*. The effort is premature. Questions such as, typicality and predominance, are fact-intensive, and, without an evidentiary record before the Court, it cannot make such determinations. As the Court previously held in *Valentine*, these questions are suited for the class certification stage, not the pleading stage.

Crocs' remaining arguments largely recycle the same arguments that were previously made and rejected (twice) by this Court in *Valentine*. It ignores that advertisements, including label claims, can serve as express warranties. It argues that shrinkage does not go to the "central function" of the shoes, yet, at the same time, it concedes that a shoe's purpose is for "walking on ground." *See* Motion to Dismiss ("MTD") (ECF 15) at 9. A shoe that shrinks to the point at which it becomes "unwearable," as Plaintiffs allege, necessarily fails its central function. Moreover, the Complaint satisfies Rule 9(b) because it specifies who (Crocs) sold shoes made of 90% or more Croslite that failed to disclose that they retain their size in hot environments (what) on the Products and their labels and webpages (where) at purchase during the class period (when). The Motion should be denied.

## II.     BACKGROUND

Crocs sells and manufactures shoes made of a foam polymer material known as Croslite. Compl. (ECF 1) ¶ 54. Although Crocs markets its shoes for hot environments, hot conditions cause the shoes to shrink to the point in which they become unwearable. *Id*. ¶¶ 3–4. Croslite shrinks on exposure to heat due to polymer relaxation. *Id*. ¶ 57. Molding the Products effectively "stretches out" polymer chains, and when exposed to heat, the polymer chains relax and shrink. *Id*. All Products at issue have the same inherent shrinkage defect because they are all made of 90% or more Croslite (collectively referred to herein as the "Products"). *Id*. ¶ 58.

All of the Plaintiffs are individuals who sought to intervene in *Valentine* but were denied leave. *See Valentine v. Crocs, Inc*., No. 22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 238047, at *1–2 (N.D. Cal. Sep. 19, 2024). They now assert claims that are nearly identical to those at issue in *Valentine*. In particular, all Plaintiffs allege that they bought shoes that shrank "to the point where they no longer fit" shortly after purchase. Compl. ¶¶ 73, 81, 89, 96. All looked at the Product packaging and webpages prior to purchase that included represented sizes, which led them to believe the shoes "would remain their represented size in ordinary conditions." *Id*. ¶¶ 77–78, 85–86, 92–93, 99–100. None saw any warnings about shrinkage on those materials. *Id*. All allege that, had they known of the shrinkage defect, they would not have bought the shoes or would have paid less. *Id*.

To date, Crocs does not warn about the shrinkage defect on Product labels or the Product itself. As such, Plaintiffs bring claims based on the failure to warn of the defect. *Id*. ¶¶ 131–136. Plaintiffs also bring implied warranty claims since the defect renders the shoes unwearable in addition to express warranty and misrepresentation claims based on Crocs' size representations and advertisements campaigns that represented the Products were "pool party," "perfect for the pool," "perfect for the garden," "beach bum," "water and swim shoes," and "pool" or "beach" shoes suitable for use in hot and/or sunny environments. *Id*. ¶¶ 7–8, 24–28, 110–129.

In *Valentine*, different named plaintiffs were unsuccessful in their bid to certify a class for similar claims. *See Valentine v. Crocs, Inc*., No. 22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 237761, at *2 (N.D. Cal. Oct. 16, 2024). The Court denied certification on narrow grounds based on the evidence before it, finding that the two named plaintiffs, Avino and Cornejo, could not represent the proposed class. The Court held that Avino lacked Article III standing in light of Crocs' evidence claiming that her shoes did not shrink. *Id*. at *15–18. After analyzing Cornejo's deposition testimony and observing that "there is a factual dispute of whether Cornejo knew that the Products were defective when she repurchased them," the Court went on to find that Cornejo was inadequate because "whether Cornejo relied on the omission of the defect will likely 'become the focus of the litigation.'" *Id*. at *35–36. None of those fact determinations are binding on any Plaintiff here, nor are they of any relevance to the instant motion. To the contrary, each Plaintiff here paid a premium for Crocs that did

1  shrink. *See* Compl. ¶¶ 77–78, 85–86, 92–93, 99–100. Indeed, Crocs does not challenge Plaintiffs'

2  standing here. There are no allegations that the Plaintiffs in this case they knew of the shrinkage defect.

3  **III.    ARGUMENT**

4      **A.    The Motion is Not Dispositive.**

5      As an initial matter, Crocs' motion is not dispositive. It does not mention, let alone move to

6  dismiss Plaintiffs' claims under the unfair prong of the UCL. As the Court previously held in

7  *Valentine*, "[a] moving party is not permitted to offer new arguments in its Reply." *Valentine*, 2024

8  U.S. Dist. LEXIS 237761, at *17, citing *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010)

9  ("[A]rguments raised for the first time in a reply brief are waived."). Crocs' failure to raise arguments

10  as to this claim itself preludes dismissal.

11      **B.    The Claims Crocs Does Challenge Withstand Dismissal.**

12      As for the remaining claims, the Court settled the majority of Crocs' arguments long ago in

13  *Valentine*. As Crocs concedes, the plaintiffs there asserted claims "nearly identical" to those at issue

14  here, *see* MTD at 3, and the Court found those allegations sufficed to state a claim. *See Valentine v.*

15  *Crocs, Inc*., No. 22-cv-07463-TLT, 2023 U.S. Dist. LEXIS 245728, at *5–6 (N.D. Cal. Apr. 26, 2023)

16  (allowing express and implied warranty claims to proceed); *Valentine v. Crocs, Inc*., No. 22-cv-07463-

17  TLT, 2024 U.S. Dist. LEXIS 237978, at *10 (N.D. Cal. Apr. 5, 2024) (denying second motion to

18  dismiss in full). Nothing in the Court's subsequent rulings in *Valentine* changed the pleading standard.

19  Just as these allegations were sufficient in *Valentine*, they are here too.

20      **1.    Plaintiffs Allege Breach of Express Warranty.**

21      In *Valentine*, this Court recognized that "[p]roduct advertisements can be part of an express

22  warranty." *Valentine*, 2023 U.S. Dist. LEXIS 245728 at *10, citing Cal. Com. Code § 2313(1)(b)

23  ("Any description of the goods which is made part of the basis of the bargain creates an express

24  warranty that the goods shall conform to the description."). Plaintiffs base their express warranty

25  claims on: (1) the size representations; and (2) Crocs' advertising campaigns that represented the

26  Products were "pool party," "perfect for the pool," "perfect for the garden," "beach bum," "water and

27  swim shoes," and "pool" or "beach" shoes suitable for use in hot and/or sunny environments. Compl.

28  ¶¶ 7–8. In order to buy any pair of shoes, a consumer must select the size; it is an essential part of the

bargain. Crocs, nonetheless, argues it is "not an unequivocal promise" that the shoes "could not shrink." MTD at 8. Plaintiffs' theory, however, is that the size on the shoes is a promise that the shoes will *remain* their advertised size in ordinary heat. Compl. ¶ 40. That size is a "specific promise to consumers, one with a set meaning" that is capable of measurement. *Robertson v. Clean Control Corp*., No. 5:24-cv-01478-SSS-DTBx, 2024 U.S. Dist. LEXIS 229120, at *11 (C.D. Cal. Dec. 18, 2024) (holding that "makes up to 32 Gallons" is and express warranty). After all, if size were not measurable, then the Court could ***not*** have dismissed Avino from *Valentine*. *Valentine*, 2024 U.S. Dist. LEXIS 237761, at *15; *see also Strumlauf v. Starbucks Corp*., 192 F. Supp. 3d 1025, 1031 (N.D. Cal. 2016) (holding "Grande" was an express warranty for 16 oz of fluid excluding foam).

As for the claims based on advertisements, the Court found in *Valentine* that Crocs' advertising that the shoes were "water-friendly" and "suitable for pool, garden and beach environments" were actionable as express warranties. *Valentine*, 2023 U.S. Dist. LEXIS 245728, at *11–12. There, Crocs argued, as it does here, that they were unactionable puffery. The Court disagreed, observing that courts have found statements such as "completely safe ball will not hit player" and "a carefully well-equipped and very seaworthy vessel" to be specific and unequivocal statements. *Id*., citing *Hauter v. Zogarts*, 14 Cal.3d 104, 109 (1975), *Keith v. Buchanan*, 173 Cal.App.3d 13, 22 (1985). The same applies here.

Crocs' other cases are easily distinguished. In *Mijeong Kim v. Bluetriton Brands, Inc*., No. 22-cv-56063, 2024 U.S. App. LEXIS 1490, at *3 (9th Cir. Jan. 23, 2024), the water bottle explicitly qualified "Arrowhead" with "®" and "Brand," clear signals to consumers that "Arrowhead" merely identified the product line, not the source of the water. No. 22-56063, 2024 U.S. App. LEXIS 1490, at *3 (9th Cir. Jan. 23, 2024). Similarly, the "Age 3+" claim in *Watkins v. MGA Ent., Inc*., 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) did not make any "specific affirmation[s] of fact" about safety, as the plaintiff contended. In contrast, here, the size representations directly (and exclusively) pertain to size.

### 2.    The Implied Warranty Claim Here Must Proceed.

Crocs claims the implied warranty claims fail because Plaintiffs have not alleged "that the shoes lack the most basic degree of fitness to be used as shoes." MTD at 9. Its own brief contradicts the position: it concedes that "a shoe's ordinary purpose is for 'walking upon ordinary ground.'" *Id*.,

quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1037, 1043–44 (E.D. Cal. 2013). Plaintiffs repeatedly allege that the "design flaw defeats the fundamental purpose of the Products since the shrinkage and/or warping renders them unwearable."[1] Compl. ¶3; *see also* ¶¶5, 125, 131 (alleging they shrink or warp "to the point where they no longer fit"). Even under Crocs' own cases, these allegations suffice.

Crocs further argues Plaintiffs failed to provide notice for their implied warranty claims. The Complaint, however, explicitly alleges that Crocs "received notice and demand" regarding the shrinkage defect in July 2022 and subsequently failed to remedy the issue. Compl. ¶ 159; s*ee also Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (2008) (purpose of notice is "inform[] the seller of the need to preserve evidence and to be prepared to defend against the suit, and protects against stale claims."). Moreover, Crocs cannot deny that it received Plaintiffs' proposed complaint **before** they filed this suit.[2] *See Valentine*, No. 22-cv-07463-TLT, ECF 107-2 (copy of proposed complaint).[3]

---

[1] Crocs insinuates that the shoes were merchantable because they did not shrink until after purchase. But latent defects typically manifest after purchase. If Crocs' position were true, then a dishwasher that later catches fire would be "merchantable," so too would be a blender with blades dislodge after use. *See, e.g., Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 U.S. Dist. LEXIS 40594, at *19 (N.D. Cal. Mar. 9, 2020).

[2] When deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (internal quotations omitted). It is well-established that a court may take judicial notice of court filings and other matters of public record. *See Kendricks v. Collect Access, LLC*, No. 5:19-cv-01134-ODW (SHKx), 2021 U.S. Dist. LEXIS 14500, at *2 n.2 (C.D. Cal. Jan. 26, 2021); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings). Plaintiffs' pre-suit notice of their proposed complaint that was filed with their motion to intervene is a matter of public record. *See Valentine*, No. 22-cv-07463-TLT, ECF 107-2 (copy of proposed complaint). To the extent the Court finds this must be pled, Plaintiffs can amend to include these allegations.

[3] Crocs argues that Garland's claims are barred if she is not a direct purchaser; however, Plaintiffs can amend to allege that she purchased from Crocs if need be.

### 3. The Fraud-Based Claims Withstand Dismissal.

#### i. The Complaint Satisfies Rule 9(b).

Crocs challenges only a subset of Plaintiffs' fraud claims under Rule 9(b), ignoring both the omission theory and misrepresentations about size. Crocs' failure to challenge these claims precludes it from doing so on reply. *See Valentine*, 2024 U.S. Dist. LEXIS 237761, at *17.

Rule 9(b) requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Omission claims are "subject to a lower pleading standard." *Edwards v. FCA US LLC*, No. 22-cv-01871-WHO, 2022 U.S. Dist. LEXIS 98891, at *15–17 (N.D. Cal. June 2, 2022). "Plaintiffs must at a minimum 'describe the content of the omission' and 'where the omitted information should or could have been revealed.'" *Hadi v. Toyota Motor Corp.*, No. 2:23-cv-09613-JLS-SSC, 2025 U.S. Dist. LEXIS 3222, at *8–9 (C.D. Cal. Jan. 6, 2025). Plaintiffs easily meet this requirement.

***The Omission Claim***: In *Edwards*, an omission claim satisfied Rule 9(b) by identifying "the 'who' (FCA); the 'what' (knowing about, yet failing to disclose the alleged stalling defect); the 'when' (at the time of purchase and thereafter); the 'where' (FCA's authorized repair facilities); and the 'how' (if Edward had known of the alleged defect, he would not have purchased the Jeep, or would have paid less)." *Edwards*, 2022 U.S. Dist. LEXIS 98891, at *15–17. The Complaint here mirrors those allegations; it alleges:

> **WHO**: Crocs;
>
> **WHAT**: Failed to disclose that shoes shrink a whole size in hot environments;
>
> **WHEN**: At the time of sale during the class period;
>
> **WHERE**: On the Product labels and Product webpages;
>
> **HOW**: Had Plaintiffs known of the defect, they would not have bought the Products or would have paid less.

*See* Compl. at ¶¶ 53, 63, 66, 77–78, 85–86, 92–93, 99–100, 128, 131. As in other cases with similar allegations, these allegations satisfy Rule 9(b). *See also In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1229

(C.D. Cal. 2017); *MacDonald v. Ford Motor Co*., 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) ("the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles.")

*The Size Claim*: So too for the claim based on sizes. Courts in this District apply a "straightforward test" under Rule 9(b) for cases involving "deceptive product packaging or labeling": "[t]he 'who' is the defendant; the 'what' is the allegedly misleading packaging; the 'when' is the proposed class period during which time the packaging was deceptive; the 'where' is the packaging containing the allegedly misleading statement—or in the case of deceptive packaging, the packaging itself—and the 'how' is the plaintiff's explanation for why the packaging is misleading." *Matic v. United States Nutrition, Inc.*, No. 18-cv-9592-PSG, 2019 U.S. Dist. LEXIS 131576, 2019 WL 3084335, at *7 (C.D. Cal. Mar. 27, 2019). Plaintiffs allege Crocs (who) represented a shoe size (what) on the Products, Product labels and Product webpages (where) at purchase during the class period (when) and, "had they known the Products would not retain their represented size after exposure to hot environments," they would "not have purchased the Products, or at least would have paid less" (how). Compl. ¶ 139 *see also Nilima Amin v. Subway Rests., Inc*., No.21-cv-00498-JST, 2022 U.S. Dist. LEXIS 243270, at*12–13 (N.D. Cal. July 8, 2022); *Wright v. Costco Wholesale Corp*., No.22-cv-04343-WHO, 2023 U.S. Dist. LEXIS 7832, at *21–22 (N.D. Cal. Jan.17, 2023).

*The Advertising Claims:* The claims based on advertisements are the only claims Crocs challenges under Rule 9(b), and it faults Plaintiffs for not alleging "which ads they saw, or when and where they saw them." MTD at 11. But, as this Court previously recognized, "the Ninth Circuit 'does not require absolute particularity or a recital of the evidence.'" *Valentine*, 2024 U.S. Dist. LEXIS 237978, at *6, quoting *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1180 (9th Cir. 2016). As in *Valentine*, Plaintiffs satisfy the "who," "what," "where," and "when" elements by alleging that they saw advertisements from Crocs "indicating the Products were appropriate for hot and/or sunny conditions" before their purchases on specified dates. Compl. ¶¶ 76 (Garland saw "in-store ads that showed the shoes on beaches"), 99 (Werner saw ads "in Crocs' stores when he shopped for Crocs there"), 80 (Mongalo shopped at "Crocs' online store in 2022"), 88 (Harmon shopped for Crocs online), 42–45, 51–52; *compare with Valentine*, 2024 U.S. Dist. LEXIS 237978, at *7–8 (finding

"what" was satisfied because "Avino was also exposed to several in-store advertisements of Crocs shoes 'on beaches and around water'" and "[t]he pleadings show in-store advertisements that meet Avino's description.") Plaintiffs need not allege "the exact date and time of advertisement exposure"; rather, this can be inferred from the dates of Plaintiffs' purchases. *Valentine*, 2024 U.S. Dist. LEXIS 237978, at \*10 ("alleging purchases were made in early-Spring to Summer 2022, specific advertisements were seen 'prior to' the purchase dates, and describing 'what' advertisements were relied on provides Defendant sufficient notice to defend against the alleged misconduct.") Each Plaintiff alleges the dates of purchase, and, thus, their exposure can be inferred from these time frames. Compl. ¶¶ 72 (Garland bought between 2021-2023); 80 (Mongalo bought around 2022); 88 (Harmon bought in 2024); 95 (Werner shopped for Crocs from 2022-2023).

Courts routinely find that, when a plaintiff attaches examples of the advertisements they were exposed to, the pleading satisfies Rule 9(b) and gives the defendant sufficient notice to mount a defense. *See, e.g.*, *Tan v. QuickBox, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427, at \*91 (S.D. Cal. Dec.8,2020) (plaintiff satisfied Rule 9(b) when she "provide[d] multiple examples of La Pura advertisements and websites containing the alleged misrepresentations regarding reviews). Because Plaintiffs have done so here, *see* Compl. ¶¶ 42–45, 51–52, they meet the standard.

### ii.    The Omission Is Actionable.

An omission is actionable if it pertains to a "fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018). That duty arises in multiple ways, including when the defendant "had exclusive knowledge of material facts not known to the plaintiff," or when the defendant "makes partial representations but also suppresses some material fact." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255–56 (2011). Here, both apply.

Crocs had exclusive knowledge that the shoes shrink in heat, a fact unknown to reasonable consumers. Plaintiffs allege Crocs had years of customer complaints, research and development of the material, and consumer feedback regarding shrinkage. *See* Compl. ¶¶ 61–65; *see also Kavehrad v. Vizio, Inc.*, No. 8:21-cv-01868-JLS-DFM, 2023 U.S. Dist. LEXIS 46548, at \*20–21 (C.D. Cal. Jan. 26, 2023) (finding allegations of company monitoring consumer forums sufficient to suggest

knowledge).[4] Plaintiffs further allege that Crocs "even admitted in communications to retail stores carrying the Products that it knew the Products shrank after exposure to sun and/or heat." Compl. ¶ 65. Crocs similarly made partial representations as to size on the Product labels and webpages—yet failed to disclose that the shoes do not retain their represented size in ordinary conditions. *See Collins*, 202 Cal. App. 4th at 255–56. This is enough to give rise to a duty to disclose. *Id*.

Crocs relies on *Hodsdon v. Mars, Inc*., 891 F.3d 857 (9th Cir. 2018) to argue that Plaintiffs must allege that a defect that goes to the "central functionality" and renders the Products "incapable of use by any consumer." MTD at 15. Crocs misunderstands the test. In *Bettles*, the court explained that "[t]he Ninth Circuit in *Hodson* did not require that a defect render a product 'incapable of use by any consumer' to satisfy the test." *Bettles v. Toyota Motor Corp*., No. 2:21-cv-07560-ODW (AFMx), 2022 U.S. Dist. LEXIS 92555, at *10–11 (C.D. Cal. May 23, 2022). *Hodsdon* merely "cited two California cases holding that defects rendering products 'incapable of use' related to the products' central function." *Id*. A defect need not be "incapable of use by any consumer" because "[a]lthough a defect rendering a product incapable of use will relate to the product's central function, the converse is not necessarily true; that is, a defect relating to a product's central function will not always render the product incapable of use." *Id*.

Either way, Plaintiffs satisfy the test because Crocs does not (and cannot) dispute that the purpose of the Products is for "walking upon ordinary ground," MTD at 9, and the alleged defect renders the shoes "unwearable" and causes them to shrink to the point in which they "no longer fit." Compl. ¶ 3. A shoe that cannot be worn at all necessarily fails its "central function." *See, e.g*., *Hadi v. Toyota Motor Corp*., No. 2:23-cv-09613-JLS-SSC, 2025 U.S. Dist. LEXIS 3222, at *13–15 (C.D. Cal. Jan. 6, 2025) (defect with HVAC system went to a vehicle's "central function" because it affected the "the air quality and electrical systems").

---

[4] Although further detail is unnecessary at this stage, if required, Plaintiffs can easily amend to add more, including details as to Crocs' internal shrinkage testing, studies, testimony, and receipt of additional customer complaints, as specified in the unredacted *Valentine* motion for class certification, all of which demonstrates its knowledge. *See Valentine*, No. 3:22-cv-07463, ECF 95, at 1-10 (N.D. Cal.).

Crocs' cases are distinguishable. In *Klaehn*, "each of the Plaintiffs continue to use the Product as their flooring despite their complaints." *Klaehn v. Cali Bamboo, LLC*, No. 19-CV-1498 TWR (KSC), 2021 U.S. Dist. LEXIS 136603, at *30 (S.D. Cal. June 14, 2021). No similar allegations exist here. Similarly, the smudges on computer screens in *Ahern* did not go to functionality, but, rather, the appearance of the screen. *Ahern v. Apple Inc*., 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019). Here, by contrast, the defect goes directly to the function of the shoes—the ability to wear them—and prevents use all together. *See Beyer v. Symantec Corp*., 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018) (finding that defects that create a "critical vulnerability" to online threats and "make computers more susceptible to cyberattacks than they would have otherwise been" went to central functionality).

Crocs also ignores another major distinction that separates this case from those it cites: the partial representation—here, the size representation. "Courts in the Ninth Circuit allow claims based on fraudulent omissions where the defendant, makes partial representations that are misleading because some other material fact had not been disclosed." *Goodwin v. Walgreens, Co*., No. CV 23-147-DMG (PDx), 2023 U.S. Dist. LEXIS 104638, at *10 (C.D. Cal. June 14, 2023). Indeed, Crocs' own authority, *Hodsdon*, distinguishes this scenario from "pure omission" cases. *See Hodsdon v. Mars, Inc*., 891 F.3d 857, 863 n.3 (9th Cir. 2018). There, the Ninth Circuit acknowledged that the California Court of Appeal decided a recent case after oral argument, *Gutierrez v. CarMax Auto Superstores Cal.*, 19 Cal. App. 5th 1234 (Ct. App. 2018), that held that defendant had a duty to disclose a recall because it "made *partial representations* about the vehicle's braking and lighting systems" which "were likely to mislead." (emphasis in original). *Hodsdon* observed that *Guiterrez*'s holding did not "affect the outcome" of the case because *Hodson* is a "purely omissions-based case." *Hodsdon*, 891 F.3d at 863 n.3. As such, *Hodson* indicates that the "central functionality tests might not apply to partial-misrepresentation (rather than pure-omission) cases." *In re Toyota RAV4 Hybrid Fuel Tank Litig*., 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021). Here, Crocs' partial representation as to size gives rise to an independent duty to disclose that the shoes will not retain their size in hot environments. *See Goodwin*, 2023 U.S. Dist. LEXIS 104638, at *10 (describing the product as a "Children's Product" was a partial representation that triggered a duty to disclose "that the Children's Product was not specifically formulated for children"); *Ary v. Target Corp*., No. 22-cv-02625-HSG,

2023 U.S. Dist. LEXIS 49633, at *7 (N.D. Cal. Mar. 23, 2023) (partial representations, including "maximum strength" and "pain relief" for "up to 8 hours" triggered a duty to disclose "that the patches… cannot withstand regular activities (such as walking)").

### iii.    The Misrepresentations are Actionable.

Crocs next sets up a strawman by claiming none of the misrepresentations are actionable because it does not represent that the shoes are "unshrinkable," but it mischaracterizes the theory, yet again. MTD at 13.

Plaintiffs allege that the size representations are misleading—not because they lead consumers to believe the shoes were "unshrinkable"—but, rather, because they misled consumers into believing "that the shoes they purchase will *retain* the size represented to them at purchase even when exposed to hot environments" since "ordinary shoes do not shrink in size." Compl. ¶¶ 67, 132 (emphasis added). Crocs argues that the sizes are not actionable because they are true at the time of purchase. However, it is black letter law that "California laws prohibit not only advertising which is false, but also advertising which[,] *although true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1017 (9th Cir. 2020) (internal quotations omitted) (emphasis in original); *see also Koller v. Med. Foods, Inc*., No. 14-cv-02400-RS, 2015 U.S. Dist. LEXIS 202454, at *12–13 (N.D. Cal. Jan. 6, 2015) (finding "extra virgin" claim to be misleading even if initially true because the oil "degrades in bottles that are not adequately protected from light and heat"). Thus, even if the size representation is true at purchase, it does not mean it is not actionable since it is misleading. The size representations are also not puffery, as explained above; rather, they are measurable statements of fact.

Crocs' argument that the advertisements are not actionable fail for the same reasons explained above. Among other things, the Court determined they are actionable and not puffery in *Valentine*. *See Valentine*, 2023 U.S. Dist. LEXIS 245728, at *10–12. As with the claims based on size, Crocs misunderstands the theory. Plaintiffs allege that Crocs' advertising misrepresented the Products as suitable for "pool," "garden," "beach" and other hot environments. Compl. ¶¶ 29, 115. The Products, however, are not suitable for pool, garden and beach environments because those conditions render the Products unusable. The fact that the at-issue advertisements are images of the Products in hot

1   environments does not foreclose the claims, as courts find that imagery can create consumer

2   expectations about a product. *See Williams v. Gerber Products Co*., 552 F.3d 934 (9th Cir. 2008) (fruit

3   images on baby food packaging could be misleading when the product contained no fruit pictured in

4   the images).

5          The cases Crocs relies on involve vague superlatives without concrete meaning. In *Tabletop*

6   *Media*, the court found it "impossible for the fact finder to verify if the printer is 'robust'" without an

7   objective measure. *Tabletop Media, LLC v. Citizen Sys. Of Am. Corp.*, CV 16-7140 PSG (ASx), 2017

8   U.S. Dist. LEXIS 232252, 2017 WL 10591885, at *7 (C.D. Cal. Mar. 3, 2017). Similarly, *In re*

9   *SanDisk SSDs Litig.*, 736 F.Supp.3d 786, 793 (N.D. Cal. 2024), terms like "durable," "high

10  performance," and "superfast" were found to be puffery because they lacked specific, measurable

11  standards. Yet, *In re SanDisk SSDs Litig.* also found that the claim "forged aluminum chassis acts as

12  a heatsink" was "specific and measurable" and plausibly false "based on the regular overheating" of

13  the products. *Id*. The claims at issue here—Crocs' representations about the shoes being "perfect for

14  the pool," "beach bum," and "water and swim shoes"—are analogous to the statements about the

15  functionality of the products that were found to **not** be puffery in *In re SanDisk SSDs Litig.* Indeed,

16  the advertising here pertains to the suitability of the shoes for identifiable environments with concrete

17  conditions. These claims have definite, testable meanings: the shoes will remain functional when

18  exposed to conditions inherent to beaches and pools—namely, heat and sun. As this Court previously

19  held, these claims are actionable. *See Valentine*, 2023 U.S. Dist. LEXIS 245728, at *10–12 (finding

20  the advertisements are not puffery).

21                    **iv.     Plaintiffs Allege Reasonable Consumer Deception.**

22         Crocs next argues that "none of Crocs' representations… are likely to cause reasonable

23  consumers to believe that polymer-based plastic shoes are incapable of shrinking." MTD at 17. Crocs,

24  however, again, misunderstands the claims and the reasonable consumer standard. The standard

25  requires only showing "that members of the public are likely to be deceived." *Ebner v. Fresh, Inc*.,

26  838 F.3d 958, 965 (9th Cir. 2016). Reasonable consumer deception is a question of fact, inappropriate

27  for resolution at the motion to dismiss stage, absent "rare situations" where the violation is definitively

28  implausible. *Williams*, 552 F. 3d at 938. This is not one of those "rare" cases.

Addressing solely the claim based on advertisements, Crocs argues that no consumer could be deceived as to storage because the ads depict people wearing the shoes. That, however, is not Plaintiffs' claim. Plaintiffs' claim is far more straight-forward: they allege that the ads led consumers to believe that the Products were suitable for hot environments, which necessarily encompasses both use *and* storage.[5] Compl. ¶ 5. Crocs, again, attacks a strawman rather than the allegations. Indeed, Crocs' distinction between "wearing" and "storing" the shoes defies reality. Consider what occurs at beaches and pools—the same places where Crocs depicts the shoes: consumers wear them to the beach, remove them to swim or sunbathe, place them on hot sand or concrete, and often store them in hot cars or beach bags. Yet, Crocs now argues consumers should somehow realize these shoes can only withstand heat while on feet—a limitation appearing nowhere in its promotional materials. Reasonable consumers do not parse out all of these activities.

In any event, the argument has no bearing on the size representations or the omissions. Nothing about a shoe size draws a distinction between "storage" or "use." Rather, Plaintiffs assert a much simpler theory of deception: the size representation leads consumers to believe that it will *stay* the represented size in hot environments since "[r]easonable consumers expect that shoes will remain the same size as at purchase and that ordinary exposures to hot environments, including direct sunlight will not affect the size of the shoe." Compl. ¶ 133. Crocs' arguments as to consumer deception do not address this theory at all. Similarly, Crocs does not argue that consumers should have known that its shoes could shrink a full size, such that they would not be deceived by the omission. *See In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1167–69 (S.D. Cal. 2024) (rejecting argument that it would "unreasonable for Plaintiffs to subjectively interpret the lack of any references to heavy metals on the [P]roducts labels as a promise that they contain no *trace* of those elements"). Without any arguments addressing the omission and size claims, Crocs' arguments necessarily fail. It cannot

---

[5] Indeed, the storage-use distinction makes even less sense as to the size representations, which do not distinguish at all between the size during use versus the size during storage. Nor do reasonable consumers draw such a distinction. Indeed, Crocs itself does not argue that consumers believe that the size representation applies *only* during wear and that the shoes could essentially be any size when stored.

challenge them on reply. *See Valentine*, 2024 U.S. Dist. LEXIS 237761, at *17, citing *Graves*, 623 F.3d at 1048.

Notably, Crocs cannot point to a disclaimer or other label representation that would dispel the deception. The reasonable consumer standard is "seldom" an issue "addressed during the pleading stage, except when completely implausible allegations are made." *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *19 (N.D. Cal. Mar. 14, 2014). That can occur when information on the product or label would effectively dispel any deception. This is because a "'rational consumer' would not 'simply assume' something about a product that they can 'plainly see.'" *Sinatro v. Mrs. Gooch's Nat. Food Mkts., Inc.*, No. 22-cv-03603-TLT, 2023 U.S. Dist. LEXIS 37347, at *30–34 (N.D. Cal. Feb. 15, 2023) (finding plaintiff did not meet the reasonable consumer standard because "the net weight, approximate number of servings per container, and approximate yield put consumers 'on notice' regarding the amount of macaroni and cheese that can be produced from one box of product"). Crocs does not and cannot point to any similar disclosures in the labelling.

If anything, by advancing its own interpretation of the advertisements, Crocs only underscores the inappropriateness of the resolution of the issue at this stage. "How reasonable consumers would interpret Defendant's… marketing is a question of fact." and not a question that the court can resolve at this stage. *Hamman v. Cava Grp., Inc*., No. 22-cv-593-MMA (MSB), 2023 U.S. Dist. LEXIS 85634, at *26–27 (S.D. Cal. Feb. 8, 2023); *see also Prescott v. TC Heartland, LLC*, No. 23-cv-04192-PCP, 2024 U.S. Dist. LEXIS 127166, at *17–18 (N.D. Cal. July 18, 2024) ("Ultimately, Defendant's contrary interpretations of the [advertising]' presents an issue that 'is not appropriate for resolution on a motion to dismiss'"); *see also Ham v. Hain Celestial Group, Inc*., 70 F. Supp. 3d 1188, 1193–4 (N.D. Cal. 2014) (finding that dismissal due to a failure to satisfy the reasonable consumer standard requires the defendant to establish that it is "implausible that a reasonable consumer would believe that SAPP is not an 'all natural' ingredient"). Crocs will have its opportunity to challenge reasonable consumer deception, but, given the fact-intensive nature of the inquiry, the time to raise those arguments is at summary judgment, not on a motion to dismiss.[6]

---

[6] Moreover, to the extent the Court has reservations, Plaintiffs could easily amend to include the findings of the consumer deception survey conducted by Dr. Dennis in *Valentine*, which showed that

**C.**    **The Motion to Strike Should Be Denied.**

**1.**    ***Valentine*'s Denial of Class Certification is Not Binding on the *Mongalo* Plaintiffs.**

Crocs argues, in essence, that the Court's denial of class certification in *Valentine* forecloses class certification here. The position, however, ignores that *Valentine* denied class certification due to specific deficiencies with the named plaintiffs and representation issues—not because the Court found that a class alleging Crocs' shrinkage defect is inherently uncertifiable. *See generally Valentine*, 2024 U.S. Dist. LEXIS 237761. Because the Order focused exclusively on the proposed representatives, the decision did not reach any conclusions as to class-wide issues, such as predominance and commonality. *Id*. Contrary to Crocs' position, *Valentine* did not hold that no person could ever satisfy Rule 23's requirements for adequacy and typicality. It also did not hold that a class could ***never*** be certified. Its holdings were limited to the circumstances before the Court, which involved the proposed representation for the class.

Indeed, the Supreme Court in *Smith* rejected the same argument that Crocs makes here as "novel and surely erroneous" because "[n]either a proposed class action nor a rejected class action may bind nonparties." *Smith v. Bayer Corp.*, 564 U.S. 299, 313, 131 S. Ct. 2368, 2379 (2011). Until a class is certified, putative class members—like Plaintiffs here—are non-parties and cannot be bound by decisions in separate cases to which they were not parties. *Id*. To hold otherwise "flies in the face of the rule against nonparty preclusion." *Id*. at 316.

Plaintiffs were not parties to the *Valentine* case and, in fact, they were explicitly denied intervention. Although related, *Mongalo* and *Valentine* are ***two separate cases***. The Court's finding that Cornejo and Avino were inadequate *class representatives* does not mean that Plaintiffs here— who present different factual circumstances concerning their purchases and knowledge of the defect and each remedy the infirmities identified by this Court—cannot satisfy the requirements of Rule 23. Absent class certification, *Valentine* cannot bind Plaintiffs here. *Id*. at 316. Therefore, the overarching premise of Crocs' effort to strike the class allegations necessarily fails.

---

over 80% of participants had no idea the shoes could shrink a whole size in hot environments based on the labelling and Product webpages. *See Valentine*, No. 3:22-cv-07463, ECF 95.

### 2. Crocs' Class Certification Arguments Cannot be Resolved on the Pleadings.

Even setting *Smith* aside, motions to strike class allegations are "rarely" granted. *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614–15 (N.D. Cal. 2007). Courts "disfavor[]" them "because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Boddie v. Signature Flight Support Corp.*, No. 19-cv-03044-DMR, 2019 U.S. Dist. LEXIS 130858, at *4 (N.D. Aug. 5, 2019). Indeed, "[a]n order striking class allegations is 'functionally equivalent' to an order denying class certification." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017).

The vast majority of courts to consider a motion to strike class allegations on the pleadings – including this one – deny them. *See Valentine*, 2023 U.S. Dist. LEXIS 245728, at *23; *Mason v. Spring EQ LLC*, No. 5:24-cv-01833 MWC (AGRx), 2025 U.S. Dist. LEXIS 31895, at *11 (C.D. Cal. Jan. 22, 2025); *SBCW Consulting Inc. v. TSYS Merch. Sols., LLC*, No. 2:24-cv-03193-SB-AGR, 2024 U.S. Dist. LEXIS 195586, at *9 (C.D. Cal. Oct. 28, 2024); *Paulk v. Student Transp. of Am., Inc.*, No. CV 24-3436-JFW(JPRx), 2024 U.S. Dist. LEXIS 216594, at *8–9 (C.D. Cal. July 25, 2024); *Harper v. Charter Communs., LLC*, No. 2:19-cv-00902 WBS DMC, 2020 U.S. Dist. LEXIS 33054, at *13 (E.D. Cal. Feb. 25, 2020); *Boddie*, 2019 U.S. Dist. LEXIS 130858, at *4; *Rodas v. Monetary Mgmt. of Cal.*, No. 2:14-cv-01389-TLN-AC, 2015 U.S. Dist. LEXIS 39579, at *7–9 (E.D. Cal. Mar. 26, 2015); *Yastrab v. Apple Inc.*, No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119, at *23–24 (N.D. Cal. Mar. 23, 2015); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases and noting it is "in fact rare" to strike class allegations before a certification motion); *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500, at *40–41 (N.D. Cal. Nov. 19, 2009).

The reason is two-fold: Rule 12(f) is not an appropriate means for assessing Rule 23 requirements, and, even if it were, class certification arguments are fact-intensive and require a developed evidentiary record.

### i. None of Rule 12(f)'s Grounds for Striking the Allegations Apply Here.

The text of Rule 12(f) permits striking only "insufficient defense[s] or any redundant, immaterial, impertinent, or scandalous matter." Courts find that "Rule 12(f) is not the proper vehicle

to dismiss class allegations," *Tasion Communs. v. Ubiquiti Networks*, No. C-13-1803 EMC, 2014 U.S. Dist. LEXIS 35455, at *3–4 (N.D. Cal. Mar. 14, 2014), because "[t]hese limited categories do not map neatly onto a class allegation." *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 U.S. Dist. LEXIS 17064, at *6–9 (D. Ariz. Jan. 31, 2022). Class allegations are "not a defense," nor are they "redundant", "impertinent", or "scandalous." *Id*. They are also not immaterial "because the class definition relates directly to [the] putative class action and is thus necessary to [Plaintiffs'] claim." *Donaca v. Metro. Life Ins. Co*., No. CV 13-05611 MMM (JCx), 2014 U.S. Dist. LEXIS 198899, at *6 (C.D. Cal. Jan. 22, 2014).

Indeed, nothing in Crocs' Motion "explain[s] how the class allegations in the [Complaint] satisfy this standard." *Boddie*, 2019 U.S. Dist. LEXIS 130858, at *9. This is reason alone to deny the motion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (holding district court erred in striking damages claim under Rule 12(f) because "none of the five categories covers the allegations in the pleading sought to be stricken by [defendant]"); *Ortiz v. Amazon.com LLC*, No. 17-cv-03820-JSW, 2017 WL 11093812, at *2 (N.D. Cal. Oct. 10, 2017) (finding that "the class allegations are not redundant, immaterial, impertinent, or scandalous.")[7]

### ii.    The Motion is Premature.

Crocs nonetheless "essentially seek[s] to litigate Rule 23 class certification prematurely" without an evidentiary record. *Slovin v. SunRun, Inc*., No. 15-cv-05340 YGR, 2016 U.S. Dist. LEXIS 141583, at *3–6 (N.D. Cal. Oct. 12, 2016). Each of its arguments—standing for putative class members, adequacy of representation, and the class definition—are "the same issues that will be decided" when "it comes time to formally take up the issue of certification under Rule 23." *Canady*, 2022 U.S. Dist. LEXIS 17064, at *6–9. Crocs' hastiness is evident from its own authority: it fundamentally relies on cases that took place ***at class certification***. *See Valentine v. Crocs, Inc.*, No.

---

[7] *See also Donaca*, 2014 U.S. Dist. LEXIS 198899, at *6; *Canady*, 2022 U.S. Dist. LEXIS 17064, at *6–9; *Astiana v. Ben & Jerry's Homemade, Inc*., No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348, at *39 (N.D. Cal. May 26, 2011) (finding "under *Whittlestone*, a party seeking an order under Rule 12(f) must show that the allegations they seek to have stricken are either part of an insufficient defense, or are redundant, immaterial, impertinent, or scandalous"); *Swift v. Zynga Game Network, Inc.*, No. C 09-05443 SBA, 2010 U.S. Dist. LEXIS 117355, at *10 (N.D. Cal. Nov. 3, 2010) (same).

22-cv-07463-TLT, 2024 U.S. Dist. LEXIS 237761 (N.D. Cal. Oct. 16, 2024) (addressing arguments at class certification); *Webb v. Carter's Inc*., 272 F.R.D. 489, 493 (C.D. Cal. 2011) (same).[8]

The Ninth Circuit, however, instructs that its "cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). In *Slovin v. SunRun, Inc.*, for instance, the court was faced with similar arguments about class member standing and typicality, but found "defendants seek to challenge the standing of absent class members," which is "suited for determination at class certification, not on a motion to strike." 2016 U.S. Dist. LEXIS 141583, at *6.

So too here. Crocs' class certification defenses are not only wrong but pertain to factual issues that the Court should not resolve at this stage.

**Article III Standing:** Crocs first argues that the class definition should be stricken because the proposed class "will inappropriately include uninjured purchasers" who "lack Article III standing." MTD at 21. But the argument, even if true, presupposes factual determinations about consumer experiences that can only be established through evidence, i.e., that putative class members' shoes have not shrunk. The Court cannot make that that factual determination because doing so would violate "the prohibition against resolving factual disputes at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

The position is also wrong as a matter of law. "Ninth Circuit precedent is clear that this does not defeat certification." *Bultemeyer v. CenturyLink Inc.*, No. CV-14-02530-PHX-SPL, 2022 U.S. Dist. LEXIS 64875, at *7–8 (D. Ariz. Apr. 7, 2022) "In a class action, standing is satisfied if at least

---

[8] Crocs cites one case that struck class allegations on the pleadings, *Tietsworth*; however, the court did so on ascertainability grounds. *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010). *Tietsworth* is no longer good law on this point because the Ninth Circuit has since held that ascertainability is not a valid basis for denying class certification. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127 (9th Cir. 2017). Moreover, the Ninth Circuit has also since held that all purchasers of a product with an inherent defect sustain an overpayment injury. *See Johnson v. Nissan N. Am., Inc.*, No. 22-16644, 2024 U.S. App. LEXIS 28927, at *5 (9th Cir. Nov. 14, 2024) (rejecting argument that the "vast majority" of class members "have never had—nor ever will have—a broken [panoramic sunroof]" because plaintiffs alleged "that class members paid more for panoramic sunroofs at the point of sale than they would have had Nissan properly disclosed the material design defect"); *Huu Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 822 (9th Cir. 2019) (similar).

one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). Crocs does not dispute that the named Plaintiffs here allege that their shoes shrank, and they overpaid because Crocs hid the defect from them. Compl. ¶¶[72, 80, 88, 95, 131, 135. The same is true of all putative class members—they overpaid, *at the time of purchase*, for shoes that were defective; irrespective of whether they never took the shoes out of the box or if they shrank in the car on the ride home. Although Crocs relies heavily on *Valentine*, the opinion itself acknowledged that Cornejo had standing because her shoes shrank. *See Valentine*, 2024 U.S. Dist. LEXIS 237761, at *20 (finding Cornjeo had standing because the "[p]arties also do not dispute whether Cornejo's shoes actually shrunk.")

Conceding this, Crocs effectively asks the Court to *disbelieve* Plaintiffs' allegations that their shoes shrank by arguing further details are necessary as to "the intensity of the heat the Products were exposed to" and "the duration of the exposure." MTD at 21. But the Court cannot do so. "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). This means the Court ***must*** accept as true Plaintiffs' allegations that their shoes shrank. Compl. ¶¶ 72, 80, 88, 95. Under *Valentine*, this suffices for Article III standing.[9]

*Birdsong* does not compel a different result, as that case did not involve class certification or a motion to strike. *See Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009). Indeed, unlike *Birdsong*, Plaintiffs' allegations establish that their *own* products malfunctioned (i.e., shrank) and accordingly sustained injuries as to *themselves*, which, as even Crocs concedes, distinguishes this case. *See* MTD

---

[9] Plaintiffs, and those similarly situated, suffered an Article III injury by overpaying for a product with an inherent defect, regardless of whether the shoes shrank. This injury is well-established under binding Ninth Circuit precedent. *See Johnson*, 2024 U.S. App. LEXIS 28927, at *5; *Bowen v. Energizer Holdings, Inc*., 118 F. 4th 1134, 1145 (9th Cir. 2024); *Nguyen*, 932 F.3d at 819–20; *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (spending more money is a "quintessential injury-in-fact"); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n. 3 (9th Cir. 2013); *Wilson v. Metals USA, Inc*., No. 2:12-CV-00568-KJM-CKD (TEMP), 2016 U.S. Dist. LEXIS 86861, at *22–23 (E.D. Cal. July 1, 2016) ("In cases of allegedly defective products, a class may be certified even if the plaintiff does not prove the alleged defect manifested itself in every product the class owns, let alone that a problem manifested itself in different ways.") However, the Court need not address this issue because Plaintiffs allege that their shoes did shrink, which the Court must accept as true at this stage. *See In re Tracht Gut, LLC*, 836 F.3d at 1150.

at 20 (arguing the "*Birdsong* plaintiffs, however, alleged no history of malfunction or hearing loss caused by the alleged defect" and no injury "*as to themselves*").

    **Typicality**: Crocs claims that two of the four Plaintiffs, Werner and Garner, are "likely" atypical because they *may* have known of the shrinkage before they bought the at-issue shoes. MTD at 22. Crocs has no authority to support striking the allegations on this basis, and, as other courts observe, the "argument clearly relies on facts." *Boddie*, 2019 U.S. Dist. LEXIS 130858, at *4 (rejecting typicality challenge on the pleadings); *Keck v. Alibaba.com, Inc.*, No. 17-cv-05672-BLF, 2018 U.S. Dist. LEXIS 148571, at *8 (N.D. Cal. Aug. 30, 2018) (finding that "it is premature to address at the pleading stage" whether the plaintiff could satisfy typicality). To accept the argument would require the Court to improperly draw inferences *against* Plaintiffs (i.e., that Garland and Werner knew of the shrinkage defect). It cannot do so: inferences must be drawn *in favor* of Plaintiffs at this stage, not *against* them. *In re Tracht Gut, LLC,* 836 F.3d at 1150. Crocs also raises the specter that Plaintiffs "may" have "negligently used or misused their shoes." MTD at 23. But this, too, is nowhere in the Complaint and wholly inappropriate for consideration.[10]

    **Predominance**: Crocs similarly has no authority to support striking the allegations on the basis that "[c]ommon issues cannot predominate when individualized inquiries into previous purchases and a consumer's prior knowledge will be required." MTD at 22. Crocs fails to articulate why such inquires would be necessary. It suggests it may pertain to reliance, but in the first instance, classwide reliance is not an element of any of Plaintiffs' UCL claims. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009) ("The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud. A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief under the UCL.")

---

[10] Even if consideration were appropriate, "[i]ndividual factors may affect class members' [product] performance, but these individual factors do not affect the ultimate question whether the [products] were sold with [a] defect." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 362 (N.D. Cal. 2018).

And, as for the other claims, the Ninth Circuit finds that there is a presumption of reliance for unnamed class members when a "defendant [has] so pervasively disseminated material misrepresentations that all plaintiffs must have been exposed to them." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 631 (9th Cir. 2020). Here, there is no question the claims meet that standard since all shoes come with labels that represent a shoe size and omitted the shrinkage defect. In any event, reliance "is generally susceptible to common proof." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024).

Crocs suggests that a substantial portion of the proposed class may consist of repeat purchasers, but, even if that were true, it is irrelevant and, at a minimum, a factual matter that cannot be resolved on the pleadings.[11] *Khoja*, 899 F.3d at 1003; *see also Wisdom v. Easton Diamond Sports, LLC*, 824 F. App'x 537, 538 (9th Cir. 2020) ("[t]he district court struck Wisdom's class allegations on the pleadings, on the grounds that common questions either did not exist, or did not predominate over questions affecting individual class members. This determination was premature, and thus an abuse of discretion"); *Whittlestone*, 618 F.3d at 973 (noting courts should not resolve "disputed and substantial factual or legal issues" in a motion to strike); *Slovin*, 2016 U.S. Dist. LEXIS 141583, at *3–6 (refusing to strike class allegations because individualized issues as to consent purportedly existed).

***Class Definition***: Finally, Crocs challenges the class definition, contending it is overbroad because it includes individuals whose claims are time-barred. But, even taking the argument at face-value, this is not a basis for striking the class allegations in their entirety. At most, Crocs argues the definition should have a shorter time period going back to December 13, 2020 instead of November 22, 2028. "The proper stage for fine-tuning the class definition is certification, not pleading." *Webb v. Circle K Stores Inc.*, 2022 U.S. Dist. LEXIS 200682, 2022 WL 16649821, at *3 (D. Ariz. Nov. 3, 2022). Because Plaintiffs have the "ability to modify the class definition at a later stage in the

---

[11] In reality, courts routinely certify classes of "all purchasers" of products. *See Nguyen*, 932 F.3d at 820 (reversing denial of class certification of "[a]ll individuals in California who purchased…. a new Nissan vehicle"); *Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-cv-10053-YGR, 2024 U.S. Dist. LEXIS 198028, at *8 (N.D. Cal. Sep. 20, 2024) (certifying class of "all persons…who purchased the Products" during the class period); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 349 (rejecting argument that class included "non-injured" individuals because all members "have actually been harmed in the same way… by paying a price premium for a Modem with the latency defects").

proceedings," *Gamez v. Toyota Motor Sales, U.S.A., Inc*., No. 2:23-cv-01464-DAD-KJN, 2024 U.S. Dist. LEXIS 81246, at *16–19 (E.D. Cal. May 3, 2024), the Court need not resort to the "extreme measure" of striking the allegations at this stage. *Jessop v. Giggle, Inc.*, 2015 U.S. Dist. LEXIS 181277, 2015 WL 11622421, at *1 (S.D. Cal. Feb. 2, 2015).

### D.    Plaintiffs Request Leave to Amend If Necessary.

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only really properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys*., 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find the FAC insufficient, Plaintiff requests leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and, in the alternative, to strike must be denied.

Dated: March 12, 2025

**GUTRIDE SAFIER LLP**

*/s/ Kali R. Backer*
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
 marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
 hayley@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
 anthony@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
 kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*