**KELLEY DRYE & WARREN LLP**
Becca Wahlquist (State Bar No. 215948)
Ruth Kwon (State Bar No. 334076)
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 547-4900
Facsimile:  (213) 547-4901
BWahlquist@kelleydrye.com
RKwon@kelleydrye.com

**KELLEY DRYE & WARREN LLP**
Jonathan Cooperman (*pro hac vice forthcoming*)
Caitlin Hickey (*pro hac vice forthcoming*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone:  (212) 808-7800
Facsimile:  (212) 808-7897
JCooperman@kelleydrye.com
CHickey@kelleydrye.com

*Attorneys for Defendant*
*Crocs, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE MONGALO, CHELSEA GARLAND, PHILIP WERNER, and MELISSA HARMON, each an individual, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CROCS, INC.<br><br>Defendant. | Case No. 3:24-cv-09037-TLT<br><br>(Assigned to Hon. Trina L. Thompson)<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND/OR TO STRIKE CLASS ALLEGATIONS**<br><br>Date: April 15, 2025<br>Time: 2:00 p.m.<br>Ctrm: 9, 19th Floor<br><br>Action Filed: December 13, 2024<br>Trial Date:   None Set |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. CROCS' MOTION TO DISMISS SHOULD BE GRANTED ............................................ 2

    A. Each of Plaintiffs' Warranty Claims Is Subject To Dismissal. ............................... 2

    B. Each of Plaintiffs' Fraud-Based Claims Is Subject To Dismissal. ......................... 6

        1. Plaintiffs' Fraud-Based Claims Fail To Satisfy Rule 9(b). .......................... 6

        2. None of Crocs' Alleged Misrepresentations is Actionable. ......................... 8

        3. None of Crocs' Alleged Omissions is Actionable. ..................................... 10

        4. None of Crocs' Alleged Representations is Likely to Deceive a Reasonable Consumer as a Matter of Law. ............................................... 12

III. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN ............................. 13

    A. This Motion to Strike Can And Should Be Resolved On The Pleadings. ............ 13

    B. The Proposed Class Includes Purchasers Without Article III Standing. .............. 14

    C. The Proposed Classes Are Not Certifiable Under Rule 23. .................................. 14

IV. CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................... 9

*Ardente, Inc. v. Shanley*,
   2010 WL 546485 (N.D. Cal. Feb. 9, 2010) .......................................................................... 15

*Broomfield v. Craft Brew All., Inc.*,
   No. 17-CV-01027, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ..................................... 5, 9

*Clark v. Cal. Dep't of Forestry and Fire Prot.*,
   212 F. Supp. 3d 808 (N.D. Cal. 2016) ................................................................................. 10

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................................................... 6

*Frenzel v. AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................... 3

*Hairston v. S. Beach Beverage Co., Inc.*,
   No. 12-CV-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................ 12

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016) .......................................................................................... 9

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) ........................................................................................................ 4, 9

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................................... 10, 11

*Janney v. Mills*,
   944 F. Supp. 2d 806 (N.D. Cal. 2013) .................................................................................. 7

*Kendricks v. Collect Access, LLC*,
   No. 5:19-CV-01134, 2021 WL 256802 (C.D. Cal. Jan. 26, 2021) ........................................ 1

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................................. 1

*Kim v. Blue Triton Brands*,
   No. 2:22-CV-01907, 2022 WL 17061085 (C.D. Cal. Nov. 1, 2022), *aff'd sub nom.*, *Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024) .................................................................................................................. 12

*Klaehn v. Cali Bamboo, LLC*,
   No. 19-CV-1498, 2021 WL 3044166 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-
   55738, 2022 WL 1830685 (9th Cir. June 3, 2022) .................................................................. 11

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) .................................................................................. 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ................................................................................................... 1

*Robie v. Trader Joe's Co.*,
   No. 20-CV-07355, 2021 WL 2548960 (N.D. Cal. June 14, 2021) ......................................... 12

*In re SanDisk SSDs Litig.*,
   736 F. Supp. 3d 786 (N.D. Cal. 2024) ..................................................................................... 4

*Stearns v. Select Comfort Retail Corp.*,
   763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................................................... 3

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-CV-02746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................................ 6

*Strumlauf v. Starbucks Corp.*,
   192 F. Supp. 3d 1025 (N.D. Cal. 2016) ................................................................................... 5

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ................................................................................................. 7

*Valentine v. Crocs, Inc.*,
   No. 22-CV-07463-TLT, 2023 WL 12015530 (N.D. Cal. Apr. 28, 2023) .......................... 9, 13

*Valentine v. Crocs, Inc.*,
   No. 22-CV-07463-TLT, 2024 WL 5339457 (N.D. Cal. Oct. 16, 2024) ........................ *passim*

*Watkins v. MGA Ent., Inc.*,
   574 F. Supp. 3d 747 (N.D. Cal. 2021) ..................................................................................... 5

*Yastrab v. Apple Inc.*,
   No. 5:14-CV-01974, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ................................... 4, 5

*Young v. Cree, Inc.*,
   No. 17-CV-06252, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ............................................ 8

**Statutes**

Cal. Com. Code § 2607(3)(A) ................................................................................................. 3, 14

**Rules**

Fed. R. Civ. P 9(b) ............................................................................................................... 6, 7, 8

Fed. R. Civ. P 12(b)(6) ................................................................................................................ 2

Fed. R. Civ. P 23 ............................................................................................................. 2, 13, 14

I.      INTRODUCTION

Ignoring everything their counsel learned in *Valentine v. Crocs,* Case No. 22-CV-07463 ("*Valentine*"), the *Mongalo* Plaintiffs filed a Complaint substantially identical to the *Valentine* First Amended Complaint ("*Valentine* FAC").  In Opposition to the Motion to Dismiss, they ask this Court to similarly ignore everything it has learned in *Valentine* because, they argue, this Court is obligated to accept all of their new Complaint's allegations as true and draw all inferences in their favor.  However, in a motion to dismiss, the "determination of whether a complaint satisfies the plausibility standard is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Kendricks v. Collect Access, LLC*, No. 5:19-CV-01134, 2021 WL 256802, at *2 (C.D. Cal. Jan. 26, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The Ninth Circuit has been clear:  the Court "need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences," and it may consider material outside the pleadings to assess their sufficiency under the doctrine of judicial notice. *Id.*; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 743–44, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs and transcripts in a separate case, in which the factual predicate was identical).

Because many of the facts and legal issues presented in the Complaint have already been litigated in *Valentine*, a case in which the facts and legal theories are substantially identical,[1] this Court need not and should not accept all of Plaintiffs' allegations as true or draw all inferences in Plaintiffs' favor. While Plaintiffs allege their theory of product defect (i.e., Crocs shoes shrink a whole size when exposed to *ordinary* heat and sunlight), this Court has already recognized that the alleged shrinkage "will occur only if the Products are used in *extreme* temperatures." *Valentine v. Crocs, Inc.*, No. 22-CV-07463-TLT, 2024 WL 5339457, at *6 (N.D. Cal. Oct. 16, 2024) (emphasis added). In *Valentine*, this Court also recognized that because "the alleged defect rest[ed] on a hypothetical risk of shrinkage" that manifested only for those who exposed their

---

[1] See *Valentine* Dkt. 107 at 10; Dkt. 168 at 2 (plaintiffs alleging that "*Valentine* and *Mongalo* pertain to substantially similar transactions and events involving identical questions of law and fact and the same conduct by the same Defendant").

1 shoes to "extreme temperatures," an alleged overpayment injury would be merely "hypothetical" without a showing of actual shrinkage rendering shoes unusable. *Id.*

As argued in Crocs' Motion to Dismiss and further explained below, each of Plaintiffs' claims should be dismissed for failure to state a claim. Plaintiffs allege that Crocs made express or implied warranties or representations that its shoes could not shrink or warp when exposed to heat or sun, and that Crocs concealed an alleged defect from consumers. But Plaintiffs do not identify any specific, measurable, or verifiable statements made by Crocs that created such warranties, or allege any facts showing that a duty arose to disclose the common-sense fact that certain plastic materials can shrink in extreme heats. Plaintiffs instead rely on the implausible theory that a reasonable consumer would be deceived by advertisements showing Crocs shoes in outdoor settings, as if such images promised that the shoes would never shrink or warp in any extreme (and lethal) heats. Plaintiffs further do not allege that they timely notified Crocs of any purported breach of warranty before asserting their warranty claims. Plaintiffs' Complaint thus does not make Crocs' liability plausible; it should be dismissed pursuant to Rule 12(b)(6) and *Twombly*'s standards. Further, the fraud claims fail to meet Rule 9(b)'s specificity requirements, and should be dismissed on that basis as well.

In the alternative, Plaintiffs' class allegations should be stricken. Plaintiffs seek to represent a California state class of all consumers who purchased shoes made of at least 90% Croslite® (the "Products") directly from Crocs from November 22, 2018, to the present—regardless of whether class members experienced any shrinkage or warping or relied on any advertisements. It is clear from the face of the Complaint that the proposed class is overbroad, including numerous members who lack Article III standing or privity with Crocs, and/or who have claims that are time-barred. Plaintiffs also fail to show that they can satisfy the typicality and predominance requirements under Rule 23. Thus, the class allegations should be stricken.

## II.    CROCS' MOTION TO DISMISS SHOULD BE GRANTED

### A.    Each of Plaintiffs' Warranty Claims Is Subject To Dismissal.

Plaintiffs' theory of Crocs' breach of warranty is that the shoes shrink a whole size when exposed to ordinary heat, i.e., in the kind of outdoor environments represented in Crocs' ads.

1 Further, their theory of Crocs' fraud is that Crocs knew the shoes shrank in ordinary heat, yet
2 failed to disclose this.[2] Tellingly, Plaintiffs complain that their shoes shrank not while they were
3 being used, but while they were being stored. While Plaintiffs contend that Crocs' distinction
4 between usage and storage conditions "defies reality" because "hot environments . . . necessarily
5 encompasses both use and storage" (Opp., Dkt. 23 at 14 (emphasis omitted)), this distinction
6 underlies what may reasonably be regarded as ordinary versus extreme heat conditions. Crocs'
7 marketing pieces shown in Plaintiffs' Complaint represent people wearing their shoes in pleasant
8 outdoor environments and make no claims or implications about the shoes' ability to withstand
9 extreme heats. And while Plaintiffs point to representations about Crocs being "perfect" for the
10 pool or garden, they do not allege that Crocs' shoes were not suitable to wear at the pool or
11 garden.  They have thus failed to articulate viable warranty claims.

12 **Lack of Notice:** As an initial matter, as Crocs explained in its Motion, both warranty
13 claims are subject to dismissal because the Complaint is devoid of any allegations that any of the
14 Plaintiffs made timely warranty claims, or that Crocs refused to remedy the alleged breach. *See*
15 Cal. Com. Code § 2607(3)(A) (plaintiff "must . . . notify the seller of breach or be barred from any
16 remedy"); *see Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1020 (N.D. Cal. 2014) (finding implied
17 warranty claim fails if plaintiff fails to allege that defendant refused to repair or replace the
18 product during the applicable warranty period); *Stearns v. Select Comfort Retail Corp.*, 763 F.
19 Supp. 2d 1128, 1142 (N.D. Cal. 2010) (notice requirement "designed to allow the defendant
20 opportunity for repairing the defective item, reducing damages, avoiding defective products in the
21 future, and negotiating settlements"). In response, Plaintiffs reference a CLRA letter that Plaintiff
22 Cornejo sent to Crocs in July 2022 ("CLRA Letter") prior to filing the *Valentine* Complaint as
23 proof that they provided Crocs with notice of their warranty claims (Opp., Dkt. 23 at 6). However,
24 they cite no legal authority showing that a CLRA letter sent years before any of the Plaintiffs' at-

---

[2] In making such claims, Plaintiffs want the Court to ignore facts developed in the *Valentine* litigation, such as the fact that Crocs provides cautions on its website, under the section "Caring for your Crocs", that customer should avoid exposing their shoes to "extreme heat, sun, dishwashers, washing machines, or hot cars," which "can cause the shoes to shrink or warp." *Valentine* Dkt. 94-3 at 1, 8 (citing Dkt. 95-12 [Crocs' website]).

1  issue purchases by a different person can operate as a breach of warranty notice for their own
2  claims. Their warranty claims can, and should, be dismissed on this basis alone.

3  **Breach Of Express Warranty**:  Plaintiffs contend that Crocs created express warranties
4  through "(1) the size representations; and (2) Crocs' advertising campaigns that represented the
5  Products were 'pool party,' 'perfect for the pool,' 'perfect for the garden,' 'beach bum,' 'water
6  and swim shoes,' and 'pool' or 'beach' shoes suitable for use in hot and/or sunny environments."
7  Opp., Dkt. 23 at 4. However, representations such as "pool party," "perfect for the pool," "perfect
8  for the garden," "beach bum," "water and swim shoes," and "pool" or "beach" are mere puffery,
9  which are not actionable under a claim for breach of express warranty. *See In re SanDisk SSDs*
10 *Litig.*, 736 F. Supp. 3d 786, 793 (N.D. Cal. 2024) (finding that "durable," "high performance,"
11 "superfast," "perfect," "reliable" are all puffery).

12     Contrary to Plaintiffs' contention, these claims are unlike the phrase, "completely safe ball
13 will not hit player" when contained on a product label. *See* Opp., Dkt. 23 at 5 (citing *Valentine v.*
14 *Crocs, Inc.*, No. 22-CV-07463-TLT, 2023 WL 12015530, at *4 (N.D. Cal. Apr. 28, 2023) (quoting
15 *Hauter v. Zogarts*, 14 Cal. 3d 104, 109 (1975))). In *Hauter*, plaintiff set up the Golfing Gizmo
16 according to the printed instruction. 14 Cal. 3d 104 at 109. The label on the carton read,
17 "COMPLETELY SAFE BALL WILL NOT HIT PLAYER." *Id.* However, contrary to defendant's
18 express representation, when plaintiff took a "normal swing" with his golf club, the ball hit him on
19 the head, causing severe injury. *Id.* In finding that the defendant's representation was both material
20 and actionable, the court reasoned that "[c]ourts have consistently held similar promises of safety
21 to be representations of fact," likening defendant's claim to a car dealer's assertion that the
22 windshield of a car is "shatterproof." *Id.* at 112–13. By contrast, Plaintiffshere  do not and cannot
23 point to any language in Crocs' advertisements that expressly states Crocs shoes will not shrink
24 even if they are exposed to extreme heat. *See Yastrab v. Apple Inc.*, No. 5:14-CV-01974, 2015 WL
25 1307163, at *7 (N.D. Cal. Mar. 23, 2015) (plaintiff must "identify a specific and unequivocal
26 written statement about the product that constitutes an explicit guarantee" (cleaned up)).  And
27 Plaintiffs do not allege that their shoes shrank because they were wearing their shoes at the pool,
28 beach, or garden. Instead, they, at most, allege that their shoes shrank after they were stored in hot

1  environments. *See*, *e.g.*, Dkt. 1 at ¶¶ 81 (Mongalo), 89 (Harmon), 96 (Werner).

2  Further, the cases Plaintiffs cite to support their claim that a shoe's size itself operates as an express warranty miss the mark. In *Robertson v. Clean Control Corp.*, defendant represented that its product, sold as a one-gallon bottle of concentrate, "Ma[de] up to 32 Gallons," without clarifying on the front label that for nine of its ten uses, the concentrate did not produce up to 32 gallons. No. 5:24-CV-01478, 2024 WL 5193852, at * 1 (C.D. Cal. Dec. 18, 2024). The court found the phrase, "Makes up to 32 gallons," constituted an express warranty because it was a specific, numerical, and factual assertion about the concentrate's capacity to produce a certain amount of usable product. *Id.* at *4. By contrast, Crocs' shoe size is a representation of the Product's dimensions, not about its performance capacity. *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016) similarly misses the mark. In *Strumlauf*, the court held that because Starbucks represented that its "Grande" latte contained 16 ounces of liquid, and plaintiffs alleged that Starbucks uniformly underfilled its cups, defendants sufficiently alleged breach of express warranty. *Id.* at 1031. However, the claims are distinguishable from those in the instant case. The plaintiffs in *Strumlauf* did not contend (as Plaintiffs do here) that the Grande cups were not 16-ounce cups, or that the cups did not always maintain their size.

In short, none of the cases Plaintiffs cite support their allegation that a shoe size on a label is an unequivocal guarantee of size stability (no shrinking or stretching) regardless of how the shoes are treated. *See Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (to sufficiently allege breach of express warranty, it must be "clear what specific affirmation of fact or promise is being made"). Moreover, even if the shoe size was an express warranty, Plaintiffs cannot show breach because Plaintiffs do not allege that their shoes were mis-sized at purchase. *See Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027, 2017 WL 3838453, at *10 (N.D. Cal. Sept. 1, 2017), *on reconsideration in part*, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017) ("[T]he fact that each representation is a truthful statement makes it difficult for Plaintiffs to prevail on an express warranty claim.").

**<u>Breach of Implied Warranty</u>**: Plaintiffs argue that they adequately pled that the Products contain a defect that renders them unfit for ordinary use. Opp., Dkt. 23 at 6. However, because

1  Plaintiffs make no allegations that the Products fail to conform to heat-resistance standards of like
2  products within the trade, the breach of implied warranty claim is subject to dismissal. *See* Dkt.
3  15 at 9 (citing *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1178 (N.D. Cal. 2022)).

4  Plaintiffs also fail to address how the risk of shrinkage in extreme heats makes the
5  Products unmerchantable. In *Valentine*, this Court recognized that the alleged shrinkage might
6  occur "only if the Products [were] used in extreme temperatures." *Valentine*, 2024 WL 5339457,
7  at *6. "[T]he alleged defect rests on a hypothetical risk of shrinkage to customers who use their
8  Products at extreme temperatures." *Id.* As the Court recognized, the risk of shrinkage did not arise
9  from "*normal*" use conditions, but instead "depend[ed] upon how the consumer use[d]" the shoes.
10 *See id.* (emphasis in the original). And Plaintiffs cite no authority showing how the shoes' alleged
11 potential for shrinkage, which depends on a customer subjecting the product to extreme
12 conditions, renders a product unfit for its ordinary purpose. Simply claiming that the Plaintiffs'
13 own shoes shrank is not sufficient to allege an inherent defect in the Products. *See Stearns v.*
14 *Select Comfort Retail Corp.*, No. 08-CV-02746, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009)
15 ("The mere manifestation of a defect by itself does not constitute a breach the implied warranty of
16 merchantability."). Thus, Plaintiffs have not stated a plausible implied warranty claim.

17 Finally, Plaintiffs concede (as they must) that Garland must be in privity with Crocs to
18 sustain her breach of implied warranty claim. *See* Opp., Dkt. 23 at 6 n.3. Because Garland did not
19 allege vertical privity with Crocs, at the least her breach of implied warranty claim should be
20 dismissed. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023–24 (9th Cir. 2008).

21     **B.**    **Each of Plaintiffs' Fraud-Based Claims Is Subject To Dismissal.[3]**

22         **1.**    **Plaintiffs' Fraud-Based Claims Fail to Satisfy Rule 9(b).**

23 Plaintiffs assert that all of their fraud and consumer fraud claims satisfy Rule 9(b). *See*
24 Opp., Dkt. 23 at 7–9. However, Plaintiffs fail to identify which specific Crocs ads they saw, or
25 when or where they saw any such misstatements. *See* Dkt. 1 at ¶¶ 76–77, 84–85, 88, 92, & 99

---

[3] Plaintiffs assert that Crocs only addresses the fraud aspects of their UCL claim, and that the "unfair" allegations of their UCL claim went unchallenged. *See* Opp., Dkt. 23 at 4. But because the warranty claims fail, as detailed in the Motion, there is no articulated basis for an "unfair" UCL claim tied to the allegations in the Complaint.

1   (alleging each of the Plaintiffs saw Crocs ads "which indicated the shoes were appropriate for
2   outdoor use in sunny, hot weather."). *See Janney v. Mills*, 944 F. Supp. 2d 806, 810 (N.D. Cal.
3   2013) (a complaint must state "the 'time, place, and specific content of the false representations'"
4   (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007))).

5         Plaintiffs appear to concede in Opposition that their individual allegations about fraudulent
6   advertising are not pled with particularity. Instead of showing how each Plaintiff sufficiently
7   alleged the who, what, when, where, and how requirement of Rule 9(b), they simply contend that
8   their allegations are sufficient because this Court previously found similar fraud allegations
9   sufficient in the *Valentine* FAC. *See* Opp., Dkt. 23 at 7–9 (citing *Valentine v. Crocs, Inc.*, No. 22-
10  CV-07463-TLT, 2024 WL 5340072, at *3 (N.D. Cal. Apr. 8, 2024) (quoting *United States v.
11  United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016))).[4] However, the Court's ruling
12  in *Valentine* was based on the determination that the *Valentine* plaintiffs had sufficiently identified
13  in the FAC the advertisements they saw, not because plaintiffs offered sufficient examples of
14  advertisements in the FAC. *See id.* at *3. This holding has no bearing on whether Plaintiffs here
15  have adequately alleged fraud. In fact, references throughout the Complaint to identical marketing
16  material as those in the *Valentine* FAC (filed years before their own Complaint) suggest the
17  *Mongalo* Plaintiffs likely did not encounter these same specific ads.

18        Plaintiffs cite to a single case, *Tan v. Quick Box, LLC*, for the proposition that "examples
19  of advertisements" satisfy Rule 9(b) and provide adequate notice. No. 3:20-CV-01082, 2020 WL
20  7226440, at *25 (S.D. Cal. Dec. 8, 2020). However, *Tan* does not stand for such a general
21  proposition. In *Tan*, the court found plaintiff's allegation sufficient under Rule 9(b) because she
22  alleged that she relied on representations that she would only pay $4.94 for defendant's product,
23  that customer reviews and celebrity endorsements on defendant's site were fabricated, and that the
24  "limited supply" and "small shipping fee" representations were also false. *Id.* She provided several
25  screenshots of defendant's advertisement and website displaying the alleged misrepresentations,

---

[4] While this Court cited *United Healthcare* for the proposition that the Ninth Circuit "does not require absolute particularity or a recital of the evidence," the *United Healthcare* court found that allegations against certain defendants were not "sufficiently substantial" under Rule 9(b) because they were "general," and lacking in detail. 848 F.3d at 1180, 1182.

1 and she alleged that her inability to provide exact URLs and ads were hampered by defendants, who deliberated deleted or otherwise made landing pages inaccessible to avoid detection of their fraudulent scheme. *Id.* As the court explained, "It would be unfair to allow Defendants to avoid liability for false advertising by simply eliminating any trace of the false advertisements from view after successfully inducing consumers into purchasing products." *Id.*

By contrast, here, Plaintiffs' allusions to Crocs' alleged misrepresentations are vague, and none of the Plaintiffs identify specific, measurable claims made by Crocs. *See Young v. Cree, Inc.*, No. 17-CV-06252, 2018 WL 1710181, at *6 (N.D. Cal. Apr. 9, 2018) (dismissing fraud claims where plaintiff failed to identify specific representations he relied upon). There is also no clear link between the marketing claims Plaintiffs allegedly saw and the marketing material offered in the Complaint (many of which are from years before Plaintiffs' own purchases), and Plaintiffs do not allege that Crocs schemed to make their marketing materials inaccessible. The "examples of advertisements" here fail to meet the requirements of Rule 9(b), and they provide Crocs no meaningful notice about which specific representations it must defend.

## 2. None of Crocs' Alleged Misrepresentations is Actionable.

Plaintiffs makes two arguments in their Opposition brief about Crocs' alleged misrepresentations: (1) the shoe size is a misrepresentation because consumers believe that the shoes will retain their size regardless of how much heat they are exposed to, and (2) the advertisements in the Complaint are not puffery because this Court said that the same ads proffered in the *Valentine* FAC were not puffery, and imagery can create consumer expectations. *See* Opp., Dkt. 23 at 12. On the first point about shoe size, Plaintiffs' theory is that the shoe size is misleading because the Products shrink, even though "ordinary shoes do not shrink in size." *Id.* However, Plaintiffs' claims are vague and conclusory, as they offer no sense of what they mean by "hot environments" or "ordinary shoes." *See id.* It is common sense that plastic shoes, like canvas, leather, or suede shoes, should be used and cared for in distinct ways, and many types of shoes are capable of stretching, shrinking, or warping, depending on their composition and how the shoes are treated. Plaintiffs cite no authority supporting their contention that a plastic shoes' size should

1  be read as a specific and measurable claim about its size stability, regardless of the kinds of heat
2  conditions to which they are subjected.

3  On the second point about advertisements, this Court previously held that "water-friendly"
4  and "suitable for pool, garden, and beach environments" was not puffery. *Valentine*, 2023 WL
5  12015530, at *4–5 (citing *Hauter*, 14 Cal. 3d at 109). However, unlike the *Valentine* plaintiffs,
6  Plaintiffs here make no claims that water or moisture cause shrinkage. And neither of these claims
7  is like the claim in *Hauter*, "COMPLETELY SAFE BALL WILL NOT HIT PLAYER," because
8  neither is a specific and measurable claim of objective fact. 14 Cal. 3d at 109; *see Ahern v. Apple*
9  *Inc.*, 411 F. Supp. 3d 541, 555 (N.D. Cal. 2019).

10  Crocs' representations are also not actionable because they are not false. Plaintiffs contend
11  the Products are not suitable for the pool, garden or the beach "because those conditions render the
12  Products unusable" (Opp., Dkt. 23 at 12); however, while their factual allegations assert that the
13  shoes may not be suitable for storage in extreme heat environments (*see* Dkt. 1 at ¶¶ 81, 89, & 96),
14  there are no allegations in the Complaint that the shoes shrink because they were worn at the pool,
15  garden, or beach. And while Plaintiffs provide examples of Crocs' marketing materials, none of
16  them allege they saw or relied upon any of these advertisements. *Id.* at ¶¶ 32–52, 72–101; *see*
17  *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirming dismissal of CLRA
18  and UCL claims for failing to plead plaintiff read and relied on a specific misrepresentation).

19  Plaintiffs rely on *Williams v. Gerber Products Co.* to contend that imagery can create
20  consumer expectations. 552 F.3d 934 (9th Cir. 2008). *Williams*, however, is inapposite. In
21  *Williams,* the court assessed whether Gerber's packaging was deceptive under the reasonable
22  consumer test, not whether the representations amounted to puffery. *See id.* at 938–39. In finding
23  that a reasonable consumer could be deceived about whether the product contained juice from the
24  fruit imaged on the packaging, the court noted that the product was called "fruit juice snacks," the
25  side panel described the product as made "with real fruit juice and other all natural ingredients,"
26  and Gerber made other "juice" representations. *Id.* at 936, 939. Crocs' marketing materials
27  depicted in the Complaint, in contrast, simply show the Products in scenic outdoors settings and
28  make no claims regarding their ability to withstand extreme heat. *See Broomfield*, 2017 WL

3838453, at *6 (finding that if the "[c]omplaint solely alleged pictures of surfboards and the vague phrase 'Liquid Aloha' on the beer packaging, the case would end there").

Plaintiffs argue that Crocs' advertisements "pertain[] to the suitability of the shoes for identifiable environments with concrete conditions," and that "[t]hese claims have definite, testable meanings: the shoes will remain functional when exposed to conditions inherent to beaches and pools." Opp., Dkt. 23 at 13. However, the "environments" in Crocs' marketing images do not amount to concrete or measurable claims about how much heat the Products can withstand. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) ("A challenged claim is non-actionable 'puffery' if it is a generalized, vague, and unspecified assertion" (cleaned up)). Beaches, pools, and gardens exist in a variety of climates, and none of the images suggest extreme heat conditions. To the contrary, many of the images suggest mild, temperate climates.[5] Because all of the alleged representations identified in the Complaint are mere puffery, and none of them is false, they are not actionable, and each of Plaintiffs' fraud-based claims should be dismissed.

### 3. None of Crocs' Alleged Omissions is Actionable.

Plaintiffs' claims fail because they do not plausibly allege a requisite duty to disclose. "Omissions may be the basis of claims under California consumer protections laws, but to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (cleaned up). A duty to disclose arises only in four limited circumstances, two of which Plaintiffs argue here: where the defendant "has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff," and where the defendant "makes partial representations that are misleading because some other material fact has not been disclosed." *Id.* at 862 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)). However, Plaintiffs cannot plausibly allege that Crocs had "exclusive knowledge" that the Products could shrink when exposed to extreme heat. *See Clark v. Cal. Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808,

---

[5] *See, e.g.*, Dkt. 1 at ¶¶ 35 (model(s) wearing sweatsuit); 36 (long sleeves); 37 (jeans and long sweatpants); 42 (sweater); 43 (long sleeves); 45 (long sleeves and sweatshirts).

1  811 (N.D. Cal. 2016) ("[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008))).

In the *Valentine* action, plaintiffs acknowledged that Crocs provides extreme heat warnings both on their in-store receipts and on their publicly available website. *See Valentine*, 2024 WL 5339457, at *2 ("[O]n the 'Caring for your Crocs' webpage, a statement [] reads: 'Exposure to extreme heat, sun, dishwashers, washing machines, or hot cars can cause the shoes to shrink or warp.'"); *see also Valentine* Dkt. 94-3 at 1, 8. Given such judicially noticeable facts, no reasonable inference can be drawn that Crocs had exclusive knowledge about the Products' potential to shrink, or that Crocs suppressed information about their vulnerability to extreme heat exposure.

Further, as explained in the Motion, Plaintiffs do not plausibly allege that there was a defect that Crocs was "obliged to disclose." *See Hodsdon*, 891 F.3d at 861. Plaintiffs' factual allegations do not suggest that a design defect in the Product caused the shoes to become unwearable. As alleged, Plaintiffs did not have a problem with the Products until they subjected them to hot storage conditions, showing that it was their misuse of the products, not an inherent defect, that caused the shoes to shrink. *See* Opp., Dkt. 23 at 10; *see Valentine*, 2024 WL 5339457, at *6 ("[T]he manifestation of the defect will depend upon how the consumer uses [Crocs shoes]."). Significantly, none of the Plaintiffs allege that their shoes shrank while they were using them outdoors. In other words, the shoes' *potential* for shrinkage in extreme heat, which Crocs indisputably disclosed, did not obliterate the shoes' central functionality as plastic shoes. *See Klaehn v. Cali Bamboo, LLC*, No. 19-CV-1498, 2021 WL 3044166, at *10–11 (S.D. Cal. June 14, 2021), *aff'd*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) (finding "[t]he TAC's allegations regarding premature cracking, buckling, gapping and manifesting other defects" was insufficient to allege "the central functionality of the product or that the alleged defects render[ed] those products incapable of use by any consumer" (cleaned up)).

Plaintiffs also argue that the shoes' size designation is a partial representation because Crocs did not warn about the shoes' potential for shrinkage or warpage. *See* Opp., Dkt. 23 at 11. However, a shoes' size is a representation about the shoes' dimensions and fit; it is not a

representation about whether or not they have the potential to shrink (or stretch) based on how the shoes are treated. Plaintiffs do not cite (nor have the *Valentine* plaintiffs ever cited) a single legal authority showing that shoe care instructions must be presented prior to or at the point of sale, or that shoe care instructions published on a manufacturer's website are either inadequate or deceptive as a matter of law.

### 4. None of Crocs' Alleged Representations is Likely to Deceive a Reasonable Consumer as a Matter of Law.

Plaintiffs argue that the issue of whether a reasonable consumer would be deceived is a question of fact that cannot be resolved at the motion to dismiss stage (Opp., Dkt. 23 at 13); however, courts in this circuit have held that claims under the reasonable consumer test can be resolved at this stage based on the court's "review of the product packaging." *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-CV-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). "Thus, where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.* at *4–5 (collecting cases and finding "all natural" claim "not deceptive as a matter of law" under reasonable consumer test). "[C]ourts have granted motions to dismiss under the UCL and similar statutes on the basis that the alleged misrepresentations were not false, misleading, or deceptive as a matter of law." *Robie v. Trader Joe's Co.*, No. 20-CV-07355, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021) (finding no "inference that a reasonable consumer would interpret 'vanilla' on the Product's label to mean that the flavor is derived exclusively from the vanilla plant"); *see Kim v. Blue Triton Brands*, No. 2:22-CV-01907, 2022 WL 17061085, at *3 (C.D. Cal. Nov. 1, 2022), *aff'd sub nom.*, *Kim v. Bluetriton Brands, Inc.*, No. 22-56063, 2024 WL 243343 (9th Cir. Jan. 23, 2024) (dismissing fraud claims, including under the reasonable consumer test).

Plaintiffs argue that Crocs' representations lead consumers to believe the Products are suitable for "hot environments," and assert that consumers make no distinctions between usage or storage conditions for Crocs' plastic shoes. *See* Opp., Dkt. 23 at 14. And they contend that "[n]othing about a shoe size draws a distinction between 'storage' and 'use.'" *Id.* Plaintiffs' theory of Crocs' deception hinges on the premise that the distinction between usage (or ordinary heat

1  condition) and storage (or potentially extreme/lethal heat conditions) "defies reality." *See id.*
2  However, this distinction is central to the question of whether or not the Products are defective,
3  and whether Crocs tried to hide that alleged defect. *See Valentine*, 2024 WL 5339457, at *6
4  (finding no overpayment injury for purchasing a defective product where "the alleged defect rests
5  on a hypothetical risk of shrinkage to customers who use their Products at extreme temperatures").
6  None of Plaintiffs' allegations creates an inference that a reasonable consumer would be
7  led to believe—based on Crocs advertisements or from shoe size representations—that plastic
8  footwear will be unaffected by extreme heat exposure, particularly when Crocs makes no
9  representations about having unshrinkable shoes. Thus, Plaintiffs have failed to state any plausible
10 fraud-based claim.

11 **III.     PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN**

12        **A.     This Motion to Strike Can And Should Be Resolved On The Pleadings.**

13 As this Court previously explained, "[a]lthough class allegations are generally not tested at
14 the pleading stage, 'sometimes the issues are plain enough from the pleadings to determine
15 whether the interests of the absent parties are fairly encompassed within the named plaintiff's
16 claim.'" *Valentine*, 2023 WL 12015530, at *2 (citation omitted). "Where the complaint
17 demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move
18 to strike class allegations prior to discovery." *Id.* (citation omitted). Further, while Plaintiffs
19 contend that Crocs is attempting to prematurely litigate class certification "without an evidentiary
20 record" (Opp., Dkt. 23 at 18), in this case, a full evidentiary record exists in the related *Valentine*
21 matter, as both fact discovery and expert discovery are complete there.

22 Plaintiffs' serial mischaracterizations of Crocs' arguments in its Motion to Strike are red
23 herrings, meant to distract this Court from Crocs' actual arguments. Crocs does not argue that the
24 class certification order in *Valentine* has preclusive effect here; nor does it argue that specific
25 findings about Avino and Cornejo mean that no plaintiff can ever satisfy the requirements of Rule
26 23. *See id.* at 16. Crocs does not argue that Plaintiffs themselves lack Article III standing, nor does
27 it ask this Court to "*disbelieve* Plaintiffs' allegations that their shoes shrank." *See id.* at 20
28 (emphasis in original). Instead, Crocs argues that based on the Complaint and this Court's

1  precedent in *Valentine*, Plaintiffs' class allegations should be stricken because the class definitions
2  are clearly overbroad and are uncertifiable under Rule 23. Further, based on the legal authority
3  cited by Crocs (and uncontested by Plaintiffs in their Opposition), the class allegations—which
4  reach back six years before Plaintiffs filed their Complaint—should be stricken on the additional
5  ground that the class period exceeds the statute of limitations.

6        **B.**      **The Proposed Class Includes Purchasers Without Article III Standing.**

7        Plaintiffs' class definitions include all California purchases of the Products regardless of
8  whether their shoes shrank at all, let alone within the warranty period. Plaintiffs' theory of Article
9  III injury is based on an alleged overpayment for inherently defective shoes, rendering the
10 manifestation of shrinkage irrelevant. *Id.* at 19–20. However, the overpayment injury theory has
11 already been litigated. This Court held that for a purchaser such as Plaintiff Avino whose shoes
12 did not shrink, the overpayment injury was merely "hypothetical" because the potential harm only
13 existed for those who used the Products in an extreme way. *See Valentine*, 2024 WL 5339457, at
14 *6 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)). Therefore, the proposed
15 class should not include purchasers whose shoes did not shrink, especially given the absence of
16 any evidence or concrete factual allegations that shrinkage is a common occurrence.

17       **C.**      **The Proposed Classes Are Not Certifiable Under Rule 23.**

18       **Typicality:** In *Valentine*, this Court held that "a named plaintiff's motion for class
19 certification should not be granted if 'there is a danger that absent class members will suffer if
20 their representative is preoccupied with defenses unique to it." *Id.* at *11 (quoting *Hanon v.*
21 *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Here, Plaintiffs lack typicality because
22 they will be subject to unique defenses which are likely to become the focus of the litigation. None
23 of the Plaintiffs alleges that he or she notified Crocs and made timely warranty claims, or that
24 Crocs failed to resolve those claims, as required by Cal. Com. Code § 2607(3)(A). Other than a
25 shoe size representation, none of the Plaintiffs alleges that he or she relied on any specific
26 representations in purchasing their shoes. None of the Plaintiffs alleges that his or her shoes
27 shrank during ordinary use or wearing shoes outside as shown in the advertisements. No inference
28 against Plaintiffs is needed for the Court to find that each of the Plaintiffs will lack typicality.

**Predominance**: While Plaintiffs contend that a showing of reliance is not required under the UCL, this Court correctly held that "[t]o prove her CLRA and UCL claims, Cornejo must demonstrate actual reliance on Defendant's alleged omission." *Valentine*, 2024 WL 5339457, at *12. The Court also correctly recognized that vertical privity was required to bring an implied warranty claim against Crocs. *Id.* at *13. Here, because the class definitions include all purchasers of the Products, the class will necessarily include those without Article III injury such as repeat purchasers who may be unable to show materiality or reliance, those who may have read Crocs' heat warnings before purchasing their shoes, indirect purchasers who lack vertical privity, those who never notified Crocs about a breach of warranty, and those who may have negligently stored their shoes in extreme heat. No inference against Plaintiffs is needed for this Court to find that individual questions will predominate, given the proposed class definition.

**Class Period:** Plaintiffs fail to respond to Crocs' argument that the class allegations should be stricken because the proposed class period improperly exceeds the statute of limitations. Accordingly, they have conceded this argument, and their class allegations should therefore be stricken. *See Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

## IV.    CONCLUSION

For the reasons set forth, Crocs respectfully requests that this Court dismiss the Complaint in its entirety for failure to state a claim. And Plaintiffs' request for leave to amend (Opp., Dkt. 23 at 23) should be denied, and the dismissal should be with prejudice, given that Plaintiffs and their counsel—years into their counsel's efforts—have failed to assert plausible claims.

In the alternative, Crocs respectfully requests that this Court strike Plaintiffs' class allegations.

DATED: March 25, 2025                              KELLEY DRYE & WARREN LLP

By:   */s/ Becca Wahlquist*
      Becca Wahlquist
      Ruth Kwon

*Attorneys for Defendant Crocs, Inc.*